## UNITED STATES DISTRICT AND BANKRUPTCY COURTS
### FOR THE DISTRICT OF COLUMBIA

LARAY J. BENTON
1731 STOURBRIDGE COURT
MITCHELLVILLE, MD 20721
864-357-4545

VS.

ALLISON M. MCFARLANE
CHAIRMAN
U.S. NUCLEAR REGULATORY COMMISSION
OFFICE OF GENERAL COUNSEL
11555 ROCKVILLE PIKE, MAIL STOP O-15 D21
ROCKVILLE, MD 20555-0001

Case: 1:15-cv-00181
Assigned To : Chutkan, Tanya S.
Assign. Date : 2/5/2015
Description: Employ Discrim.

## COMPLAINT

The Complaint (Mr. LaRay J. Benton) *Removal* Appeal was submitted to the U.S. Merit Systems Protection Board (MSPB or the Board) based in part on the fraudulent, materially false, and/or fictious statements and/or profferings of the U.S. Nuclear Regulatory Commission (NRC or the Agency) within his *Removal Appeal* originally submitted on about August 12, 2012. On December 23, 2014, the Board issued a *Final Order* affirming Mr. Benton's removal from federal service on July 16, 2012. *See Final Order* attached.

As supported by Attachments A and B enclosed, Mr. Benton asserts that the Agency unlawfully removed him from federal service pursuant to 5 U S.C. § 4303. Pursuant to 5 U.S.C. § 7703, and the *Final Order* of the Board, Mr. Benton now files this Civil Action against the NRC on his removal from federal service. Please see Attachments A and B enclosed for more details supporting Mr. Benton's formal complaint.

Mr. Benton is formally requesting a trial by jury on the merits of this case.

RECEIVED

JAN 22 2015

Clerk, U.S. District and
Bankruptcy Courts

**EXPLANATION OF PERSONAL HARM**

The willful and adverse actions of NRC management have caused me personal harm that has affected various work related terms, conditions, privileges, and benefits such as the decrease in my annual salary and related Thrift Savings Plan (TSP) agency matching benefits, denial of my with-in grade increases, denial of work related training and development, denial of work schedule benefits and privileges, denial of career advancing promotions, programs, and rotations to name a few. As a result, I have now been considered less qualified and less competitive than my peers (females and White, Hispanic, and Asian males) in regard to technical training, job experience, and/or technical knowledge, skills, and abilities in the areas of health physics, reactor engineering, and accident consequence analysis. Additionally, the inaccurate and unjustified performance appraisals, personnel actions, negative letters of recommendation or referral, among others, have negatively impacted the work-related perception of me by my peers and other agency management officials. The adverse actions of NRC management have also limited and/or impeded my educational development, as well as my career advancement and/or promotion potential.

**TYPE OF RELIEF SOUGHT**

As a result of the personal harm I have suffered due to the adverse and retaliatory actions of NRC management officials, I am seeking to be retroactively reinstated back to my position as a GG-13 Reactor Engineer with the NRC, to include ALL applicable back-pay, accrued Annual and Sick Leave; retroactive relief of ALL applicable benefits such as the yearly step increases, cost of living increases, and any other applicable increase due in relation to my annual salary, related Thrift Savings Plan (TSP) with agency matching benefits; monetary relief for all applicable compensatory and punitive damages that I may be entitled to by law; as well as any attorney fees, court costs, and any other expenses that have been or will be accrued as

a result of the Civil Action suit process, with interest.  In addition, I am also requesting that NRC

management:

1. Provide technical training to continue my professional development to enhance my technical knowledge, skill, and abilities under performance Element 2: Technical Analysis and Problem Solving.
2. Cease all unjustified and unwarranted monitoring of my time and attendance and any other adverse actions, to include any previous, current, or proposed negative personnel actions (i.e. termination).
3. Grant me placement in the NRC Graduate Fellowship Program for a four (4) year term, and an automatic and uncontested one-year extension if necessary with no agency time and/or work requirement, and with full access to all other rights and/or privileges associated with the program as provided to the other current fellows.
4. Provide for all WGI previously denied, and the applicable TSP agency matching amounts, to be retroactively awarded to me with interest.
5. Provide a FY 2009, 2010, and 2011 performance appraisal of record reflecting a "FULLY SUCCESSFUL" or above appraisal rating, without any negative comments.
6. Remove all negative personnel actions and/or expunged all negative records from my formal NRC personnel file, as regulated by the U.S. Office of Personnel Management, to include, but not limited to, all negative performance appraisals that are below the FULLY SUCCESSFUL level, the  Performance Deficiency Notice dated May 11, 2011, notice of the potential to withhold my within-grade-increase (WGI) dated May 11, 2011, the notice denying my WGI dated July 25, 2011,  the notice implementing the Performance Improvement Requirements Memorandum dated November 21, 2011, the memorandum of Proposal to Remove From Federal Service dated  May 9, 2012, and any other negative personnel actions.
7. Reassignment to another division and/or position within the agency, i.e., re-location to Region II (Atlanta, GA) as a Health Physics or Criticality Inspector, Reactor or Operations Engineer to be near my elderly mother and severely incapacitated father.
8. Other forms of damages, relief and/or monetary compensations to be determined at a later date upon conferring with formal representation (i.e. obtaining Counsel) to be determined.

**Respectfully submitted,**  _____  **01/22/15**

                                     **LaRay J. Benton**                         **Date**
**1731 Stourbridge Court**
**Mitchellville, MD. 20721**
**(864) 357-4545 (phone)**
**laraybenton@gmail.com (email)**

## PROOF OF SERVICE

Pursuant to Fed. R. App. P. 25(d), I certify that I caused the foregoing to be served

on January 22, 2015, upon:


**Via Email & Mail**          **Defendant**

                              **Elva Bowden-Berry, Senior Attorney**
                              **U.S. NUCLEAR REGULATORY COMMISSION**
                              **OFFICE OF GENERAL COUNSEL**
                              **11555 ROCKVILLE PIKE, MAIL STOP O-15 D21**
                              **ROCKVILLE, MD 20555-0001**


**Via Hand Delivery**          **U.S. DISTRICT AND BANKRUPTCY COURTS FOR DC**

                              **Clerk of Court**
                              **U.S. District and Bankruptcy Courts for the District of**
                              **Columbia**
                              **333 Constitution Ave. NW**
                              **Washington, DC 20001**


| | |
|---|---|
| | **01/22/15** |
| **LaRay J. Benton** | **Date** |

UNITED STATES OF AMERICA
MERIT SYSTEMS PROTECTION BOARD

LARAY J. BENTON,
          Appellant,

DOCKET NUMBER
DC-0432-12-0751-I-2

v.

NUCLEAR REGULATORY
COMMISSION,
          Agency.

DATE: December 23, 2014

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

LaRay J. Benton, Mitchellville, Maryland, pro se.

Elva Bowden Berry, Esquire, and Molly Barkman Marsh, Washington, DC,
for the agency.

## BEFORE

Susan Tsui Grundmann, Chairman
Anne M. Wagner, Vice Chairman
Mark A. Robbins, Member

## FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision, which affirmed his removal. Generally, we grant petitions such as this one only when: the initial decision contains erroneous findings of material fact; the initial

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. See 5 C.F.R. § 1201.117(c).

decision is based on an erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of the case; the judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. *See* Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, and based on the following points and authorities, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, which is now the Board's final decision. 5 C.F.R. § 1201.113(b).

¶2       On May 11, 2011, the agency issued the appellant, a GG-13 General Engineer (Reactor), a Notice of Performance Deficiencies advising him that his performance under Critical Element #2, Technical Analysis and Problem Solving, was below the fully successful level. MSPB Docket No. DC-0432-12-0751-I-1, Initial Appeal File (I-1 IAF), Tab 15 at 16. Under that element, the appellant was required to evaluate technical issues related to health, safety, and environmental review, including licensing activities, to solve problems that arose in technical and programmatic reviews, and to present recommendations for resolution. *Id.*, Tab 16 at 141. The applicable standards involved quality, timeliness and quantity, and supervision needed/independence. *Id.* The Notice explained that, because of the appellant's continued lack of improvement, even with an increasing level of supervisor oversight, he was in danger of falling to the unacceptable level. *Id.*, Tab 15 at 16. On November 21, 2011, the agency issued the appellant a Notification of Unacceptable Performance and Implementation of Performance Improvement Requirements Memorandum (PIRM), advising him that his performance under Critical Element #2 was now unacceptable and

providing examples of such. *Id.* at 10. The Notification provided that the PIRM period was to last until March 20, 2012, and set out the assignments the appellant was expected to complete. *Id.*

¶3        On May 9, 2012, the agency proposed to remove the appellant based on his unacceptable performance under Critical Element #2, *id.* at 3, and, on July 16, 2012, the agency issued a decision to remove him, effective that day, *id.*, Tab 12 at 8. The appellant filed a timely Board appeal of the removal action in which he alleged, inter alia, retaliation for whistleblowing activity. The administrative judge dismissed the appeal without prejudice, subject to the appellant's right to refile no later than 15 days after the Board ruled on the retroactivity of several provisions of the Whistleblower Protection Enhancement Act.[2] *Benton v. Nuclear Regulatory Commission*, MSPB Docket No. DC-0432-12-0751-I-1, Initial Decision at 1, 3 (Jan. 23, 2013); MSPB Docket No. DC-0432-12-0751-I-2, Initial Appeal File (I-2 IAF), Tab 1.

¶4        The appellant timely refiled the appeal and requested a hearing. The administrative judge afforded the appellant an opportunity to set forth his affirmative defenses, I-2 IAF, Tab 7, and he responded, *id.*, Tab 10, after which the administrative judge set out the burdens of proof for both parties, *id.*, Tab 52. The parties made numerous additional submissions, *id.*, Tabs 53-59, and the administrative judge convened a hearing. *Id.*, Tab 60. Thereafter, she issued an initial decision affirming the agency's action. *Id.*, Tab 62, Initial Decision (I-2 ID) at 2, 49. She found that the agency proved that its performance appraisal system was approved by the Office of Personnel Management (OPM), I-2 ID

---

[2] On January 10, 2013, the appellant filed a whistleblower complaint with the Office of Special Counsel (OSC). After OSC advised him that it had terminated its inquiry into his allegations that the agency had engaged in retaliation in connection with poor performance evaluations, various nonselections, and his removal, the appellant filed an individual right of action (IRA) appeal on April 19, 2013, which the administrative judge dismissed for lack of jurisdiction. *Benton v. Nuclear Regulatory Commission*, MSPB Docket No. DC-1221-13-0508-W-1, Initial Decision (Aug. 14, 2013).

at 5-6; that the agency established that the appellant's performance standards were valid, I-2 ID at 6-8, and properly communicated them to him, I-2 ID at 8-9; and that the appellant was afforded a reasonable opportunity to improve his performance, I-2 ID at 10-14; but that, notwithstanding, his performance was unacceptable under Critical Element #2. I-2 ID at 14-21.

¶5        The administrative judge then addressed the appellant's affirmative defenses, finding that he did not establish his claim of discrimination based on race and sex under a disparate treatment theory, I-2 ID at 22-25, or his claim of discrimination based on religion, I-2 ID at 25-27. In connection with that claim, the administrative judge also found that the appellant did not establish any violation of his First Amendment right to free speech. I-2 ID at 27-28. In addition, she found that he did not establish that he was subjected to a hostile work environment. I-2 ID at 28-29. The administrative judge next addressed the appellant's claim of retaliation for whistleblowing, considering his thirteen alleged disclosures, but she found that he failed to show that any were protected. I-2 ID at 29-35. She also considered six additional disclosures the appellant raised in his IRA appeal but found similarly that he failed to show that any were protected. I-2 ID at 35-37. The administrative judge found unsupported the appellant's claim that he was removed in reprisal for having filed a formal agency grievance over his Fiscal Year (FY) 2010 performance appraisal. I-2 ID at 37-39. The administrative judge found that the agency did not violate the appellant's right to due process under 5 U.S.C. § 7513(b)(1), I-2 ID at 39-40, and that he did not establish any of his claims of harmful error, I-2 ID at 40-44. Finally, the administrative judge found that the appellant did not establish his claims that the agency retaliated against him for protected equal employment opportunity (EEO) activity, I-2 ID at 44-45, failed to train him, I-2 ID at 46-48, and committed prohibited personnel practices and/or violated merit system principles, I-2 ID at 48.

¶6        The appellant has filed a petition for review with exhibits, Petition for
Review (PFR) File, Tabs 1-2, the agency has responded, *id.*, Tab 4, and the
appellant has replied to that response, *id.*, Tab 5, submitting numerous exhibits
with his reply,[3] *id.*, Tabs 6-10.

¶7        We first address the appellant's challenge to the administrative judge's
finding that the agency established OPM's approval of its performance appraisal
system.   PFR File, Tab 1 at 9-10.   The appellant argues that, because his
performance standards changed between FY 2010 and FY 2011, the agency was
required, but failed, to secure OPM approval for such changes.  While an agency
is required to submit to OPM for approval of its appraisal system, 5 C.F.R.
§ 430.209(a), it is not required to establish that specific critical elements or
performance standards were, or are, submitted to OPM in order to establish valid
OPM approval under 5 U.S.C. chapter 43.   *Lee v. Environmental Protection
Agency*, 115 M.S.P.R. 533, ¶ 24 (2010); *Satlin v. Department of Veterans Affairs*,
60 M.S.P.R. 218, 222 (1993).   Here, the administrative judge found, and we
agree, that the agency established that OPM approved its performance appraisal
system based on OPM's November 6, 2003 letter to the agency granting its
approval, I-1 IAF, Tab 16 at 152, and testimony in accord by the Deputy
Associate Director for Human Resources, deemed by the administrative judge to
be credible, I-2 ID at 5-6; *see Lee*, 115 M.S.P.R. 533, ¶¶ 27-28.

¶8        The appellant disputes the administrative judge's finding that the agency
properly communicated to him the standards under which he was rated.   In this
regard, he again points to changes in his standards from FY 2010 to FY 2011.

---

[3] We have not considered any of the appellant's numerous exhibits.  They include a
pleading from one of his EEO complaints, PFR File, Tab 1 at 35, the agency's
opposition to that pleading and the appellant's rebuttal, *id.*, Tab 2, which, while new,
are not material, *see Russo v. Veterans Administration*, 3 M.S.P.R. 345, 349 (1980); and
documents related to his performance during the PIRM period, PFR File, Tabs 5-6, and
other documents, *id.*, Tabs 7-10, which are part of the record below and therefore are
not new. *See Meier v. Department of the Interior*, 3 M.S.P.R. 247, 256 (1980).

PFR File, Tab 1 at 10-11. The administrative judge considered the testimony of
the proposing official to the effect that the changes were made by Human
Resources, that they were minor, and that they applied to all employees, not just
the appellant. I-2 ID at 9. The appellant has not identified any substantive
changes to his standards and our review does not reveal any. *Compare* I-1 IAF,
Tab 20 at 13, *with* I-1 IAF, Tab 16 at 139. Moreover, the appellant signed and
approved his performance plan elements and standards at the beginning of the
rating period for FY 2011 and again at the mid-year review. I-1 IAF, Tab 16
at 139. Therefore, he has not shown error in the administrative judge's finding
that the agency properly communicated his standards to him.

¶9        The appellant alleges that the agency failed to show that his performance
was unacceptable because he did not receive an official rating for FY 2011 and
that therefore his rating of record is his rating for FY 2010 which was minimally
successful and does not support removal. PFR File, Tab 1 at 11-12. The
administrative judge found, based on the testimony of the Deputy Associate
Director for Human Resources, which she found credible, that, because the
appellant was placed on a PIRM period in November 2011, his FY 2011 rating
was held in abeyance and that, under those circumstances, the agency was not
required to provide him with a performance rating during that period.[4] I-2 ID
at 10-11, 42. In any event, an agency is not estopped even by a prior satisfactory
appraisal from taking a performance-based action against an employee at any time
during the appraisal cycle where the employee's performance in a critical element
becomes unacceptable. 5 C.F.R. §§ 432.104, 432.105(a),(b); *Lee v. Department
of Labor*, 110 M.S.P.R. 355, ¶ 11 (2008). We therefore agree with the
administrative judge that the agency's failure to give the appellant a performance
rating for FY 2011 prior to removing him did not preclude the subsequent action.

---

[4] The administrative judge also considered this claim as one of harmful error, finding
that the agency did not commit any error, much less harmful error. I-2 ID at 42.

¶10     The appellant argues that he was not warned of his performance deficiencies prior to, or during, the appraisal period and was not afforded a reasonable opportunity to improve. PFR File, Tab 1 at 13. As noted, 5 months before the appellant was notified of the PIRM period, he received a Notice of Performance Deficiencies which explained, and provided examples to show, that his supervisors viewed his work products as deficient in quality, not technically sound, and not organized in a logical manner. I-1 IAF, Tab 15 at 16. The agency also denied the appellant's within-grade increase on similar grounds. *Id.* at 19.

¶11     In determining whether an agency has afforded an employee a reasonable opportunity to demonstrate acceptable performance, relevant factors include the nature of the duties and responsibilities of the employee's position, the performance deficiencies involved, and the amount of time which is sufficient to enable the employee to demonstrate acceptable performance. *Lee*, 115 M.S.P.R. 533, ¶ 32. The duties of a Reactor Engineer include serving as the principal and/or lead reviewer in the area of nuclear power plant technology, which includes reactor systems, reactor core design, and evaluations of design basis accident analyses, and performing and coordinating reviews and evaluations of reactor core and systems design, postulated accidents, and design basis accident dose assessments. I-1 IAF, Tab 15 at 3. The appellant has not challenged that the PIRM period lasted in excess of 120 days. The Board has found that a 30-day performance improvement period can satisfy an agency's obligation to provide an employee with a reasonable opportunity to demonstrate acceptable performance. *Lee*, 115 M.S.P.R. 533, ¶ 33. The record further reflects that, during the PIRM period, the agency provided the appellant with detailed written feedback and conducted regular meetings at which his supervisors provided summaries of his progress. I-2 IAF, Tabs 34-43. This degree of assistance is greater than that which the Board has found sufficient to meet an agency's obligation. *See Goodwin v. Department of the Air Force*, 75 M.S.P.R. 204, 208-09 (1997). We therefore find that the appellant has not shown error in the administrative judge's

finding that the agency proffered substantial evidence that it afforded the appellant a reasonable opportunity to improve. *See Towne v. Department of the Air Force*, 120 M.S.P.R. 239, ¶ 20 (2013).

¶12    Although the appellant did not specifically challenge on review the administrative judge's finding that his performance under Critical Element #2 was unacceptable, we note that an agency's burden of providing substantial evidence of an appellant's unacceptable performance can be met largely by submissions of documentation through the charges and the appellant's working papers. *See Fernand v. Department of the Treasury*, 100 M.S.P.R. 259, ¶ 10 (2005), *aff'd*, 210 F. App'x 992 (Fed. Cir. 2006); *see also Salter v. Department of the Treasury*, 92 M.S.P.R. 355, ¶ 12 (2002). A proposal notice can constitute valid proof of an agency's charges where, as here, the notice is not merely conclusory, but sets forth in detail the employee's errors and deficiencies. *See Fernand*, 100 M.S.P.R. 259, ¶ 10; *see also* I-1 IAF, Tab 15 at 3-9. In addition, the agency attached to the proposal notice all the documents it relied upon, including the revised drafts to assigned projects. I-1 IAF, Tab 15 at 21-123. Moreover, in addressing this issue, the administrative judge considered the testimony of the three agency officials who reviewed the appellant's work and found it deficient. I-2 ID at 18-21.

¶13    The appellant challenges the administrative judge's finding that he did not establish his claims of race and sex discrimination. PFR File, Tab 1 at 17. The administrative judge appeared to find that the appellant had not established a prima face case but that, even if he had, the agency showed that it had a legitimate nondiscriminatory reason for removing him.    I-2 ID at 22-25. However, because the record is complete and the agency has already articulated a legitimate, nondiscriminatory reason for its action, i.e., his alleged unsatisfactory performance, the agency has done everything that would be required of it if the appellant had made out a prima facie case, and whether he in fact did so is no longer relevant. Rather, the inquiry proceeds directly to the ultimate question of whether, upon weighing all of the evidence, the appellant has met his overall

burden of proving illegal discrimination, that is, whether he has produced sufficient evidence to show that the agency's proffered reason was not the actual reason for the removal and that the agency intentionally discriminated against him. *See Jackson v. U.S. Postal Service*, 79 M.S.P.R. 46, 52-53 (1998). In addressing this claim, the administrative judge considered testimony of the proposing official (who also served as the appellant's mentor) that he has mentored a number of employees of various races and both sexes, and testimony of the deciding official that he had removed four employees, two for failing a PIRM period, an African American male and an Asian male, and that he had terminated a Hispanic male and an African American female during probation. I-2 ID at 24. Although the appellant challenges the administrative judge's finding on review, he has not referred to any specific evidence or made any specific argument. Under the circumstances, we find that the administrative judge reached the correct conclusion in rejecting this claim. *See Lee*, 115 M.S.P.R. 533, ¶ 43.

¶14      On review, the appellant argues that the administrative judge failed to consider his claim that his whistleblowing disclosures were a contributing factor in the agency's decision to remove him. PFR File, Tab 1 at 18-23. The administrative judge carefully considered the appellant's thirteen alleged protected disclosures, I-2 ID at 30-31, but found that he failed to show that any were protected because his claims did not demonstrate that a disinterested observer could reasonably conclude that the actions of the agency evidenced any wrongdoing as defined by 5 U.S.C. § 2302(b)(8). I-2 ID at 32-35; *see Shannon v. Department of Veterans Affairs*, 121 M.S.P.R. 221, ¶ 22 (2014). The appellant has not challenged this finding and we discern no reason to disturb it. Rather the appellant challenges the administrative judge's failure to apply the "knowledge/timing" test. Because the administrative judge found that the appellant failed to show that he made any protected disclosures, a finding with which we agree, the administrative judge was not required to determine whether

the agency established, by use of the knowledge/timing test or any other means, that the appellant's disclosures were a contributing factor in the agency's decision to remove him.[5] *See Shannon*, 121 M.S.P.R. 221, ¶ 21. And, because the appellant failed to show that he made any protected disclosures, we also reject the appellant's claim on review that the administrative judge was required to consider whether the agency showed by clear and convincing evidence that it would have removed the appellant, even absent his disclosures. PFR File, Tab 1 at 23-25; *see Shannon*, 121 M.S.P.R. 221, ¶ 24.

¶15    The appellant also argues on review that the administrative judge failed to consider his claim that he was a perceived whistleblower. PFR File, Tab 1 at 18. In her prehearing conference summary, the administrative judge acknowledged the appellant's claim, citing *Juffer v. U.S. Information Agency*, 80 M.S.P.R. 81, ¶ 12 (1998), wherein the Board set out the appellant's burden of proof in such cases. I-2 IAF, Tab 52 at 8. Where an appellant alleges that the agency

---

[5] Of the alleged protected disclosures the appellant raises in this appeal, we note that he raised one, his disclosure that he was denied training, in his IRA appeal. The administrative judge found that the appellant did not nonfrivolously allege that that disclosure was protected because the internal policy that he alleged the agency violated was not a law, rule, or regulation, but rather guidance. In affirming the administrative judge's initial decision, the Board found no basis upon which to disturb her findings that the appellant failed to nonfrivolously allege that he made any protected disclosures. *Benton v. Nuclear Regulatory Commission*, MSPB Docket No. DC-1221-13-0508-W-1, Final Order at 6-7, 9 (July 29, 2014). Whether the appellant's disclosure that he was denied training was a protected disclosure as raised in his IRA appeal is identical to the affirmative defense he raises in this appeal, the issue was actually litigated in the prior appeal, it was a critical issue in the jurisdictional determination that the Board lacked jurisdiction over the appellant's IRA appeal, and the appellant, the party precluded from relitigating the issue, had a full and fair opportunity to litigate the issue in the prior action. We therefore find that the appellant is barred by collateral estoppel from relitigating whether his disclosure regarding denial of training was protected under the Whistleblower Protection Act. *See Jenkins v. Environmental Protection Agency*, 118 M.S.P.R. 161, ¶ 22 (2012); *see also Kroeger v. U.S. Postal Service*, 865 F.2d 235, 239 (Fed. Cir. 1988). In so finding, we note that the Board's regulations specifically provide that nonprecedential final orders may be cited as authority by a party asserting issue preclusion, claim preclusion, collateral estopppel, res judicata, or law of the case. *Jenkins*, 118 M.S.P.R. 161, ¶ 22 n.3; 5 C.F.R. § 1201.117(c).

perceived him as a whistleblower, he must show that the agency's perception of him as a whistleblower was a contributing factor in its decision to take or not take the personnel action at issue. *King v. Department of the Army*, 116 M.S.P.R. 689, ¶ 9 (2011). In the initial decision, the administrative judge acknowledged the appellant's claim, I-2 ID at 31, but made no findings on it. Inasmuch as the record is complete, we consider his claim now. Based on our review of the record, we find that the appellant has not shown that any agency officials believed that he made or intended to make disclosures that evidenced the type of wrongdoing listed under 5 U.S.C. § 2302(b)(8). *See King*, 116 M.S.P.R. 689, ¶ 8. On review, the appellant claims only that he did prove that the agency perceived him as a whistleblower, PFR File, Tab 1 at 21, but he has not pointed to any supporting evidence. His conclusory statement, without more, does not suffice, and we find that he has failed to meet his burden as to this claim.

¶16    The appellant argues that the administrative judge abused her discretion in failing to join his IRA appeal with the instant appeal. PFR File, Tab 1 at 27-29. The appellant did not request joinder in this matter. However, an administrative judge may join cases on her own motion if doing so would expedite processing of the cases and not adversely affect the interests of the parties.    5 C.F.R. § 1201.36(b)(1), (2). Adjudication of the instant appeal was scarcely underway at the time the administrative judge issued the initial decision dismissing the appellant's IRA appeal for lack of jurisdiction. Under these circumstances, we find that the administrative judge did not abuse her discretion in failing to join the appellant's two appeals.

¶17    The appellant argues that the administrative judge erred in failing to consider his claim that the agency's action violated 5 U.S.C. § 2302(b)(12), which provides that it is a prohibited personnel practice for an agency to take an action if to do so would violate any law, rule, or regulation implementing, or directly concerning, the merit system principles set out at 5 U.S.C. § 2301. PFR File, Tab 1 at 31. The merit system principle to which the appellant refers, (7),

states that employees should be provided effective education and training in cases in which such education and training would result in better organizational and individual performance. In this regard, the appellant essentially challenges the administrative judge's finding that he failed to establish his claim that the agency denied him training. The administrative judge found that training is within the discretion of the agency, that, during the PIRM period, the agency did deny the appellant certain training that, in its view, was not designed to help him improve his performance deficiencies but that it did approve, and he did take, other training that the agency believed would help him in that regard. I-2 ID at 46-47. The administrative judge acknowledged the appellant's claim that the agency allowed other employees to take certain training that it denied him, but she found that he was not similarly situated to those employees because he was on a PIRM period and they were not. The administrative judge concluded that the agency did not abuse its discretion in its decision to allow or disallow certain training for the appellant during the PIRM period. I-2 ID at 47-48. Based on the appellant's arguments on review which amount to mere disagreement with the administrative judge's findings, we discern no reason to reweigh the evidence or substitute our assessment of the record evidence for that of the administrative judge. *See Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997).

¶18      The appellant next argues that the administrative judge failed to consider his claims that the agency violated his First Amendment rights and his Fifth Amendment right to due process. PFR File, Tab 1 at 32-33. On the contrary, the administrative judge considered the appellant's claim that the agency violated his First Amendment right to free speech when certain officials scrutinized and questioned the Biblical quote of the Thirty-fifth Psalm that he appended to an email he sent to the deciding official. The administrative judge found that, because the appellant appended the quote just after he received the proposal notice, the deciding official had a reasonable basis to question it, noting that the agency did not discipline the appellant for it. I-2 ID at 27-28. The administrative

judge concluded that the deciding official struck the appropriate balance between his concern for the safety of the agency's employees and the appellant's right to free speech and that therefore the appellant did not prove this affirmative defense. I-2 ID at 28. Similarly, the administrative judge considered the appellant's claim that the agency violated his Fifth Amendment right to due process with regard to the designation of the deciding official. The administrative judge found that the appellant was afforded notice and an opportunity to respond prior to the effective date of his removal and that therefore he failed to show that he was denied fundamental due process. I-2 ID at 40. Beyond his disagreement, the appellant has not shown error in the administrative judge's finding that he did not establish that he was denied these constitutional rights. *Cf. Arrington v. Department of the Navy*, 117 M.S.P.R. 301, ¶ 16 (2012) (where the agency did not provide the appellant an opportunity to make a response in connection with the reduction-in-grade action, the agency failed to provide him with minimum due process); *see Voorhis v. Department of Homeland Security*, 116 M.S.P.R. 538, ¶ 28 n.5 (2011) (the government's concern in protecting against unauthorized access and disclosure of law enforcement information outweighs the appellant's interest in providing evidence of allegedly objectionable plea bargaining practices to a political campaign), *aff'd*, 474 F. App'x 778 (Fed. Cir. 2012).

¶19        Finally, the appellant argues that the administrative judge erred in failing to address the reasonableness of the penalty. The appellant asserts that the administrative judge should have addressed the factors set forth by the Board in *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 305-06 (1981), and that, had she done so, she would have determined that mitigation was appropriate. PFR File, Tab 1 at 29-30. It is well established, however, and the administrative judge

properly found, that the Board has no authority to mitigate a removal taken under 5 U.S.C. chapter 43. *See Lee*, <u>115 M.S.P.R. 533</u>, ¶ 6; *see also* I-2 ID at 43.[6]

## NOTICE TO THE APPELLANT REGARDING
## YOUR FURTHER REVIEW RIGHTS

You have the right to request further review of this final decision. There are several options for further review set forth in the paragraphs below. You may choose only one of these options, and once you elect to pursue one of the avenues of review set forth below, you may be precluded from pursuing any other avenue of review.

<u>Discrimination Claims:  Administrative Review</u>

You may request review of this final decision on your discrimination claims by the Equal Employment Opportunity Commission (EEOC). *See* Title 5 of the United States Code, section 7702(b)(1) (<u>5 U.S.C. § 7702</u>(b)(1)). If you submit your request by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

---

[6] The appellant requested that the Board vacate the administrative judge's decisions in his stay requests.  PFR File, Tab 1 at 33.  The administrative judge denied the appellant's first stay request, finding that he did not show that he made protected disclosures or that there was a substantial likelihood that he would prevail on the merits of his appeal. *Benton v. Nuclear Regulatory Commission*, MSPB Docket No. DC-0432-12-0751-S-1, Initial Appeal File, Tab 4, Order at 3 (Oct. 22, 2012). The administrative judge denied the appellant's second stay request on the same grounds. *Benton v. Nuclear Regulatory Commission*, MSPB Docket No. DC-0432-12-0751-S-2, Initial Appeal File, Tab 3, Order at 19 (Sept. 13, 2013). However, an appellant may not challenge an administrative judge's order on a stay request under the Whistleblower Protection Act through the petition for review process; a request for an interlocutory appeal is the only option. *Mogyorossy v. Department of the Air Force*, <u>96 M.S.P.R. 652</u>, ¶ 24 (2004). Here, the appellant did not seek an interlocutory appeal as to the administrative judge's ruling on either stay request. Thus, on review the Board will not consider the appellant's challenge to the administrative judge's denials of his stay requests. *See Mason v. Department of Homeland Security*, <u>116 M.S.P.R. 135</u>, ¶ 30 (2011).

If you submit your request via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations<br>
Equal Employment Opportunity Commission<br>
131 M Street, NE<br>
Suite 5SW12G<br>
Washington, D.C. 20507

You should send your request to EEOC no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with EEOC no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time.

Discrimination and Other Claims: Judicial Action

If you do not request EEOC to review this final decision on your discrimination claims, you may file a civil action against the agency on both your discrimination claims and your other claims in an appropriate United States district court. *See* 5 U.S.C. § 7703(b)(2). You must file your civil action with the district court no later than 30 calendar days after your receipt of this order. If you have a representative in this case, and your representative receives this order before you do, then you must file with the district court no later than 30 calendar days after receipt by your representative. If you choose to file, be very careful to file on time. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Other Claims: Judicial Review

If you want to request review of the Board's decision concerning your claims of prohibited personnel practices described in 5 U.S.C. § 2302(b)(8),

16

(b)(9)(A)(i), (b)(9)(B), (b)(9)(C), or (b)(9)(D), but you do not want to challenge the Board's disposition of any other claims of prohibited personnel practices, you may request review of this final decision by the United States Court of Appeals for the Federal Circuit or by any court of appeals of competent jurisdiction. The court of appeals must receive your petition for review within 60 days after the date of this order. *See* 5 U.S.C. § 7703(b)(1)(B) (as rev. eff. Dec. 27, 2012). If you choose to file, be very careful to file on time.

If you need further information about your right to appeal this decision to court, you should refer to the federal law that gives you this right. It is found in Title 5 of the United States Code, section 7703 (5 U.S.C. § 7703) (as rev. eff. Dec. 27, 2012). You may read this law as well as other sections of the United States Code, at our website, http://www.mspb.gov/appeals/uscode/htm. Additional information about the United States Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, and 11. Additional information about other courts of appeals can be found at their respective websites, which can be accessed through http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

If you are interested in securing pro bono representation for an appeal to the United States Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for a list of attorneys who have expressed interest in providing pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Merit Systems Protection Board

17

neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.


FOR THE BOARD:                    _____
                                  William D. Spencer
                                  Clerk of the Board

Washington, D.C.

EXHIBIT A

## UNITED STATES OF AMERICA

## MERIT SYSTEMS PROTECTION BOARD

### THE CLERK OF THE BOARD

| | |
|---|---|
| | )     **Docket No. DC-0432-12-0751-I-2** |
| **LARAY J. BENTON,** | )     **Docket No. DC-0432-12-0751-S-2** |
|            **Appellant** | )     **Docket No. DC-0432-12-0751-I-1** |
| | )     **Docket No. DC-0432-12-0751-S-1** |
|        **Vs.** | ) |
| | ) |
| **U.S. NUCLEAR REGULATORY COMMISSION** | )     **Date: August 11, 2014** |
|            **Agency** | ) |
| | ) |

## APPELLANT'S REBUTTAL TO AGENCY RESPONSE TO PETITION FOR REVIEW

### INTRODUCTION

Pursuant to 5 C.F.R. § 1201.114, Mr. LaRay J. Benton (the Appellant) humbly submits this

PETITION FOR REVIEW (PFR) to the Board appealing the June 6, 2014, *INITIAL DECISION* order in which

U.S. Merit Systems Protection Board (MSPB or the Board) Administrative Judge (AJ) Kasandra Robinson

Styles erroneously affirmed my removal from Federal service by the U.S. Nuclear Regulatory

Commission (NRC or the Agency). Pursuant to 5 C.F.R. § 1201.115, Mr. Benton believes that AJ Styles'

initial decision and/or rulings: 1) contained erroneous findings of material fact; 2) was based on an

erroneous interpretation of statute or regulation or the erroneous application of the law to the facts of

the case; 3) were not consistent with required procedures or involved an abuse of discretion; 4) AJ

Styles erroneously failed to review new and material evidence or legal argument that was available

despite the petitioner's due diligence (i.e. being timely submitted on the record to the Board); 5)

contained erroneous findings that are "*not in accordance with law*"; and 6) the resulting errors affected

1

the outcome of the Appellant's case. As such, the Appellant humbly requests that the Board VACATE the *INITIAL DECISION* erroneously issued by AJ Styles.

### I.  **LEGAL STANDARD**

The Whistleblower Protection Enhancement Act (WPEA) prohibits any federal agency from taking, failing to take, or threatening to take or fail to take, any personnel action against an employee in a covered position because of the disclosure of information that the employee reasonably believes to be evidence of a violation of law, rule, or regulation, gross mismanagement or a waste of funds, or a substantial and specific danger to public health or safety. 5 U.S.C. § 2302(a)(2), (b)(8). In order to establish a prima facie case under the WEPA, the appellant must prove, by preponderant evidence, that he made a protected disclosure and that the disclosure was a contributing factor in an adverse action against him. 5 U.S.C. § 1221(e)(1); *Chambers v. Department of the Interior,* 116 M.S.P.R. 17, ¶ 12 (2011). Pursuant to 5 C.F.R. § 1201.115, a *petition for review* must state objections to the initial decision that are supported by references to applicable laws or regulations and by specific references to the record. 5 C.F.R. § 1201.115(d). Pursuant to 5 CFR § 1201.56(b),under 5 U.S.C. 7701(c)(2), **the Board is required to overturn the action of the agency** (i.e. removal, non-selection, denial of training, etc.), even where the agency has met the evidentiary standard stated in paragraph (a) of this section, if the appellant:

> *(1) Shows harmful error in the application of the agency's procedures in arriving at its decision;*
> *(2) Shows that the decision was based on any prohibited personnel practice described in 5 U.S.C. 2302(b); or*
> *(3) Shows that the decision was not in accordance with law.*

Pursuant to 5 CFR § 1201.56(c)(3), a **"*harmful error*"** is an error by the agency in the application of its procedures that is likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error. Reversal for "**harmful error**" is appropriate only when the record shows that the procedural error was likely to have caused the agency (or AJ) to reach a conclusion different from the one it would have reached in the absence or cure of the error. An agency

2

(or AJ) action will be reversed as being "not in accordance with law" only when it is unlawful in its entirety, i.e., if there is no legal authority for the action.

The Board has stated that, in determining whether the agency would have taken the same personnel action in the absence of a protected disclosure, it considers, inter alia, the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision. *Chambers,* 116 M.S.P.R. 17, ¶ 29; *see Carr v. Social Security Administration,* 185 F.3d 1318, 1323 (Fed. Cir. 1999). **Because direct evidence of a deciding official's retaliatory motive is rare, appellants are entitled to rely on *circumstantial evidence* giving rise to an *inference* of impermissible intent.** *Fellhoelter,* 568 F.3d at 971; *see Webster v. Department of the Army,* 911 F.2d 679, 689-90 (Fed. Cir. 1990); *see also Sheehan v. Department of the Navy,* 240 F.3d 1009, 1014 (Fed. Cir. 2001). As the reviewing court (i.e. U.S. Court of Appeals) recognized in *Fellhoelter,* in some cases (such as mine), "evidence of retaliatory motive [may also be] relevant to the [appellant's] prima facie case; for example, evidence of an employee's assertions of misconduct by a supervisor can be relevant to whether the employee has made a protected disclosure and also whether the supervisor has a strong motivation to retaliate." 568 F.3d at 971.

To show retaliation using circumstantial evidence, the appellant must show that the accused official knew of the protected activity, *cf. Warren v. Department of the Army*, 804 F.2d 654, 656 (Fed. Cir. 1986), and provide evidence showing a "'***convincing mosaic***'" of retaliation against him, by which a number of pieces of evidence, "'each of which supports a proposition only weakly can, when taken as a whole, provide strong support if all point in the same direction....'" *FitzGerald v. Department of Homeland Security,* 107 M.S.P.R. 666, ¶ 20 (2008) (quoting *Sylvester v. SOS Children's Villages Illinois, Inc.* 453 F.3d 900, 903 (7th Cir. 2006)). This mosaic generally includes three types of evidence: *(1) evidence from which an inference of retaliatory intent might be drawn, such as suspicious **timing** or similar behavior and comments directed at other employees in the protected groups; (2) evidence that*

3

*similarly situated employees received more favorable treatment than the appellant; and (3) evidence*

*that the reason asserted by the employer for its actions is pretextual.*

To show a "***convincing mosaic***" of retaliation, an employee can show that his disclosure was a

contributing factor to the personnel action of the Agency via the **knowledge/timing test** - by presenting

evidence that the official taking the personnel action was aware of the disclosure, and the official took

the action within a short enough ***time period*** after the disclosure for a reasonable person to conclude

that the disclosure was a contributing factor to the personnel action. *See Gonzalez*, 109 M.S.P.R. 250, ¶

19. For example, the fact that an appellant's disclosure and his removal were ***less than a year*** apart

supports a conclusion that his disclosure was a ***contributing factor*** to his removal under the

***knowledge/timing test***. *See Gonzalez*, 109 M.S.P.R. 250, ¶¶ 19-20 (the knowledge/timing test is

satisfied where the appellant's disclosure and his removal were slightly over a year apart).   Therefore,

according to *Gonzalez,* a protected disclosure ***generally*** meets the ***knowledge/timing test*** if the timing

between the appellant's disclosure and the subsequent personnel action taken is ***less than or equal to***

***one (1) year*** (i.e. Personnel Action Taken (t2) – Protected Disclosure Made (t1) $\leq$ 365 days).

Under certain circumstances, an appellant can establish whistleblower status by making a non-

frivolous allegation that the agency "***perceived***" them as whistleblower.   Specifically, an individual who

is perceived as a whistleblower is still entitled to the protections of the WEPA, even if he has not made

protected disclosures. *Jensen v. Department of Agriculture*, 104 M.S.P.R. 379, ¶ 11 n.3 (2007); *Juffer v.*

*U.S. Information Agency*, 80 M.S.P.R. 81, ¶ 12 (1998); *Special Counsel v. Department of the Navy*, 46

M.S.P.R. 274 , 278-80 (1990).  In cases like this, the issue of whether the appellant actually made a

protected disclosures is ***immaterial***; the issue of whether the agency perceived the appellant as a

whistleblower will essentially stand in for that portion of the Board's analysis in both the jurisdictional

and merits stages of the appeal.  *See King v. Department of Army* (2011). The appellant can also show

that the agency's perception of him as a whistleblower was a contributing factor in its decision to take

or not take the personnel action at issue through the knowledge/timing test. *See Rubendall v. Department of Health & Human Services*, 101 M.S.P.R. 599, ¶ 13 (2006).

With limited exceptions, if an agency takes any actions against an employee listed in 5 C.F.R. § 1201.3, known in this context as otherwise appealable actions (OAA), and if MSPB has jurisdiction to hear an appeal from a person with the employee's tenure, preference eligible status, etc., it may also consider a claim that the action was taken for one of the reasons prohibited by 5 U.S.C. § 2302(b). Such a claim is called an "affirmative defense" to the agency's action, and MSPB will consider it because Congress specified in 5 U.S.C. § 7701(c)(2)(B) that even if the agency proves its action by the required standard of proof, its decision may not be sustained if an employee shows "*that the decision was based on any prohibited personnel practice described in section 2302(b) of*" Title 5 of the U.S. Code. *See MSPB PPPs* at http://www.mspb.gov/ppp/ppp.htm

## II.   ERRONEOUS FINDING OF MATERIAL FACT & ERRONEOUS INTERPRETATION OF THE APPLICABLE LAW

### *VIOLATION OF LAW*

Mr. Benton provided a detailed account of the various Prohibited Personnel Practices and Merit System Principles that was violated by the NRC in his *Prehearing Submission (See* Docket No. DC-0432-12-0751-I-2, Tab #45) and relate Exhibits. On Page 48 of her *Initial Decision,* AJ Styles erroneously determined, "*I find no evidence that the agency violated any of the Merit System Principles, engaged in unlawful discrimination, disparate treatment or a hostile work environment…. Consequently, absent any such evidence, I am unable to find the appellant established his violations of law affirmative defense by the preponderance of the evidence standard.*" As detailed in PFR Exhibits A, B, and C, and as described below, NRC management violated several internal NRC regulations and policies, which in themselves have the full "*effect of law*," as well as various federal laws and/or statues proscribed by the U.S. Offic e of Personnel Management (OPM), MSPB, and the U.S. Equal Employment Opportunity Commission (EEOC) among others. In support of Mr. Benton's PFR, please consider the following:

5

**AJ Styles erred in NOT finding that the NRC did NOT meet their burden of proof pursuant to 5 U.S.C. § 4303 and 5 C.F.R. § 432.104 by the substantial evidence standard**

In order to remove an employee under Chapter 43 the NRC must prove that the agency: (1) Has an approved performance appraisal system; (2) communicated the performance standards and critical elements of his position to him at the beginning of the appraisal period; (3) determined his performance to be unacceptable in one or more critical elements of his position, and warned him of his performance inadequacies during the appraisal period; and (4) gave him a reasonable opportunity to improve his performance to an acceptable level. *See* 5 C.F.R. § 432.104 (2012); *Martin v. Federal Aviation Administration*, 795 F.2d 995, 997 (Fed. Cir. 1986); *Belcher v. Department of the Air Force*, 82 M.S.P.R. 230, ¶ 4 (1999).  The Agency must prove by ***substantial evidence*** that it has satisfied each of the aforementioned elements.  See *Shuman v. Department of the Treasury*, 23 M.S.P.R. 620, 628 (1984).  AJ Styles made an erroneous finding pursuant to the above stated statues and case law because the NRC did **_NOT_** meet **_EACH_** of its above stated burdens of proof by substantial evidence as detailed below:

(1) **The NRC has an approved performance appraisal system -** The Agency has submitted viable documentation proving that OPM last approved their performance appraisal system in November 2003. See *Initial Decision,* Pg. 5.  Mr. Benton asserts that OPM regulation in *5 CFR 430.209* specifically *requires* that the NRC "*submit to OPM for approval... any subsequent changes that modify any element of the [NRC's performance appraisal] system.*"  However, the Hearing Testimony (HT) of NRC HR Director Dawn Powell was inconsistent with OPM regulation in 5 CFR 430.209 where Ms. Powell falsely testified that "*OPM is not involved with a change in elements and standards it only approves the performance system.  An employee's supervisor of record can change elements and standards.*"   See *HT of Ms. Powell*. Ms. Powell's testimony is duly inconsistent with the provisions of *5 CFR 430.209.*  Mr. Benton's Elements and Standards are a pivotal "*element*" of the NRC's performance appraisal system.  Thereby any change and/or modification thereof would be duly considered a "*modification*" of an "*element*" of the NRC's performance appraisal system which must be submitted to OPM for approval PRIOR to implementation.  Additionally, the NRC also did NOT provided any legal documentation and/or letter from OPM specifically excusing the NRC from the legal statues of *5 CFR 430.209*, thereby making the finding by AJ Styles on this matter erroneous.  Therefore, the NRC DID NOT submit its changes and/or modifications to the Critical Elements and Standards of the GG-13 General Engineer (Reactor) position held by Mr. Benton to OPM for approval BEFORE implementing the desired changes at the NRC.  Thus, both the changes made by the NRC and the erroneous findings of material fact issued by AJ Styles on this matter are both considered "*not in accordance with law*."

**(2)  The NRC did NOT communicated the performance standards and critical elements of his position to Mr. Benton at the beginning of the appraisal period** – The Agency has not met this burden of proof. Both parties have already agreed to the material fact that Mr. Benton's rated Individual Elements and Standards for his GG-13 General Engineer (Reactor) position unexpectedly changed between fiscal year (FY) 2010 and FY 2011.  The NRC has previously stated in several submissions and/or statements before the Board that they did change Mr. Benton's E&S, and that they were permitted to do so without first seeking OPM approval.  See *HT* of Dawn Powell and Travis Tate.  Contrary to this assertion by the agency's witnesses, the NRC has not submitted ANY documentation on the record, nor have any of their witnesses testified to the fact that this is true.  Therefore, there's NOTHING submitted on the record (i.e. a regulatory statute, an internal NRC policy or procedure, a written letter from OPM excusing the NRC from any OPM doctrine or regulation, etc.) by the NRC to substantiate the Agency meeting this criteria by the substantial evidence standard.

In fact, the only thing that is true, and of which the agency has NOT directly refuted, is the material fact that pursuant to **5 C.F.R. § 430.209(a)**, and based on submitted discovery evidence, the written statements of the Agency to the record, and the direct hearing testimony from NRC witnesses Dawn Powell, Travis Tate, and Samson Lee, the NRC DID NOT submit the desired changes it made to the Critical Elements and Standards of Mr. Benton's GG-13 General Engineer (Reactor) position to OPM for formal approval PRIOR to allegedly issuing them to him in October 2011.  Therefore the Agency is out of compliance with OPM regulations within **5 C.F.R. § 430.209(a).**  The Agency's failure to meet their substantial evidence burden of proof is further is further substantiated by the several ***inconsistencies*** within the hearing testimony of Agency witnesses Mrs. Dawn Powell, Mr. Travis Tate, and Mr. Lee.  See *HT* of Powell, Tate, and Lee.

For example, Mrs. Powell testified under oath that the Branch Chiefs have the authority under OPM regulations to change the Critical Elements and Standards of the positions within their branch, and that Mr. Tate was authorized to change Mr. Benton's GG-13 General Engineer (Reactor) position Critical Elements and Standards in FY 2011.  When asked specifically 'Who changed Mr. Benton's Critical Elements and Standards from the version given in FY 2010 to those allegedly issued in FY 2011, Mrs. Powell replied that "***Mr. Tate made those changes***."  See *HT* of Powell.

During the hearing examination of Mr. Tate, when asked specifically 'Who changed Mr. Benton's Critical Elements and Standards from the version given in FY 2010 to those allegedly issued in FY 2011, Mr. Tate replied that, ***"PMDA [i.e. NRC Human Resources] made those changes, and I just implemented them***."  When Mr. Benton again directly asked Mr. Tate if he had changed Mr. Benton's Critical Elements and Standards from the version given in FY 2010 to those allegedly issued in FY 2011, Mr. Tate assertively replied, "***No I did not***."   Mr. Tate's testimony duly ***CONTRADICTS*** the testimony previously given by Mrs. Dawn Powell, thereby nullifying the material testimony given by the Agency's witnesses in support of the Agency's position and defense within the instant case.  See *HT* of Tate.  See *Initial Decision*, Page 9.

Additionally, during the hearing examination of Mr. Lee, when asked specifically 'Who changed Mr. Benton's Critical Elements and Standards from the version given in FY 2010 to those allegedly issued in FY 2011, Mr. Lee replied that, ***"well you know these things change***." When Mr. Benton again directly asked Mr. Tate if he had changed Mr. Benton's Critical Elements and Standards from the version given in FY 2010 to those allegedly issued in FY 2011, Mr. Lee assertively replied, "***No I did not***."  When Mr. Benton also directly asked Mr. Lee if Mr. Tate had changed Mr. Benton's Critical Elements and Standards from the version given in FY 2010 to those allegedly issued in FY 2011, Mr. Lee assertively replied, "***No he did not***." Lastly, when Mr. Benton also directly asked Mr. Lee if he had reviewed the changes to Mr. Benton's Critical

Elements and Standards from the version given in FY 2010 to those allegedly issued in FY 2011, **PRIOR** to them being allegedly issued to Mr. Benton by Mr. Tate, Mr. Lee assertively replied, "*No I did not*."  See *HT* of Lee.  See *Closing Arguments* of Mr. Benton.

To the contrary, Mr. Benton has provided testimony and evidence to the fact that the "*version*" of the written Elements and Standards issued to him, of which he signed receipt for in October 2011, was EXACTLY like and consistent with those given to him in FY 2010. Mr. Benton testified that he never received the alleged version of his FY 2011 Elements and Standards as presented and submitted by the NRC, and of which the NRC falsely and unlawfully remove him for.  Therefore, the alleged version of his FY 2011 Elements and Standards allegedly given by the NRC was never issued and/or communicated by the NRC, before the agency allegedly rated and issued him an "Unacceptable" performance rating of record for FY 2011.  See *HT* of Benton.  See *Closing Arguments* of Mr. Benton. See *Appellant's Hearing Exhibit S – OSC (Office of Special Counsel) Complaint*.

*(3)* **The NRC NEVER determined Mr. Benton's performance to be "unacceptable" in one or more critical elements of his position** - The Agency has not met this burden of proof.  During her hearing testimony, Mrs. Powell, the NRC's expert witness regarding Human Resource (HR) matters, testified that pursuant to OPM regulations the annual *Performance Appraisal* and/or current rating of record for ALL NRC employees SHALL be formally recorded on NRC Form 412. See *HT* of Powell and Benton.  See *Appellant's Hearing Exhibit C – FY 2010 and FY 2009 Performance Appraisals.*  Pursuant to NRC Management Directive 10.67, Non-SES Performance Appraisal System (*Appellant's Hearing Exhibit L* – NRC MD 10.67), based on the submitted discovery evidence, the affidavits, depositions, and other written statements of the Agency, the direct testimony from NRC witnesses Travis Tate and Samson Lee, and from the direct arguments and/or objections from the NRC's own counsel during the hearing, the NRC NEVER recorded on NRC Form 412 a formal rating of record and/or performance appraisal for Mr. Benton for the FY 2011 appraisal cycle.  Therefore the NRC **NEVER** determined "**Mr. Benton's performance to be "unacceptable" in one or more critical elements of his position**" See *HT* of Powell, Tate, Lee, and Benton.  See *Closing Arguments* of Mr. Benton.  See *Appellant's Hearing Exhibit KK - MSPB Deposition of Travis Tate*.  See *Appellant's Hearing Exhibit T - EEOC Deposition of Samson Lee*.

Clearly stated in NRC MD 10.67, Part II, Section E, ANNUAL PERFORMANCE RATING DISCUSSION, Item #3, Procedures, Sub-section (d)(2), Retention and Validity of Rating,  "***The employee's most current rating of record is considered the valid rating of record for official purposes and it constitutes the basis for personnel actions.***"  NRC witness Dawn Powell clearly testified to the fact that it is an OPM requirement that the formal rating of record and/or annual performance appraisal for ALL NRC employees must be recorded on NRC Form 412, which is consistent with the internal NRC policy and/or procedure of NRC MD 10.67.  Therefore, absent a documented rating of record of Mr. Benton for FY 2011, as formally recorded on NRC Form 412, pursuant to NRC MD 10.67, Part II, Section E(d)(2), even as it stands today, the formal and most current rating of record for Mr. Benton is actually that of his FY 2010 performance appraisal which documented a formal annual performance rating of "Minimally Successful" (MS).  See *Appellant's Hearing Exhibit C – FY 2010 and FY 2009 Performance Appraisals*.  See *HT* of Powell and Benton.  See *Closing Arguments* of Mr. Benton.

**_DUE PROCESS/HARMFUL ERROR – NRC MD 10.67, Part II, Section I, REDUCTION IN GRADE AND REMOVAL & AJ Styles' erroneous finding is inconsistent with internal NRC policy and/or procedures pursuant to NRC MD 10.67 and NRC-NTEU Collective Bargaining Agreement (CBA)_**

Mr. Lee even testified that pursuant to NRC MD 10.67 he cannot and never has removed an employee for having an MS rating in all of his 23 years of Federal Service.  See *HT* of Lee.  Additionally, as testified by NRC witness Dawn Powell, and as supported by the NRC CBA and MD 10.67, a "Minimally Successful" performance rating is an acceptable rating by the NRC. A "Minimally Successful" performance rating at the NRC is equivalent to that of a "Marginal" performance rating as described in OPM regulations at *5 CFR § 432.103* and *5 C.F.R. § 430.207,* and is sufficient for an employee to be retained in his employment within the Federal service. Therefore, the NRC through Mr. Samson Lee made the adverse decision to remove Mr. Benton from federal service based on a "Minimally Successful" performance rating, which was clearly "**not in accordance with law**" because it violated OPM regulations as proscribed in 5 USC 4303 (i.e. Chapter 43), 5 CFR 430, and 5 CFR 432.  Mr. Lee's removal of Mr. Benton from federal service was also considered a "*harmful error*" pursuant to *5 CFR § 1201.56(c)(3)* and *5 USC § 7701(c)(2)(A)* because it violated internal NRC policy within *NRC MD 10.67, Part II, Section I, REDUCTION IN GRADE AND REMOVAL, Item #1,* among others, and the NRC CBA with NTEU for the exact same reasons.  See *Appellant's Hearing Exhibit – BB – NRC/NTEU Collective Bargaining Agreement.*

Harmful error under *5 USC § 7701(c)(2)(A)* cannot be presumed; an agency error is harmful only where the record shows that the procedural error was likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error.  *Stephen v. Department of the Air Force*, 47 M.S.P.R. 672, 681, 685 (1991).  As detailed above, Mr. Lee has already testified to the fact **that pursuant to NRC MD 10.67 "he cannot and never has removed an employee for having an MS rating in all of his 23 years of Federal Service."** See *HT* of Lee.  There's NO internal NRC provision and/or policy which allows NRC management to remove an employee because of a "Minimally Successful" performance rating.  There's also no legal statue or OPM regulation within 5 USC 4303 (i.e. Chapter 43), 5 CFR 430, nor in 5 CFR 432 which allows the same.  Therefore, the NRC has clearly committed a "*harmful error*" pursuant to *5 CFR § 1201.56(c)(3)* and *5 USC § 7701(c)(2)(A)* because it violated its own internal policies and/or procedures within *NRC MD 10.67, Part II, Section E, ANNUAL PERFORMANCE RATING DISCUSSION, Item #3, Procedures, Sub-section (d)(2), Retention and Validity of Rating,* in removing Mr. Benton from federal service based off of a "Minimally Successful" performance rating.  "***The employee's most current rating of record is considered the valid rating of record for official purposes and it constitutes the basis for personnel actions.***"  Therefore the NRC NEVER determined Mr. Benton's performance to be "unacceptable" in one or more critical elements of his position, therefore Mr. Lee's removal of Mr. Benton from federal service was unlawful, a harmful error, violated his constitutional rights to **Due Process** for not following internal NRC regulations in MD 10.67 and MD 10.77, and unsubstantiated based off of the factual testimony of NRC witnesses Powell, Tate, and Lee.

Additionally, the unlawful action and/or harmful error made by the NRC to remove Mr. Benton from federal service, and the other affirmative defenses raised by Mr. Benton in this appeal, has caused him substantial irreparable harm in violating the terms and conditions of his employment; the loss of income and/or wages; loss of benefits; loss of stocks and other investments via the Thrift Savings Plan; caused him and his family financial, emotional, and psychological harm and/or distress; negatively affected his credit score; put his primary residence in Mitchellville, MD in jeopardy of foreclosure; and others as documented in Mr. Benton's submitted Stay request and supporting exhibits within Docket No. DC-0432-12-0751-S-1, Tabs 1 and 2.  Hence, Mr. Benton has clearly identified various internal inconsistency and/or inherent improbability in the fact findings of AJ Styles erroneous decision in determining that the NRC has met their burden of proof and in erroneously affirming Mr. Benton's removal from

the NRC. The NRC did NOT meet this burden of proof by the substantial evidence standard. See *Brought v. Department of Health and Human Services*, Docket No. DC07528610513 (1987); *Jackson v. Veterans Administration*, 768 F.2d 1325 (Fed. Cir. 1985); *Connolly v. Department of Justice*, 766 F.2d 507 (Fed. Cir. 1985).

**(4) The NRC did NOT warned Mr. Benton of his performance inadequacies during the appraisal period** - The Agency has not met this burden of proof. The agency also failed to warn Mr. Benton of his alleged "Unacceptable" performance inadequacies **during the appraisal period**. As supported by the record, his submitted EEOC and MSPB depositions to the Board, and the submitted PIRM document its self, NRC witness Travis Tate has already testified during this hearing that the first time he communicated to Mr. Benton that his performance had allegedly fell to the "Unacceptable" performance rating level was when he issued him his PIRM on November 30, 2011. See *HT* of Tate and Benton. See *Closing Arguments* of Mr. Benton. See *Appellant's Hearing Exhibit KK - MSPB Deposition of Travis Tate*. Pursuant to NRC MD 10.67, Part I, Section B, DEFINITIONS, the formal "appraisal period" at the NRC for FY 2011 went from October 1, 2010, to September 30, 2011. As testified, if Mr. Tate did not issue Mr. Benton his PIRM until **November 30, 2011**, which was about 61 days PAST the end of the appraisal period on September 30, 2011, then Mr. Tate in fact **warned Mr. Benton of any alleged performance inadequacies at the "Unacceptable" performance level OUTSIDE OF the performance appraisal period, which does NOT meet the standard and/or burden of proof requirement.** In fact, the hearing testimony of both Mr. Tate and Mr. Benton validates that NONE of the personnel actions taken against Mr. Benton "**during the appraisal period**" of the Performance Deficiency Notice (PDN) or the denial of his Within Grade Increase (WGI) had ANY language in it at all that warned and/or informed Mr. Benton that his performance had specifically fallen to the alleged "Unacceptable" performance level. In fact, the word "**unacceptable**" does NOT appear ANYWHERE within neither of the written personnel actions taken. As stated above, and as testified by Mr. Tate during the hearing, the word "**unacceptable**" does NOT appear in ANY personnel action taken against Mr. Benton until Mr. Tate issued him his PIRM on **November 30, 2011,** which was **outside** of the formal FY 2011 appraisal period which promptly ended on **September 30, 2011**. To date, the NRC has NOT submitted ANY evidence to contradict these material facts. Hence, the NRC did NOT meet this burden of proof and the erroneous findings of AJ Styles was NOT "*in accordance with law,*" and it was inconsistent with internal NRC regulations and policy within NRC MD 10.67 and the NRC Collective Bargaining Agreement (CBA)

**(5) The NRC did NOT give Mr. Benton a reasonable opportunity to improve his performance to an acceptable level -** Since the NRC did NOT communicate to Mr. Benton that his performance had fallen to the "Unacceptable" performance rating level during the FY 2011 performance appraisal period (October 1, 2010 to September 30, 2011), this constituted a failure of the NRC giving Mr. Benton an adequate opportunity to improve as supported by precedent MSPB case law. *Greer* distinguished by Smith v. Dep't of Health and Human Services, 35 M.S.P.R. 101, 104 (1987); Colgan v. Dep't of the Navy, 28 M.S.P.R. 116 (1985); Grant v. Dep't of Transp., U.S. Coast Guard, 24 M.S.P.R. 6637 (1984).

In summary, Judge Styles never considered the contradictory hearing testimony provided by the various NRC witnesses, which was direct evidence that weighed against the Agency NOt meeting their substantial evidence standard for EACH element listed above. Whereas it is duly clear and evident that

the NRC NEVER issued Mr. Benton an "*Unacceptable*" performance appraisal and that Mr. Tate did NOT

have legal authorization from OPM to change Mr. Benton's Critical Elements and Standards as

erroneously ruled by AJ Styles.  Thus, both the changes made by the NRC and the erroneous findings of

material fact issued by AJ Styles on this matter are both considered "*not in accordance with law*."

Additionally, Mr. Benton was issued a PIRM, and removed from federal service for "unacceptable

performance," when in fact his current appraisal of record was that of his FY 2010 performance

appraisal, of which he had a "***Minimally Successful***" performance rating.  Accordingly, on July 16, 2012,

his "***most current rating of record***" pursuant to the internal policies and/or procedures within *NRC MD*

*10.67, Part II, Section E, ANNUAL PERFORMANCE RATING DISCUSSION, Item #3, Procedures, Sub-section*

*(d)(2), Retention and Validity of Rating,* was that of a "***Minimally Successful***" performance rating.

Consistent with NRC MD 10.67 and the NRC CBA, Mr. Benton should have never been put on a

PIRM and had his removal proposed by Mr. Tate, and Mr. Lee should have NEVER removed him from

federal service, because the NRC NEVER issued Mr. Benton an "*Unacceptable*" performance appraisal

rating, as validated by the hearing testimony of both Mr. Tate and Mr. Lee.  See HT of Tate and Lee.

Subsequently, Mr. Lee cannot remove Mr. Benton from federal service based off of a "***Minimally***

***Successful***" performance rating.  Hence, Mr. Benton's proposed removal by Mr. Tate, and his ultimate

removal by Mr. Lee, are both considered "***not in accordance with law***" because the actions in its self

were unlawful pursuant to the Fifth Amendment (right to due process)and NOT based on  internal NRC

regulations, or federal statutes. *See Chrysler Corporation v. Brown*, 441 U.S. 281, 99 S. Ct. 1705, 60 L. Ed.

2d 208 (1979); Mr. Lee's and Mr. Benton's *Hearing Testimony*.  Lastly, AJ Styles was very biased in her

erroneous findings in that she did not consider and/or reference ANY of the negative and contradicting

testimony of Ms. Powell, Mr. Tate, and/or Mr. Lee that weighed against the NRC proving its burden of

proof by substantial evidence.

***AJ Styles' erred in NOT finding that the NRC knowingly violated the provisions of 18 USC § 1001 (false documents and concealment), 18 USC § 1028(a) (fraud), 18 USC § 1621 and 18 USC § 1623 (perjury), and 18 USC § 1505 (obstruction). New evidence exist which supports the appellant's claim***

In an effort to maintain the status quo until the MSPB complaint process can be completed, on or about October 5, 2012, the complaint's attorney (Mr. Gerald Gilliard, Esq.) submitted a *Motion For Stay* (i.e. Stay Request) with MSPB requesting that the NRC's decision to remove me from federal service be "Stayed," and that Mr. Benton be put on paid "Administrative Leave" until his case had been heard and decided on by Administrative Judge Kasandra Robinson Styles. This was also accepted by MSPB and assigned MSPB DOCKET NUMBER: DC-0432-12-0751-S-1. On October 16, 2012, the NRC for willfully committing ***Fraud*** by submitting an altered, materially false, and/or fictitious copy of Mr. Benton's FY 2010 performance appraisal to MSPB in defense of his Stay Request.  Mr. Benton believes that in retaliation for his various protected activities, the NRC through its counsel Sara McAndrew, Esq. (a formal representative of the NRC), premeditatedly and knowingly violated 18 USC § 1001, 18 USC § 1028(a), 18 USC § 1621 and 18 USC § 1623, and 18 USC § 1505 by willfully submitting, in "*bad faith,*" an altered and knowingly false (i.e. falsification) "version" of my FY 2010 performance appraisal (i.e. a "false identification document") as documentary evidence to another government agency (EEOC and MSPB), among other actions, which is a clear violation of Federal law.  On or about October 22, 2012, AJ Styles denied Mr. Benton's *Motion For Stay* citing the documentary evidence provided by the NRC (i.e. the fraudulent copy of Mr. Benton's FY 2010 performance appraisal) as the basis for her decision.

The record of this instant appeal closed after the hearing on or about January 8, 2014.  As a result of EEOC adjudicating Mr. Benton's discrimination complaint, ***"New and Material"*** evidence that was not available earlier, is available now but was not when the record closed. On February 10, 2014, Mr. Benton filed a Motion for Summary Judgment against the NRC.  The NRC responded objecting to Mr. Benton's motion on February 25, 2014, and provided substantial incriminating evidence supporting Mr. Benton's claims of perjury and fraud, among others.  Finally, on March 3, 2014, Mr. Benton responded to the Agency's objections specifically detailing how the Agency violated multiple laws on October 16, 2012, as supported by the U.S. Department of Justice Criminal Resource Manual. See PFR Exhibits A, B, and C.  Please note that although the Appellant's EEOC motions is directly written to support his claim of the NRC submitting fraudulent, materially false, and/or fictious information to the Commission (EEOC) in February 2013, the same arguments and evidence is also applicable in support of Mr. Benton's claims before MSPB by substantial evidence standard.

III.   **ERRONEOUS FINDINGS BY MAKING AND RELYING ON FACTUAL DETERMINATIONS THAT WERE UNSUPPORTED BY THE RECORD**

In erroneously adjudicating my removal appeal, AJ Styles issued several erroneous findings by making and relying on factual determinations that were unsupported by the record.  On review of such unsubstantiated rulings, the Board has routinely held that such non-factual determinations must be overturned and/or vacated in the best interest of justice.  In the precedent case of *Reid v. Department of Navy,* 2012 MSPB 94, Docket No. PH-0752-09-0357-I-2, at ¶9, on petition for review, the Board ruled that the administrative judge erred in making and relying on factual determinations that were

unsupported by the record and that the charges could not be sustained.  Likewise, Mr. Benton asserts

that his removal from federal service on July 16, 2012, cannot be sustained because in erroneously

adjudicating my removal appeal, AJ Styles issued several erroneous findings by making and relying on

factual determinations that were unsupported by the record, thereby erroneously affirming Mr.

Benton's removal based on material facts that were unsupported by the record.  Some of AJ Styles

erroneous determinations are outlined as follows:

### THE NRC DID NOT MET THEIR BURDEN OF PROOF

As detailed above, AJ Styles issued several erroneous findings by making and relying on factual

determinations that were unsupported by the record.  AJ Styles erroneously ruled that the NRC met

EACH of the aforementioned elements required to remove Mr. Benton under chapter 43.  However, Mr.

Benton has proven using legal statues and direct evidence from the record that the NRC failed to prove

by the substantial evidence standard that each of the above stated elements required to remove Mr.

Benton were met.  Please refer to the detailed analysis in *Section II* above.

### DISPARATE TREATMENT DISCRIMINATION

On Pages 24-25 of the *Initial Decision*, there were several erroneous findings made by AJ Styles

that were made relying upon allegedly factual determinations that were unsupported by the record.

First, AJ Styles erroneously wrote, "*I find the agency's evidence establishes by substantial evidence that*

*the appellant's performance was underlined unsuccessful in Critical Element 2 of his position.*"  AJ Styles, again

made an equivalent statement on Page 45 of her decision.  As explained in *Section II* above, there is no

factual evidence to support this finding.  To the contrary, Mr. Benton has already identified several

pieces of evidence, hearing testimony, legal statues, and internal NRC policies and procedures that

clearly validates that the NRC NEVER determined that Mr. Benton's performance was "unacceptable"

because NRC management NEVER issued him an "Unacceptable" performance appraisal rating as legally

documented on NRC Form 412.  See the *HT* of Tate, Lee, and Benton.  See in *Section II* above.

AJ Styles also erroneously writes, "*I find the appellant has not established that his removal was false or pretextual.*"  Again, as stated in *Section II* above, I detailed how the agency's removal action was, (1) Inconsistent with internal NRC policies and procedures located in **NRC MD 10.67** and the **NRC CBA**; (2) how it was clearly "***not in accordance with law***" because it violated the provisions of **5 U.S.C § 4303**, **5 C.F.R § 432.101**, **5 C.F.R § 432.103**, **5 C.F.R § 432.104**, **5 C.F.R § 432.105**, **5 C.F.R. § 430.207**, **5 C.F.R. § 430.208**, and **5 C.F.R. § 430.209**, among others;  and (3) was duly a "***harmful error***" pursuant to **5 C.F.R § 1201.56(c)(3)** and **5 U.S.C § 7701(c)(2)(A).**  Additionally, within his hearing testimony Mr. Lee has already testified to the fact **that pursuant to NRC MD 10.67 "he cannot and never has removed an employee for having an MS rating in all of his 23 years of Federal Service."**  See *HT* of Lee. There's NO internal NRC provision and/or policy which allows NRC management to remove an employee because of a "***Minimally Successful***" performance rating.  There's also no legal statue or OPM regulation within 5 USC 4303 (i.e. Chapter 43), 5 CFR 430, nor in 5 CFR 432 which allows the same.  However, Mr. Benton was duly subjected to ***disparate treatment*** by NRC Management when Mr. Lee removed him from federal service on July 16, 2012, despite his current performance appraisal of record being that of a "***Minimally Successful***" performance rating, which is clearly unlawful.   Therefore, this was yet another erroneous finding issued by AJ Styles that was unsupported by the record, and Mr. Benton duly established his race and sex discrimination claim by the preponderance of the evidence standard. Therefore, as a result of multiple "***harmful errors***" in the application of the NRC's internal regulations and procedures as written in the CBA, MD 10.67, and MD 10.77; and because the prohibited personnel action of removal was unlawful pursuant to 5 U.S.C. § 4303, 5 CFR 430.208(e), 5 C.F.R. § 430.209(a), 5 C.F.R. § 432.103, 5 C.F.R. § 432.104, and 5 C.F.R. § 432.105, among others,  which in its self is also a violation of the 12th PPP described in 5 U.S.C. 2302(b), I humbly request that the Board **VACATE** AJ Styles' *Initial Decision* affirming  my removal and the other affirmative defenses as stated and supported

14

by the record. Please review the records of my IRA and Removal appeals in their entirety for additional evidence and/or supporting documentation to validate my claims and/or disclosures.

### KNOWLEDGE TIMING TEST

*AJ Styles erred in not considering how Mr. Benton has established that he made protected whistleblower disclosures pursuant to 5 U.S.C. § 2302(b)(8) with circumstantial evidence via the Knowledge/Timing Test. AJ Styles also erred in not considering how I have established that I was "perceived" as a whistleblower by NRC management prior to the adverse personnel actions taken, and how these "perceptions" were a contributing factor in the agency removing Mr. Benton from Federal Service.*

To obtain corrective action, the appellant must meet his initial burden of establishing by preponderant evidence that his whistleblowing activity was a contributing factor in the personnel action in dispute. 5 U.S.C. § 1221(e)(1). Whistleblowing is a contributing factor if it affects an agency's decision to threaten, propose, take, or fail to take a personnel action. *Rubendall,* ¶ 11; *see* 5 C.F.R. § 1209.4(c). To prove that a disclosure was a contributing factor in a personnel action, the appellant need only demonstrate that *the fact of,* not necessarily the content of, the protected disclosure was one of the factors that tended to affect the personnel action in any way. *Rubendall,*¶ 11; *see Marano v. Department of Justice,* 2 F.3d 1137, 1143 (Fed. Cir. 1993). In a 1994 amendment to the WEPA, Congress established a *knowledge/timing test* that allows an employee to demonstrate that the disclosure was a contributing factor in a personnel action through *circumstantial evidence*, such as evidence that the official taking the personnel action "knew of the disclosure," and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. 5 U.S.C. § 1221(e)(1); *Rubendall,* ¶ 12; *see Perkins v. Department of Veterans Affairs,* 98 M.S.P.R. 250, ¶ 13 (2005). Although the *knowledge/timing* test is not the only way for an appellant to satisfy the contributing factor standard, it is "one of the many possible ways" to satisfy the standard. *Rubendall,* ¶ 12. Once the knowledge/timing test has been met, the appellant has shown that his whistleblowing was a contributing factor in the personnel action at issue.

15

In a 1994 amendment to the WPA, Congress established a knowledge/timing test that allows an employee to demonstrate that the disclosure was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official taking the personnel action "knew of the disclosure," and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. 5 U.S.C. § 1221(e)(1); *Rubendall,* 101 M.S.P.R. 599, ¶ 12; *see Perkins v. Department of Veterans Affairs,* 98 M.S.P.R. 250, ¶ 13 (2005). Although the knowledge/timing test is not the only way for an appellant to satisfy the contributing factor standard, it is "one of the many possible ways" to satisfy the standard. *Rubendall,* 101 M.S.P.R. 599, ¶ 12. Once the knowledge/timing test has been met, the appellant has shown that his whistleblowing was a contributing factor in the personnel action at issue, even if after a complete analysis of all of the evidence a reasonable fact finder could not conclude that the appellant's whistleblowing was a contributing factor in the personnel action. *Id.*

In his initially "faxed-in" IRA appeal and in his response to AJ Styles "*Jurisdiction Order*" (*See* Tabs 4-7of pleading record DC-1221-13-0508-W-1), for each protected disclosure/allegation raised, Mr. Benton specifically noted how he believed that his disclosures were *contributing factors* to the prohibited personnel actions to propose his removal from the NRC (Mr. Tate), and to actually remove him from federal service (Mr. Lee), among others, were EACH unlawfully taken by the NRC.  Specifically, Mr. Benton asserts that the timing between some of his protected whistleblowing disclosures/allegations and the adverse personnel action taken against him of his unlawful removal on July 16, 2012, were EACH *less than 365 days*, which meets the *knowledge/timing test* as explained in *Gonzalez* .  As outlined on Page 30 of AJ Styles *Initial Decision,* a *suspicious timing* summary calculation of how ALL of Mr. Benton's protected "*whistleblowing disclosures"* meet the *knowledge/timing test* is as follows:

- **Meeting w/ NRC DRA SES Directors Joseph Giitter and Samson Lee to discuss how Mr. Tate violated internal NRC regulations in MD 10.77 by denying me technical training for two (2)**

years (violation of NRC MD 10.77); NRC MD 10.67 in putting me on a PIRM and issuing me an "unacceptable" appraisal rating (violation of NRC MD 10.67); disparate Treatment (Title VII violation);  and a unhealthy and career limiting work environment (Title VII violation) (Appellant Hearing Exhibit – D): July 16, 2012 (Removal Date) - January 23, 2012 (Disclosure Date) = An approximate elapsed time of *ONLY 173 days*

- Initial call and meeting with NRC EEO counselor Tam Tran to discuss how Mr. Tate violated internal NRC regulations in MD 10.77 by denying me technical training for two (2) years (violation of NRC MD 10.77) (Appellant Hearing Exhibit – E):  July 16, 2012 (Removal Date)  - May 9, 2012 (Disclosure Date) = An approximate elapsed time of *ONLY 27 days*

- Meeting w/ NRC NRR SES Director Eric Leeds to discuss how Mr. Tate violated internal NRC regulations in MD 10.77 by denying me technical training for two (2) years (violation of NRC MD 10.77); NRC MD 10.67 in putting me on a PIRM and issuing me an "unacceptable" appraisal rating (violation of NRC MD 10.67); disparate Treatment (Title VII violation);  and a unhealthy and career limiting work environment (Title VII violation)(Appellant Hearing Exhibit – F): July 16, 2012 (Removal Date) – May 14, 2012 (Disclosure Date) = An approximate elapsed time of *ONLY 63 days*

- Meeting w/ NRC SES Deputy Executive Director of Operations (DEDO) Michael Weber to discuss how Mr. Tate violated internal NRC regulations in MD 10.77 by denying me technical training for two (2) years (violation of NRC MD 10.77); NRC MD 10.67 in putting me on a PIRM and issuing me an "unacceptable" appraisal rating (violation of NRC MD 10.67); disparate Treatment (Title VII violation);  and a unhealthy and career limiting work environment (Title VII violation)(Appellant Hearing Exhibit – G): July 16, 2012 (Removal Date) – May 17, 2012 (Disclosure Date) = An approximate elapsed time of *ONLY 60 days*

- Meeting w/ EEO counselor Tam Tran to discuss how Mr. Tate violated internal NRC regulations in MD 10.77 by denying me technical training for two (2) years (violation of NRC MD 10.77); NRC MD 10.67 in putting me on a PIRM and issuing me an "unacceptable" appraisal rating (violation of NRC MD 10.67); disparate Treatment (Title VII violation);  and a unhealthy and career limiting work environment (Title VII violation (Appellant Hearing Exhibit – E): July 16, 2012 (Removal Date) – May 14, 2012 (Disclosure Date) = An approximate elapsed time of *ONLY 63 days*

- Meeting w/ NRC EEO Counselors Tam Tran and Rhonda Bethea-Dorsey to file an informal EEO complaint  regarding  how Mr. Tate violated internal NRC regulations in MD 10.77 by denying me technical training for two (2) years (violation of NRC MD 10.77); NRC MD 10.67 in putting me on a PIRM and issuing me an "unacceptable" appraisal rating (violation of NRC MD 10.67); disparate Treatment (Title VII violation); harassment via the daily monitoring of my time and attendance (T&A) (Title VII violation); and a unhealthy and career limiting work environment (Title VII violation) (Appellant Hearing Exhibit – E): July 16, 2012 (Removal Date) – May 15, 2012 (Disclosure Date) = An approximate elapsed time of *ONLY 62 days*

- Informing NRC NTEU President Dale Yielding that NRC managers Travis Tate and Michael Gartman was harassing me by scrutinizing my Biblical quote of the 35th Psalms and scheduled an unsolicited psychiatric evaluation ) (Title VII violation, Freedom of Religion, and Freedom of Speech); (Appellant Hearing Exhibit – H):  July 16, 2012 (Removal Date) – May 14, 2012 (Disclosure Date) = An approximate elapsed time of *ONLY 63 days*

- Email discussions with NRR Director Eric Leeds and DEDO Michael Webber regarding Mr. Benton's technical training requests being denied over the last two (2) years (violation of NRC MD 10.77) (Appellant Hearing Exhibit – I):  July 16, 2012 (Removal Date) – May 21, 2012 (Disclosure Date) = An approximate elapsed time of *ONLY 55 days*

17

- **Email discussions with NRR Director Eric Leeds and DEDO Michael Webber regarding Mr. Benton's request to have DRA Deputy Director Samson Lee removed as the deciding official over his pending removal action (Appellant Hearing Exhibit – J)**: July 16, 2012 (Removal Date) – May 29, 2012 (Disclosure Date) = An approximate elapsed time of *ONLY 63 days*
- **Meeting w/ NRC DRA SES Director Samson Lee to give his oral and written reply to Mr. Tate's Proposal to Remove memorandum and how Mr. Tate violated internal NRC regulations in MD 10.77 by denying me technical training for two (2) years (violation of NRC MD 10.77); NRC MD 10.67 in putting me on a PIRM and issuing me an "unacceptable" appraisal rating (violation of NRC MD 10.67); disparate Treatment (Title VII violation); harassment via the daily monitoring of my time and attendance (T&A) (Title VII violation); and a unhealthy and career limiting work environment (Title VII violation)  (Appellant Hearing Exhibit – E)**: July 16, 2012 (Removal Date) – May 31, 2012 (Disclosure Date) = An approximate elapsed time of *ONLY 45 days*
- **Mr. Benton filing a "*formal*" EEO Complaint with the NRC Office of Small Business and Civil Rights (SBCR) alleging how Mr. Tate violated internal NRC regulations in MD 10.77 by denying me technical training for two (2) years (violation of NRC MD 10.77); NRC MD 10.67 in putting me on a PIRM and issuing me an "unacceptable" appraisal rating (violation of NRC MD 10.67); disparate Treatment (Title VII violation); harassment via the daily monitoring of my time and attendance (T&A) (Title VII violation); and a unhealthy and career limiting work environment (Title VII violation)  (Appellant Hearing Exhibit – K)**: July 16, 2012 (Removal Date)  – June 21, 2012 (EEO Disclosure Date) = An approximate elapsed time of *ONLY 25 days*

As calculated above, and as supported by the record, I have effectively proven how EACH of my protected disclosures/allegations raised have met the ***knowledge/timing test*** as explained in *Gonzalez*. Consequently, the appellant has satisfied the knowledge/timing test and, thus, has established that the fact of his disclosure, and, consequently, his perceived whistleblower status, was a contributing factor in the NRC's personnel action of removal on July 16, 2012.  As a result, the burden of proof shifts to the agency to establish by clear and convincing evidence that it would have taken the same personnel action in the absence of his various protected whistleblowing disclosure activities by clear and convincing evidence. *See Carr*, 185 F.3d at 1322; *Rubendall,* 101 M.S.P.R. 599, ¶ 14; *See Juffer v. U.S. Information Agency*, 80 M.S.P.R. 81, ¶ 12 (1998).  Mr. Benton has duly proven that NRC management had "***perceived***" him as a whistleblower, and how EACH of his protected whistleblowing disclosures were a ***contributing factor*** to the personnel actions taken by the NRC.  One who is perceived as a whistleblower is still entitled to the protections of the Whistleblower Protection Act, even if he has not made protected disclosures. *See Juffer v. U.S. Information Agency*, 80 M.S.P.R. 81, ¶ 12 (1998).

18

In *Chrysler Corporation* (1979), the U.S. Supreme Court discussed the situations in which agency issued regulations, policies, and/or procedures (i.e. NRC MD 10.67, MD 10.77, and the NRC CBA) have the "***force and effect of law***." Under the *Chrysler* test, agency regulations (i.e. internal NRC policies and management directives) have the force and effect of law when they prescribe substantive, as opposed to interpretive, rules, and they are promulgated pursuant to a specific statutory grant of authority and conform with any procedural requirements imposed by Congress. *Chrysler Corporation*, 441 U.S. at 301-303; *see also Horner v. Jeffrey*, 823 F.2d 1521, 1529 (Fed. Cir. 1987). We find that the OPM regulations at issue in these appeals have the force and effect of law. *See Atchison, Topeka, & Santa Fe Ry. Co. v. Scarlett*, 300 U.S. 471, 474, 57 S.Ct. 541, 543, 81 L. Ed. 748 (1937) (a regulation promulgated by an agency pursuant to statutory authority has the same force as though prescribed by the statute). On Page 32 of the *Initial Decision* AJ Styles erroneously wrote, "***I do not find that any of these disclosures were protected by 5 U.S.C. § 2302(b)(8).***" This is clearly an erroneous finding of material fact when Mr. Benton had clearly disclosed what internal NRC regulations (i.e. the effective laws) were violated by the NRC using the knowledge/timing test.

Furthermore, as detailed above, there are several pieces of evidence in the record that affirms that EVERYONE within Mr. Benton's direct management chain (i.e. Mr. Tate (first-line supervisor), Mr. Lee (second-line supervisor), Mr. Giitter (third-line supervisor), Mr. Leeds (fifth-line supervisor), and Mr. Weber (sixth-line supervisor)) EACH knew the details contained within the his written and verbal disclosures. Therefore, the fact that Mr. Benton made his disclosures either via meetings, emails, and filing formal complaints and/or grievances is sufficient to establish the "***knowledge***" element of the knowledge/timing test. *Marano*, 2 F.3d at 1143; *Rubendall*, 101 M.S.P.R. 599, ¶ 13. Thus, as documented on **Page 31** of the *Initial Decision*, Mr. Tate's assertion the "*he was not aware that the appellant had made any whistleblowing disclosures*" was clearly false and constitutes ***Perjury*** and ***Fraud***.

Lastly, as detailed herein, the deciding official over Mr. Benton's unlawful removal (Mr. Lee), had keen **"knowledge"** of his multiple protected whistleblower disclosure activities.  *See Mausser v. Department of Army,* 63 M.S.P.R. 41, at 44-45 (even though the appellant never revealed purported disclosures to any authority, the contributing factor test would be satisfied if the deciding official was aware that the appellant had threatened to make the disclosures and thus perceived him as a whistleblower).  Furthermore, the short length of **"time"** between Mr. Benton's disclosure of filing a formal EEOC discrimination complaint against the NRC on June 21, 2012, and Mr. Lee's decision to terminate him on July 16, 2012 - **25 days** - is sufficiently proximate that a reasonable person could conclude that the disclosure was a contributing factor in the termination. *See Mausser; Rubendall,* 101 M.S.P.R. 599, ¶ 13 (an interval of less than 6 months between the disclosure and the personnel action was sufficient to satisfy the knowledge/timing test); *but see Costello v. Merit Systems Protection Board,* 182 F.3d 1372, 1377 (Fed. Cir. 1999) (a 2-year gap between the disclosures and the allegedly retaliatory action was too long an interval to justify an inference of cause and effect between the two).  Therefore, AJ Styles findings of material fact regarding EACH of my disclosures and my affirmative defenses were expressly erroneous, unsupported by the record, and not in accordance with MSPB and federal case law.

***AJ Styles erred in NOT assessing the Carr factors in determining rather the agency established by clear and convincing evidence that it would have taken the same personnel actions in the absence of my whistleblowing disclosures.  AJ Styles erred in NOT finding that the NRC DID NOT meet the "clear and convincing" evidence standard.  AJ Styles erred in not considering the NRC's Motive to Retaliate, and erred in failing to consider the connection between my prior whistleblowing activity and the personnel actions at issue.***

AJ Styles erred by adjudicating my removal claim and affirmative defenses without considering and assessing the NRC's motive to retaliate against me for my protected grievance, EEO, and whistleblower disclosure activities. As evidence by the record, for EACH of my raised disclosures/allegations within my IRA appeal, I included a section termed NRC'S MOTIVE TO TAKE THE PERSONEL ACTION where I provided a summary of what I believed was the NRC's motive to take the multiple adverse and prohibited personnel actions that NRC management had taken (See DOCKET #: DC-

20

1221-13-0508-W-1, Tabs 4 and 6).  However, as evidence by the record, AJ Styles NEVER eluded to the fact that this material evidence was even considered in making ANY of her orders, decisions, and other issuances regarding my removal appeal case, despite Mr. Benton expressly making reference to them.

In determining whether an agency has shown by clear and convincing evidence that it would have taken the same personnel action in the absence of whistleblowing, the Board will consider the following factors (collectively known as the ***Carr* factors**): (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Carr,* 185 F.3d at 1323; *Azbill,* 105 M.S.P.R. 363, ¶ 17.  The Board does not view these factors as discrete elements, each of which the agency must prove by clear and convincing evidence.  Rather, the Board will weigh the factors together to determine whether the evidence is clear and convincing as a whole. *Phillips v. Department of Transportation,* 113 M.S.P.R. 73, ¶ 11 (2010); *see Yunus v. Department of Veterans Affairs,* 84 M.S.P.R. 78, ¶ 27 (1999), *aff'd,* 242 F.3d 1367 (Fed. Cir. 2001).

In assessing the evidence of the agency, the administrative judge's findings on the charges should be based either on undisputed facts or, in significant part, on her assessment of the credibility of the witnesses.  The record does not evidence that AJ Styles considered, applied, and/or evaluated ANY of the above stated ***Carr* factors,** and as a result NONE of her findings were based on based on undisputed facts.  As presented above, AJ Styles has NOT presented ANY evaluation within her initial decision affirming this evidentiary fact for EACH of the thirteen (13) disclosures/allegations raised before the Board.  Hence, absent any evaluation of the ***Carr* factors**, AJ Styles' erroneous finding that "***I do not find that any of those claims demonstrate evidence a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, a abuse of authority or a substantial and specific danger to public health and safety," is*** both unfounded and unsubstantiated, which in turn evidences an abuse of

discretion on her part. As presented above, Mr. Benton clearly detailed how the adverse and prohibited

personnel actions taken against him by NRC management violated internal NRC regulations in MD 10.67,

MD 10.77, and the CBA, as well as multiple OPM regulations regarding personnel management.

Therefore, the subsequent affirmation of Mr. Benton's removal from federal service is adversely based

on an erroneous and unsubstantiated finding of material fact by AJ Styles.

### *AJ Styles also erred in clearly violating 5 CFR § 1201.41 and Chapter 12 of the MSPB Administrative Judge Handbook by NOT following applicable MSPB and Federal case law, as presented and supported herein and by the record, in tacitly making her factual determinations regarding Mr. Benton's removal*

Additionally, as explained above, and supported by the record, AJ Styles also erred in failing to

consider how Mr. Benton provided material evidence that he did in fact make nonfrivolous

whistleblower disclosures via circumstantial evidence through the knowledge/timing test, and how the

motives of the NRC to take the personnel actions being appealed were clearly established. On the Page

13 of her *Initial Decision*, AJ Styles erroneously stated that Mr. Benton "testified that he was rated

unsuccessful in 2010." To the contrary, Mr. Benton asserts that he clearly stated that he was rated as

"Minimally Successful" in 2010. Additionally, there is NO legal statute or case law that supports her

erroneous conclusion that a manager meeting with or emailing his employee or an employee asking for

advice/assistance from more senior employees, constitutes "Unacceptable" performance. See Page 13 of

*Initial Decision*, *HT* of Benton, and the closing remarks of the Appellant. Hence, AJ Styles has erroneously

ruled on Page 49 of her decision that "*I find the agency has shown by substantial evidence that the

appellant's performance was unacceptable,*" which has adversely affected the outcome of my case. As

presented above and as follows, AJ Styles also erred in NOT following applicable MSPB and Federal case

law, as presented and supported herein and by the record, in tacitly making her factual determinations

regarding Mr. Benton's removal. Had Judge Styles properly evaluated the evidence on record, and

considered the applicable precedential case law as presented in *Gonzalez*, *Jensen*, *Chrysler Corporation*,

and Carr, among others, in evaluating Mr. Benton's disclosures and affirmative defenses, she would

22

have properly determined that Mr. Benton's removal was in fact retaliatory, evidenced EEO reprisal, and *"not in accordance with law."*

The reviewing court has tacitly approved of the Board's approach in following applicable case law. *See Fellhoelter,* 568 F.3d at 971 (citing *Kalil v. Department of Agriculture,* 479 F.3d 821, 824-25 (Fed. Cir. 2007); *Greenspan v. Department of Veterans Affairs,* 464 F.3d 1297, 1303-04 (Fed. Cir. 2006); *Clark v. Department of the Army,* 997 F.2d 1466, 1470-71 (Fed. Cir. 1993), *superseded by statute on other grounds as recognized in Horton v. Department of the Navy,* 66 F.3d 279, 284 (Fed. Cir. 1995)); *but see Kahn v. Department of Justice,* 618 F.3d 1306, 1316 (Fed. Cir. 2010) (stating in *dicta* that, in a hearing on the merits, the Board should make findings on whether (1) the acting official had authority concerning the personnel action; (2) the employee made a protected disclosure; (3) the acting official used his authority against the employee; (4) the protected disclosure was a contributing factor in the personnel action; and (5) the agency would have taken the same action in the absence of the protected disclosure. One who is perceived as a whistleblower is entitled to the protection of the WPA, even if he has not made protected disclosures. *See Jensen* (2007); *Juffer* (1998).

Travis Tate and Director Samson Lee have both testified that, 1) they had authority concerning the personnel actions of Mr. Benton's proposed removal (Tate) and subsequent removal (Lee); and 2) prior to his removal on July 16, 2012, that they EACH knew of Mr. Benton's various whistleblowing activities as documented in his FY 2010 grievance, various meetings with and emails to his supervisors, and his formal EEOC complaint against the NRC. Additionally, both Mr. Tate and Mr. Lee used their authority to both propose the removal of and subsequently remove Mr. Benton, respectively. See *HT* of Tate, Lee, and Benton; *Docket No.* DC-0432-12-0751-I-1, Tab #5, Exhibit F; *Appellant Hearing Exhibits –* D, E, F, G, H, I, J and K; *Docket No.* DC-0432-12-0751-I-1, *"Agency Opposition to Stay Request Part 3,"* Attachment F; and *Docket No.* DC-0432-12-0751-I-1, *"Agency Opposition to Stay Request Part 4,"* Attachment J, Item #16.

As presented above, Mr. Benton has duly established by preponderant evidence that he made at least one protected disclosure, and that his protected disclosures were a contributing factor in his removal using the knowledge/timing test consistent with case law in *Gonzalez*. Mr. Benton has also established how the various personnel actions taken against him by the NRC, to include his removal, "was not in accordance with law" because they violated the internal rules, regulations, policies, and/or procedures (i.e. MD 10.67, MD 10.77, and CBA) of the NRC consistent with case law in *Chrysler Corporation. See Chambers v. Department of the Interior,* 515 F.3d 1362, 1367 (Fed. Cir. 2008). Lastly, a reasonable belief exists if a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the appellant could reasonably conclude that the actions of the government evidence one of the categories in section 2302(b)(8)(A). *Lachance v. White,* 174 F.3d 1378, 1381 (Fed. Cir. 1999). To establish that the appellant had a reasonable belief that a disclosure met the criteria of 5 U.S.C. § 2302(b)(8), he need not prove that the condition disclosed actually established a regulatory violation or any of the other situations detailed under 5 U.S.C. § 2302(b)(8)(A)(ii); rather, the appellant must show that the matter disclosed was one which a reasonable person in his position would believe evidenced any of the situations specified in 5 U.S.C. § 2302(b)(8). *Schnell,* 114 M.S.P.R. 83, ¶ 19. However, the NRC has not proved by clear and convincing evidence they would have taken the same adverse and prohibited personnel actions against Mr. Benton in the absence of his protected disclosures.

### *AJ Styles abused her discretion in failing to fully join my IRA and Removal appeals*

The Board is authorized to join two or more appeals filed by the same appellant and hear and decide them concurrently if it determines that joinder *"could result in the appeals' being processed more expeditiously and would not adversely affect any party."* 5 U.S.C. § 7701(f)(2); *see* 5 C.F.R. § 1201.36(b). The decision whether to join two appeals is a matter committed to the sound discretion of the administrative judge or the Board in accordance with the guidance set forth above. Mr. Benton asserts

that **ALL** eleven (11) of his raised disclosures/allegations within his IRA appeal (DC-1221-13-0508-W-1) are **DIRECTLY** related to the adjudication of his *removal* appeal (DC-0432-12-0751-I-2) and the various the "*Affirmative Defenses*" raised therein. Therefore, both of Mr. Benton's appeals are *extremely* like and related concerning the evidence, supporting documentation; and the adjudication of the material facts of EEO reprisal, denial of training, and my removal on July 16, 2012, among others, whereas both parties actually cross-reference material facts from both cases in the overall adjudication and presentation of facts in EACH case. In fact, within her *Initial Decision* AJ Styles' made multiple cross-references to Mr. Benton's IRA appeal in support of her several erroneous findings of material fact. See *Initial Decision* Footnotes Nos. 5, 8, 10, and 11.

Additionally, the NRC has the **EXACT** same counsel assigned to both cases: i.e. Ms. Elva Bowden Berry, Esq.; Ms. Molly Barkman Marsh, Esq.; and Mr. Mark Maxin, Esq. Therefore, joinder "*[w]ould result in the appeals' being processed more expeditiously and would not adversely affect any party,*" and would be a more effectively and efficient use of U.S. Government resources, and funds, as to not be *wasteful* in federal government operations. See *King v. Department of Army*, 2011 MSPB 83, Docket No. AT-1221-11-0037-W-1 (2011).

Without the jurisdictional claim of his unlawful removal (as presented here in Docket No.: DC-0432-12-0751-I-2), and as supported by his various disclosures and/or non-frivolous allegations as presented in his IRA appeal, it becomes overly burdensome for Mr. Benton to meet the evidentiary standard of "*preponderance of the evidence*" in proving his various affirmative defenses pertaining to the violation of several laws, rules, regulations, policies, procedures, PPPs, and MSPs. Thus, by his appeals being "*separately*" adjudicated, Mr. Benton is duly prohibited from "*effectively*" raising both the PPPs and MSPs to be enforced by the Board, thus severely limiting the proper adjudication and overall legal content, context, and evidentiary basis in support of his removal appeal within the instant case. Furthermore, in keeping his appeals separate, AJ Styles has also failed to consider how the

25

presented violations of PPPs and MSPs taken by the NRC management within Mr. Benton's IRA appeal ALL constituted reprisal for having made the various EEO, grievance, and whistleblowing disclosures between December 2009 (i.e. my discussions with EEO counselor Kenneth Bailey) and March 2013 (i.e. my complaint to OSC) as listed above. Where, as here, I have filed an complaint with OSC in support of an overall claim of reprisal for whistleblowing activity, an administrative judge should not take a *"piecemeal"* approach by adjudicating separate, but related, personnel actions in separate appeals. Given the similarity of the issues presented and the likely overlap of evidence and witnesses, joinder of Mr. Benton's IRA and Removal appeals for adjudication was appropriate. *See Groseclose v. Department of the Navy,* 111 M.S.P.R. 194, ¶ 14 (2009). Mr. Benton believes that this was an erroneous decision taken by AJ Styles which has negatively affected the outcome of his case, whereas AJ Styles erred by adjudicating his claims and affirmative defenses concerning his *Removal* appeal without considering the record as a whole within the context of his IRA appeal, and by denying corrective action in his Removal appeal on the ground that *"the appellant has not established that his removal was false or pretextual,"* and that he *"failed to establish that [his] disclosures were a contributing factor in the agency's actions."* *See King.* Therefore, AJ Styles' decision in this regard constituted an abuse of discretion. *Cf. Stein-Verbit v. Department of Commerce,* 72 M.S.P.R. 332, 338-42 (1996) (the administrative judge's decision to bifurcate the charges under the circumstances of the case constituted an abuse of discretion where the decision incurred on the appellant's right to present a full defense and to have a meaningful right to a hearing).

### *AJ Styles erred in failing to properly assess the Agency's removal penalty*

The Appellant challenges the administrative judge's penalty analysis as it pertains to his removal. In particular, Mr. Benton contends that AJ Styles failed to make an "*independent"* and "*thorough*" assessment of the **Douglas** factors in adequately accessing the **removal penalty** in his particular case. In fact, the record evidences that in the likelihood of the NRC's personnel actions being

sustained, NO assessment of the *Douglas* **factors** have been made at all by AJ Styles to determine rather the Board should mitigate the penalty of removal and/or not. When not all of the charges are sustained, the Board will consider carefully whether the sustained charges merited the penalty imposed by the agency. *Howard v. Department of the Air Force*, 114 M.S.P.R. 482, ¶ 5 (2010); *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 308 (1981). In such circumstances, the Board may mitigate the agency's penalty to the maximum reasonable penalty. *Lachance v. Devall*, 178 F.3d 1246, 1260 (Fed. Cir. 1999); *Howard*, 114 M.S.P.R. 482, ¶ 5.

Additionally, to raise a disparate penalty claim, the appellant must first point to specific employees that were similarly-situated and received a more lenient penalty and/or treatment. *See Lewis v. Department of Veterans Affairs*, 113 M.S.P.R. 657, ¶¶ 5-6 (2010). In addressing the evidentiary standard set by the Board's ruling in *Lewis* as stated above, Mr. Benton refers the Board to **Docket No. DC-1221-13-0508-W-1, PFR** Attachments I, II, and III to highlight his previous attempts to specifically prove that employees who were similarly-situated and received a more lenient penalty and/or more favorably treated, which he believes evidences pretext to unlawful discrimination and a violation of the 1st Prohibited Personnel Practice, 5 USC § 2302(b)(1). Attachment I, Questions 2, 4, 8, and 10, evidences that within his EEO case, Mr. Benton's counsel requested this exact same information regarding the NRC's previous "***penalty***" actions for "***similarly-situated employees***" from the NRC. However, release of such information has been unlawfully **DENIED** by the Agency. Attachment II, Page 3, Document Request No. 10, evidences that Mr. Benton's counsel AGAIN requested this information from the NRC, which was again DENIED by the NRC.

The 12th Prohibited Personnel Practice (5 U.S.C. § 2302(b)(12)) arose from a Court ruling that agencies are required to follow the procedures of 5 U.S.C. Chapter 43 (Chapter 43) in order to take an action based on unacceptable performance. 5 U.S.C. § 2302(b)(12) directed the use of performance appraisals as the basis for actions both rewarding and removing employees, among other things. 5

U.S.C. § 4302(a)(3).  As the court noted, the Board feared that agencies might attempt to use Chapter 75 in place of Chapter 43 to avoid the merit principles embodied in Chapter 43, but the court found that agencies have **"no escape route from merit principles."**  In its analysis, the court stated that, under section 2302(b)(12)), it is a prohibited personnel practice (PPP) to violate the merit system principles set out in section 2301(a).  The court specifically noted two (2) merit system principles in section 2301 are particularly relevant:

- *(6) Employees should be retained on the basis of the adequacy of their performance, inadequate performance should be corrected, and employees should be separated who cannot or will not improve their performance to meet required standards; and*
- *(7) Employees should be provided effective education and training in cases in which such education and training would result in better organizational and individual performance.*

Based on these authorities, the court held that, under 5 U.S.C. § 7701(c)(2)(B), which provides that an adverse action may not be sustained against an employee if the decision was based on a PPP and/or 5 U.S.C. § 2302(b)(12).

First, the 6th Merit System Principle plainly states that "***employees should be separated who cannot or will not improve their performance to meet required standards.***"  However, the record evidences that over a three (3) year period PRIOR to his removal, Mr. Benton repeatedly made requests to NRC management to receive "***technical***" training which would have assisted him in improving his performance "***to meet required standards***" of Critical Element 2, "*Technical Analysis and Problem Solving*."  Therefore, Mr. Benton's actions in the job actively displayed his sincere attempts at improving his performance up to the Fully Successful performance standard.  Secondly, contrary to the adverse actions of NRC management, the 7th Merit System Principle clearly states that Mr. Benton ***"should be provided effective education and training in cases in which such education and training would result in better organizational and individual performance."***  However, as supported by the record, NRC management repeatedly DENIED Mr. Benton effective training which would have resulted in better individual performance, but provided and APPROVED the technical training requests of his peers (i.e.

females and Caucasian males) (i.e. disparate treatment). See the *Hearing Testimony* (HT) of Mr. Tate, Mr. Lee, and Mr. Parillo. Consequently, Mr. Benton's peers, whom ALL where APPROVED for and received "technical" training, were ALL retained in their positions with the agency (the specific names, sex, and race of which Mr. Benton has routinely pointed out within both his IRA and Removal appeals, as supported by the record). To the contrary, the Appellant, whom was DENIED ALL requests for "technical" training by NRC management over a sustained three (3) year period, was removed from his position with the agency entirely, despite his current appraisal rating of record being at the *Minimally Successful* performance level. How is this considered "*fair and equitable*" treatment? In fact, this is clearly "***disparate treatment.***" However, AJ Styles erred in failing to consider NRC management's repeated DENIAL (i.e. 40 instances) of his technical training requests, and make an "***independent"*** and "***thorough***" assessment of the ***Douglas*** factors in adequately accessing the ***removal penalty*** within the instant case.

### *The administrative judge erred in not finding a First Amendment and/or Fifth Amendment violations*

The Supreme Court has recognized that public employees, like all citizens, enjoy a constitutionally protected interest in freedom of speech. *Connick v.Myers*, 461 U.S. 138, 142 (1983); *Pickering v. Board of Educ.*, 391 U.S. 563, 568 (1968); *Chambers v. Department of the Interior*, 103 M.S.P.R. 375, ¶ 33 (2006). Speech that relates to any matter of political, social, or other concern to the community (i.e. Religion and/or Biblical texts) may be considered a matter of public concern. *See Connick*, 461 U.S. at 146. Courts must examine the "content, form, and context of a given statement, as revealed by the whole record" to determine whether the speech qualifies as a matter of public concern. Certainly, an unaltered, un-manipulated, and ***direct*** Biblical quote of the 35th Psalms is a form of religious expression, and Religion is a matter of public concern entitled to the full protection of the First Amendment. *See, e.g., Connick*, 461 U.S. at 148. My use of a direct quote of the 35th Psalms was ***arbitrarily*** chosen among the various chapters of the King James Version of the Bible. I assert that I

29

always keep a small pocket Bible at my desk, and that before I began my workday, I would ALWAYS start my day off by reading both the 27th and 35th Psalms. The evidence of the record clearly validates that in the past, I have routinely used various quotes from the book of Psalms, and various other quotes of religious context as a part of my email signatures at the NRC, without ever being identified as a concern by NRC management (See PFR Exhibit D). I have also provided emails evidencing how other similarly situated employees such as Mr. Haile Lindsay and Mrs. Cornelia Burkhalter also use Biblical quotes in their email signatures (see Docket No. *DC-1221-13-0508-W-1*, PFR Attachments IV-VII), but they were never ordered to have a psychiatric evaluation done as a result of their religious expressions as I have.

**Therefore, why was I being treated differently by NRC management (i.e. disparate treatment)?**

However, this was evidence that was NEVER adequately considered and/or evaluated by AJ Styles. In fact, AJ Styles **NEVER** addressed my claims concerning violations of my constitutionally protected rights of both the First Amendment (Freedom of Speech and Freedom of Religion) and Fifth Amendment (right to due process) at all within ANY of her court rulings, and certainly not within her *Initial Decision*. Hence, these were material errors made by AJ Styles which has adversely affected the outcome of my case. Therefore, AJ Styles finding that, "*I find no evidence that the appellant was subjected to intimidation, ridicule or insult or subjected to an environment heavily charged with discrimination... I do not find the appellant's hostile [work] environment claim negates he agency's removal action,*" is clearly erroneous and unsupported by the record of the appeal.

## XI.   CONCLUSION

I humbly request that the Board VACATE the erroneous ***INITIAL DECISION*** issued by AJ Styles affirming my removal, GRANT my petition for review, VACATE the initial decisions denying my stay requests (**Docket Nos. DC-0432-12-0751-S-2,** DC-1221-13-0508-S-1 and DC-0432-12-0751-S-1), GRANT me reinstatement, a "*retroactive*" stay of all applicable personnel actions effective from **July 16, 2012,** forward, as described herein in accordance with the Opinion and Order of the Board.

30

I have read this statement, consisting of **30** pages, and it is true, complete, and correct to the best of my

knowledge and belief.

Respectfully submitted, _____          _____

> LaRay J. Benton                                                      Date
> 1731 Stourbridge Court
> Mitchellville, MD. 20721
> (864) 357-4545 (phone)
> laraybenton@gmail.com (email)

Signed and sworn to before me this _____ day of _____ 2014, at

_____

(address)

_____

Neutral witness or notary

31

EXHIBIT B

## UNITED STATES OF AMERICA

## MERIT SYSTEMS PROTECTION BOARD

### THE CLERK OF THE BOARD

|  |  |  |
|---|---|---|
| LARAY J. BENTON, | ) | Docket No. DC-0432-12-0751-I-2 |
| **Appellant** | ) | Docket No. DC-0432-12-0751-S-2 |
|  | ) | Docket No. DC-0432-12-0751-I-1 |
|  | ) | Docket No. DC-0432-12-0751-S-1 |
| Vs. | ) |  |
|  | ) |  |
| U.S. NUCLEAR REGULATORY COMMISSION | ) | Date: August 15, 2014 |
| **Agency** | ) |  |
|  | ) |  |

### APPELLANT'S REBUTTAL TO AGENCY RESPONSE TO PETITION FOR REVIEW

### INTRODUCTION

Pursuant to 5 C.F.R. § 1201.114, Mr. LaRay J. Benton (the Appellant) files this rebuttal to the Agency's Response to his Petition for Review dated August 5, 2014. Absent meeting the substantial evidence standard, the Board can't sustain the U.S. Nuclear Regulatory Commission's (NRC or the Agency) charged performance deficiencies, or lack thereof, in light of the NRC's invalid performance standards, violations of law, acts of retaliation and harassment, and harmful errors committed against Mr. Benton. There were also several judicial errors committed by Administrative Judge Kasandra Robinson Styles (AJ Styles), as well as several erroneous interpretation of multiple statues and/or regulations as required by 5 CFR § 1201.115. Mr. Benton's Petition for Review (PFR or Petition) dated July 11, 2014, duly satisfies the requirements under 5 CFR § 1201.115. Therefore, the Petition must be GRANTED, the Initial Decision of AJ Styles VACATED, his unlawful removal reversed, and Mr. Benton restored to Federal service effective July 16, 2012, forward. Mr. Benton's rebuttal to the Agency's response to his PFR, and the affirmation of his stated claims are substantiated below. Attachment 1 lists all pertinent previously and currently referenced exhibits, as attached.

the outcome of the Appellant's case.  As such, the Appellant humbly requests that the Board VACATE

the *INITIAL DECISION* erroneously issued by AJ Styles.

## I.    **LEGAL STANDARD**

The Whistleblower Protection Enhancement Act (WPEA) prohibits any federal agency from

taking, failing to take, or threatening to take or fail to take, any personnel action against an employee in

a covered position because of the disclosure of information that the employee reasonably believes to be

evidence of a violation of law, rule, or regulation, gross mismanagement or a waste of funds, or a

substantial and specific danger to public health or safety. 5 U.S.C. § 2302(a)(2), (b)(8).  In order to

establish a prima facie case under the WEPA, the appellant must prove, by preponderant evidence, that

he made a protected disclosure and that the disclosure was a contributing factor in an adverse action

against him. 5 U.S.C. § 1221(e)(1); *Chambers v. Department of the Interior,* 116 M.S.P.R. 17, ¶ 12 (2011).

Pursuant to 5 C.F.R. § 1201.115, a *petition for review* must state objections to the initial decision that

are supported by references to applicable laws or regulations and by specific references to the record. 5

C.F.R. § 1201.115(d).  Pursuant to 5 CFR § 1201.56(b),under 5 U.S.C. 7701(c)(2), **the Board is required to**

**overturn the action of the agency** (i.e. removal, non-selection, denial of training, etc.), even where the

agency has met the evidentiary standard stated in paragraph (a) of this section, if the appellant:

> *(1) Shows harmful error in the application of the agency's procedures in arriving at its decision;*
> *(2) Shows that the decision was based on any prohibited personnel practice described in 5 U.S.C.*
> *2302(b); or*
> *(3) Shows that the decision was not in accordance with law.*

Pursuant to 5 CFR § 1201.56(c)(3), a **"harmful error"** is an error by the agency in the application of its

procedures that is likely to have caused the agency to reach a conclusion different from the one it would

have reached in the absence or cure of the error.  Reversal for "**harmful error**" is appropriate only when

the record shows that the procedural error was likely to have caused the agency (or AJ) to reach a

conclusion different from the one it would have reached in the absence or cure of the error.  An agency

(or AJ) action will be reversed as being "not in accordance with law" only when it is unlawful in its entirety, i.e., if there is no legal authority for the action.

The Board has stated that, in determining whether the agency would have taken the same personnel action in the absence of a protected disclosure, it considers, inter alia, the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision. *Chambers,* 116 M.S.P.R. 17, ¶ 29; *see Carr v. Social Security Administration,* 185 F.3d 1318, 1323 (Fed. Cir. 1999). **Because direct evidence of a deciding official's retaliatory motive is rare, appellants are entitled to rely on *circumstantial evidence* giving rise to an *inference* of impermissible intent.** *Fellhoelter,* 568 F.3d at 971; *see Webster v. Department of the Army,* 911 F.2d 679, 689-90 (Fed. Cir. 1990); *see also Sheehan v. Department of the Navy,* 240 F.3d 1009, 1014 (Fed. Cir. 2001). As the reviewing court (i.e. U.S. Court of Appeals) recognized in *Fellhoelter,* in some cases (such as mine), "evidence of retaliatory motive [may also be] relevant to the [appellant's] prima facie case; for example, evidence of an employee's assertions of misconduct by a supervisor can be relevant to whether the employee has made a protected disclosure and also whether the supervisor has a strong motivation to retaliate." 568 F.3d at 971.

To show retaliation using circumstantial evidence, the appellant must show that the accused official knew of the protected activity, *cf. Warren v. Department of the Army*, 804 F.2d 654, 656 (Fed. Cir. 1986), and provide evidence showing a "'***convincing mosaic***'" of retaliation against him, by which a number of pieces of evidence, "'each of which supports a proposition only weakly can, when taken as a whole, provide strong support if all point in the same direction....'" *FitzGerald v. Department of Homeland Security*, 107 M.S.P.R. 666, ¶ 20 (2008) (quoting *Sylvester v. SOS Children's Villages Illinois, Inc.* 453 F.3d 900, 903 (7th Cir. 2006). This mosaic generally includes three types of evidence: *(1) evidence from which an inference of retaliatory intent might be drawn, such as suspicious **timing** or similar behavior and comments directed at other employees in the protected groups; (2) evidence that*

3

*similarly situated employees received more favorable treatment than the appellant; and (3) evidence*

*that the reason asserted by the employer for its actions is pretextual.*

To show a "***convincing mosaic***" of retaliation, an employee can show that his disclosure was a

contributing factor to the personnel action of the Agency via the **knowledge/timing test** - by presenting

evidence that the official taking the personnel action was aware of the disclosure, and the official took

the action within a short enough ***time period*** after the disclosure for a reasonable person to conclude

that the disclosure was a contributing factor to the personnel action. *See Gonzalez*, 109 M.S.P.R. 250, ¶

19. For example, the fact that an appellant's disclosure and his removal were ***less than a year*** apart

supports a conclusion that his disclosure was a ***contributing factor*** to his removal under the

***knowledge/timing test***. *See Gonzalez*, 109 M.S.P.R. 250, ¶¶ 19-20 (the knowledge/timing test is

satisfied where the appellant's disclosure and his removal were slightly over a year apart).  Therefore,

according to *Gonzalez,* a protected disclosure ***generally*** meets the ***knowledge/timing test*** if the timing

between the appellant's disclosure and the subsequent personnel action taken is ***less than or equal to***

***one (1) year*** (i.e. Personnel Action Taken (t2) – Protected Disclosure Made (t1) $\leq$ 365 days).

Under certain circumstances, an appellant can establish whistleblower status by making a non-

frivolous allegation that the agency "***perceived***" them as whistleblower.  Specifically, an individual who

is perceived as a whistleblower is still entitled to the protections of the WEPA, even if he has not made

protected disclosures. *Jensen v. Department of Agriculture*, 104 M.S.P.R. 379, ¶ 11 n.3 (2007); *Juffer v.*

*U.S. Information Agency*, 80 M.S.P.R. 81, ¶ 12 (1998); *Special Counsel v. Department of the Navy*, 46

M.S.P.R. 274 , 278-80 (1990).  In cases like this, the issue of whether the appellant actually made a

protected disclosures is ***immaterial***; the issue of whether the agency perceived the appellant as a

whistleblower will essentially stand in for that portion of the Board's analysis in both the jurisdictional

and merits stages of the appeal.  *See King v. Department of Army* (2011). The appellant can also show

that the agency's perception of him as a whistleblower was a contributing factor in its decision to take

4

or not take the personnel action at issue through the knowledge/timing test. *See Rubendall v. Department of Health & Human Services*, 101 M.S.P.R. 599, ¶ 13 (2006).

With limited exceptions, if an agency takes any actions against an employee listed in 5 C.F.R. § 1201.3, known in this context as otherwise appealable actions (OAA), and if MSPB has jurisdiction to hear an appeal from a person with the employee's tenure, preference eligible status, etc., it may also consider a claim that the action was taken for one of the reasons prohibited by 5 U.S.C. § 2302(b). Such a claim is called an "affirmative defense" to the agency's action, and MSPB will consider it because Congress specified in 5 U.S.C. § 7701(c)(2)(B) that even if the agency proves its action by the required standard of proof, its decision may not be sustained if an employee shows "*that the decision was based on any prohibited personnel practice described in section 2302(b) of*" Title 5 of the U.S. Code. *See MSPB PPPs* at http://www.mspb.gov/ppp/ppp.htm

## II.   ERRONEOUS FINDING OF MATERIAL FACT & ERRONEOUS INTERPRETATION OF THE APPLICABLE LAW

### *VIOLATION OF LAW*

Mr. Benton provided a detailed account of the various Prohibited Personnel Practices and Merit System Principles that was violated by the NRC in his *Prehearing Submission (See* Docket No. DC-0432-12-0751-I-2, Tab #45) and relate Exhibits. On Page 48 of her *Initial Decision,* AJ Styles erroneously determined, "*I find no evidence that the agency violated any of the Merit System Principles, engaged in unlawful discrimination, disparate treatment or a hostile work environment…. Consequently, absent any such evidence, I am unable to find the appellant established his violations of law affirmative defense by the preponderance of the evidence standard."* As detailed in PFR Exhibits A, B, and C, and as described below, NRC management violated several  internal NRC regulations and policies, which in themselves have the full "*effect of law*," as well as various federal laws and/or statues proscribed by the U.S. Offic e of Personnel Management (OPM), MSPB, and the U.S. Equal Employment Opportunity Commission (EEOC) among others.  In support of Mr. Benton's PFR, please consider the following:

5

**AJ Styles erred in NOT finding that the NRC did NOT meet their burden of proof pursuant to 5 U.S.C. § 4303 and 5 C.F.R. § 432.104 by the substantial evidence standard**

In order to remove an employee under Chapter 43 the NRC must prove that the agency: (1) Has an approved performance appraisal system; (2) communicated the performance standards and critical elements of his position to him at the beginning of the appraisal period; (3) determined his performance to be unacceptable in one or more critical elements of his position, and warned him of his performance inadequacies during the appraisal period; and (4) gave him a reasonable opportunity to improve his performance to an acceptable level. *See* 5 C.F.R. § 432.104 (2012); *Martin v. Federal Aviation Administration*, 795 F.2d 995, 997 (Fed. Cir. 1986); *Belcher v. Department of the Air Force*, 82 M.S.P.R. 230, ¶ 4 (1999). The Agency must prove by ***substantial evidence*** that it has satisfied each of the aforementioned elements. See *Shuman v. Department of the Treasury*, 23 M.S.P.R. 620, 628 (1984). AJ Styles made an erroneous finding pursuant to the above stated statues and case law because the NRC did ***NOT*** meet ***EACH*** of its above stated burdens of proof by substantial evidence as detailed below:

(1) **The NRC has an approved performance appraisal system -** The Agency has submitted viable documentation proving that OPM last approved their performance appraisal system in November 2003. See *Initial Decision,* Pg. 5. Mr. Benton asserts that OPM regulation in ***5 CFR 430.209*** specifically ***requires*** that the NRC "***submit to OPM for approval... any subsequent changes that modify any element of the [NRC's performance appraisal] system.***" However, the Hearing Testimony (HT) of NRC HR Director Dawn Powell was inconsistent with OPM regulation in 5 CFR 430.209 where Ms. Powell falsely testified that "*OPM is not involved with a change in elements and standards it only approves the performance system. An employee's supervisor of record can change elements and standards*." See *HT of Ms. Powell*. Ms. Powell's testimony is duly inconsistent with the provisions of ***5 CFR 430.209.*** Mr. Benton's Elements and Standards are a pivotal "***element***" of the NRC's performance appraisal system. Thereby any change and/or modification thereof would be duly considered a "***modification***" of an "***element***" of the NRC's performance appraisal system which must be submitted to OPM for approval PRIOR to implementation. Additionally, the NRC also did NOT provided any legal documentation and/or letter from OPM specifically excusing the NRC from the legal statues of ***5 CFR 430.209***, thereby making the finding by AJ Styles on this matter erroneous. Therefore, the NRC DID NOT submit its changes and/or modifications to the Critical Elements and Standards of the GG-13 General Engineer (Reactor) position held by Mr. Benton to OPM for approval BEFORE implementing the desired changes at the NRC. Thus, both the changes made by the NRC and the erroneous findings of material fact issued by AJ Styles on this matter are both considered "***not in accordance with law***."

**(2) The NRC did NOT communicated the performance standards and critical elements of his position to Mr. Benton at the beginning of the appraisal period** – The Agency has not met this burden of proof. Both parties have already agreed to the material fact that Mr. Benton's rated Individual Elements and Standards for his GG-13 General Engineer (Reactor) position unexpectedly changed between fiscal year (FY) 2010 and FY 2011. The NRC has previously stated in several submissions and/or statements before the Board that they did change Mr. Benton's E&S, and that they were permitted to do so without first seeking OPM approval. See *HT* of Dawn Powell and Travis Tate. Contrary to this assertion by the agency's witnesses, the NRC has not submitted ANY documentation on the record, nor have any of their witnesses testified to the fact that this is true. Therefore, there's NOTHING submitted on the record (i.e. a regulatory statute, an internal NRC policy or procedure, a written letter from OPM excusing the NRC from any OPM doctrine or regulation, etc.) by the NRC to substantiate the Agency meeting this criteria by the substantial evidence standard.

In fact, the only thing that is true, and of which the agency has NOT directly refuted, is the material fact that pursuant to **5 C.F.R. § 430.209(a)**, and based on submitted discovery evidence, the written statements of the Agency to the record, and the direct hearing testimony from NRC witnesses Dawn Powell, Travis Tate, and Samson Lee, the NRC DID NOT submit the desired changes it made to the Critical Elements and Standards of Mr. Benton's GG-13 General Engineer (Reactor) position to OPM for formal approval PRIOR to allegedly issuing them to him in October 2011. Therefore the Agency is out of compliance with OPM regulations within **5 C.F.R. § 430.209(a)**. The Agency's failure to meet their substantial evidence burden of proof is further is further substantiated by the several *__inconsistencies__* within the hearing testimony of Agency witnesses Mrs. Dawn Powell, Mr. Travis Tate, and Mr. Lee. See *HT* of Powell, Tate, and Lee.

For example, Mrs. Powell testified under oath that the Branch Chiefs have the authority under OPM regulations to change the Critical Elements and Standards of the positions within their branch, and that Mr. Tate was authorized to change Mr. Benton's GG-13 General Engineer (Reactor) position Critical Elements and Standards in FY 2011. When asked specifically 'Who changed Mr. Benton's Critical Elements and Standards from the version given in FY 2010 to those allegedly issued in FY 2011, Mrs. Powell replied that "***Mr. Tate made those changes***." See *HT* of Powell.

During the hearing examination of Mr. Tate, when asked specifically 'Who changed Mr. Benton's Critical Elements and Standards from the version given in FY 2010 to those allegedly issued in FY 2011, Mr. Tate replied that, ***"PMDA [i.e. NRC Human Resources] made those changes, and I just implemented them**."* When Mr. Benton again directly asked Mr. Tate if he had changed Mr. Benton's Critical Elements and Standards from the version given in FY 2010 to those allegedly issued in FY 2011, Mr. Tate assertively replied, "***No I did not**.*" Mr. Tate's testimony duly **CONTRADICTS** the testimony previously given by Mrs. Dawn Powell, thereby nullifying the material testimony given by the Agency's witnesses in support of the Agency's position and defense within the instant case. See *HT* of Tate. See *Initial Decision*, Page 9.

Additionally, during the hearing examination of Mr. Lee, when asked specifically 'Who changed Mr. Benton's Critical Elements and Standards from the version given in FY 2010 to those allegedly issued in FY 2011, Mr. Lee replied that, ***"well you know these things change**.*" When Mr. Benton again directly asked Mr. Tate if he had changed Mr. Benton's Critical Elements and Standards from the version given in FY 2010 to those allegedly issued in FY 2011, Mr. Lee assertively replied, "***No I did not**.*" When Mr. Benton also directly asked Mr. Lee if Mr. Tate had changed Mr. Benton's Critical Elements and Standards from the version given in FY 2010 to those allegedly issued in FY 2011, Mr. Lee assertively replied, "***No he did not**.*" Lastly, when Mr. Benton also directly asked Mr. Lee if he had reviewed the changes to Mr. Benton's Critical

7

Elements and Standards from the version given in FY 2010 to those allegedly issued in FY 2011, **PRIOR** to them being allegedly issued to Mr. Benton by Mr. Tate, Mr. Lee assertively replied, "**No I did not**." See *HT* of Lee. See *Closing Arguments* of Mr. Benton.

To the contrary, Mr. Benton has provided testimony and evidence to the fact that the "**version**" of the written Elements and Standards issued to him, of which he signed receipt for in October 2011, was EXACTLY like and consistent with those given to him in FY 2010. Mr. Benton testified that he never received the alleged version of his FY 2011 Elements and Standards as presented and submitted by the NRC, and of which the NRC falsely and unlawfully remove him for. Therefore, the alleged version of his FY 2011 Elements and Standards allegedly given by the NRC was never issued and/or communicated by the NRC, before the agency allegedly rated and issued him an "Unacceptable" performance rating of record for FY 2011. See *HT* of Benton. See *Closing Arguments* of Mr. Benton. See *Appellant's Hearing Exhibit S – OSC (Office of Special Counsel) Complaint*.

*(3)* **The NRC NEVER determined Mr. Benton's performance to be "unacceptable" in one or more critical elements of his position** - The Agency has not met this burden of proof. During her hearing testimony, Mrs. Powell, the NRC's expert witness regarding Human Resource (HR) matters, testified that pursuant to OPM regulations the annual *Performance Appraisal* and/or current rating of record for ALL NRC employees SHALL be formally recorded on NRC Form 412. See *HT* of Powell and Benton. See *Appellant's Hearing Exhibit C – FY 2010 and FY 2009 Performance Appraisals.* Pursuant to NRC Management Directive 10.67, Non-SES Performance Appraisal System (*Appellant's Hearing Exhibit L – NRC MD 10.67*), based on the submitted discovery evidence, the affidavits, depositions, and other written statements of the Agency, the direct testimony from NRC witnesses Travis Tate and Samson Lee, and from the direct arguments and/or objections from the NRC's own counsel during the hearing, the NRC NEVER recorded on NRC Form 412 a formal rating of record and/or performance appraisal for Mr. Benton for the FY 2011 appraisal cycle. Therefore the NRC **NEVER** determined "**Mr. Benton's performance to be "unacceptable" in one or more critical elements of his position**" See *HT* of Powell, Tate, Lee, and Benton. See *Closing Arguments* of Mr. Benton. See *Appellant's Hearing Exhibit KK - MSPB Deposition of Travis Tate*. See *Appellant's Hearing Exhibit T - EEOC Deposition of Samson Lee*.

Clearly stated in NRC MD 10.67, Part II, Section E, ANNUAL PERFORMANCE RATING DISCUSSION, Item #3, Procedures, Sub-section (d)(2), Retention and Validity of Rating, "***The employee's most current rating of record is considered the valid rating of record for official purposes and it constitutes the basis for personnel actions.***" NRC witness Dawn Powell clearly testified to the fact that it is an OPM requirement that the formal rating of record and/or annual performance appraisal for ALL NRC employees must be recorded on NRC Form 412, which is consistent with the internal NRC policy and/or procedure of NRC MD 10.67. Therefore, absent a documented rating of record of Mr. Benton for FY 2011, as formally recorded on NRC Form 412, pursuant to NRC MD 10.67, Part II, Section E(d)(2), even as it stands today, the formal and most current rating of record for Mr. Benton is actually that of his FY 2010 performance appraisal which documented a formal annual performance rating of "Minimally Successful" (MS). See *Appellant's Hearing Exhibit C – FY 2010 and FY 2009 Performance Appraisals.* See *HT* of Powell and Benton. See *Closing Arguments* of Mr. Benton.

### *DUE PROCESS/HARMFUL ERROR – NRC MD 10.67, Part II, Section I, REDUCTION IN GRADE AND REMOVAL & AJ Styles' erroneous finding is inconsistent with internal NRC policy and/or procedures pursuant to NRC MD 10.67 and NRC-NTEU Collective Bargaining Agreement (CBA)*

Mr. Lee even testified that pursuant to NRC MD 10.67 he cannot and never has removed an employee for having an MS rating in all of his 23 years of Federal Service.  See *HT* of Lee. Additionally, as testified by NRC witness Dawn Powell, and as supported by the NRC CBA and MD 10.67, a "Minimally Successful" performance rating is an acceptable rating by the NRC. A "Minimally Successful" performance rating at the NRC is equivalent to that of a "Marginal" performance rating as described in OPM regulations at *5 CFR § 432.103* and *5 C.F.R. § 430.207,* and is sufficient for an employee to be retained in his employment within the Federal service. Therefore, the NRC through Mr. Samson Lee made the adverse decision to remove Mr. Benton from federal service based on a "Minimally Successful" performance rating, which was clearly "**not in accordance with law**" because it violated OPM regulations as proscribed in 5 USC 4303 (i.e. Chapter 43), 5 CFR 430, and 5 CFR 432.  Mr. Lee's removal of Mr. Benton from federal service was also considered a "***harmful error***" pursuant to *5 CFR § 1201.56(c)(3)* and *5 USC § 7701(c)(2)(A)* because it violated internal NRC policy within *NRC MD 10.67, Part II, Section I, REDUCTION IN GRADE AND REMOVAL, Item #1,* among others, and the NRC CBA with NTEU for the exact same reasons.  See *Appellant's Hearing Exhibit – BB – NRC/NTEU Collective Bargaining Agreement.*

Harmful error under *5 USC § 7701(c)(2)(A)* cannot be presumed; an agency error is harmful only where the record shows that the procedural error was likely to have caused the agency to reach a conclusion different from the one it would have reached in the absence or cure of the error. *Stephen v. Department of the Air Force*, 47 M.S.P.R. 672, 681, 685 (1991). As detailed above, Mr. Lee has already testified to the fact **that pursuant to NRC MD 10.67 "he cannot and never has removed an employee for having an MS rating in all of his 23 years of Federal Service."** See *HT* of Lee. There's NO internal NRC provision and/or policy which allows NRC management to remove an employee because of a "Minimally Successful" performance rating.  There's also no legal statue or OPM regulation within 5 USC 4303 (i.e. Chapter 43), 5 CFR 430, nor in 5 CFR 432 which allows the same.  Therefore, the NRC has clearly committed a "***harmful error***" pursuant to *5 CFR § 1201.56(c)(3)* and *5 USC § 7701(c)(2)(A)* because it violated its own internal policies and/or procedures within *NRC MD 10.67, Part II, Section E, ANNUAL PERFORMANCE RATING DISCUSSION, Item #3, Procedures, Sub-section (d)(2), Retention and Validity of Rating,* in removing Mr. Benton from federal service based off of a "Minimally Successful" performance rating.  "***The employee's most current rating of record is considered the valid rating of record for official purposes and it constitutes the basis for personnel actions."*** Therefore the NRC NEVER determined Mr. Benton's performance to be "unacceptable" in one or more critical elements of his position, therefore Mr. Lee's removal of Mr. Benton from federal service was unlawful, a harmful error, violated his constitutional rights to **Due Process** for not following internal NRC regulations in MD 10.67 and MD 10.77, and unsubstantiated based off of the factual testimony of NRC witnesses Powell, Tate, and Lee.

Additionally, the unlawful action and/or harmful error made by the NRC to remove Mr. Benton from federal service, and the other affirmative defenses raised by Mr. Benton in this appeal, has caused him substantial irreparable harm in violating the terms and conditions of his employment; the loss of income and/or wages; loss of benefits; loss of stocks and other investments via the Thrift Savings Plan; caused him and his family financial, emotional, and psychological harm and/or distress; negatively affected his credit score; put his primary residence in Mitchellville, MD in jeopardy  of foreclosure; and others as documented in Mr. Benton's submitted Stay request and supporting exhibits within Docket No. DC-0432-12-0751-S-1, Tabs 1 and 2.  Hence, Mr. Benton has clearly identified various internal inconsistency and/or inherent improbability in the fact findings of AJ Styles erroneous decision in determining that the NRC has met their burden of proof and in erroneously affirming Mr. Benton's removal from

the NRC.  The NRC did NOT meet this burden of proof by the substantial evidence standard.  See *Brought v. Department of Health and Human Services*, Docket No. DC07528610513 (1987); *Jackson v. Veterans Administration*, 768 F.2d 1325 (Fed. Cir. 1985); *Connolly v. Department of Justice*, 766 F.2d 507 (Fed. Cir. 1985).

*(4) The NRC did NOT warned Mr. Benton of his performance inadequacies during the appraisal period -* The Agency has not met this burden of proof.  The agency also failed to warn Mr. Benton of his alleged "Unacceptable" performance inadequacies *during the appraisal period*. As supported by the record, his submitted EEOC and MSPB depositions to the Board, and the submitted PIRM document its self, NRC witness Travis Tate has already testified during this hearing that the first time he communicated to Mr. Benton that his performance had allegedly fell to the "Unacceptable" performance rating level was when he issued him his PIRM on November 30, 2011.  See *HT* of Tate and Benton.  See *Closing Arguments* of Mr. Benton.  See *Appellant's Hearing Exhibit KK - MSPB Deposition of Travis Tate*.  Pursuant to NRC MD 10.67, Part I, Section B, DEFINITIONS, the formal "appraisal period" at the NRC for FY 2011 went from October 1, 2010, to September 30, 2011.  As testified, if Mr. Tate did not issue Mr. Benton his PIRM until **November 30, 2011**, which was about 61 days PAST the end of the appraisal period on September 30, 2011, then Mr. Tate in fact *warned Mr. Benton of any alleged performance inadequacies at the "Unacceptable" performance level OUTSIDE OF the performance appraisal period, which does NOT meet the standard and/or burden of proof requirement.*  In fact, the hearing testimony of both Mr. Tate and Mr. Benton validates that NONE of the personnel actions taken against Mr. Benton "*during the appraisal period*" of the Performance Deficiency Notice (PDN) or the denial of his Within Grade Increase (WGI) had ANY language in it at all that warned and/or informed Mr. Benton that his performance had specifically fallen to the alleged "Unacceptable" performance level.  In fact, the word "*unacceptable*" does NOT appear ANYWHERE within neither of the written personnel actions taken.  As stated above, and as testified by Mr. Tate during the hearing, the word "*unacceptable*" does NOT appear in ANY personnel action taken against Mr. Benton until Mr. Tate issued him his PIRM on **November 30, 2011**, which was *outside* of the formal FY 2011 appraisal period which promptly ended on **September 30, 2011**.  To date, the NRC has NOT submitted ANY evidence to contradict these material facts.  Hence, the NRC did NOT meet this burden of proof and the erroneous findings of AJ Styles was NOT "*in accordance with law*," and it was inconsistent with internal NRC regulations and policy within NRC MD 10.67 and the NRC Collective Bargaining Agreement (CBA)

*(5) The NRC did NOT give Mr. Benton a reasonable opportunity to improve his performance to an acceptable level -* Since the NRC did NOT communicate to Mr. Benton that his performance had fallen to the "Unacceptable" performance rating level during the FY 2011 performance appraisal period (October 1, 2010 to September 30, 2011), this constituted a failure of the NRC giving Mr. Benton an adequate opportunity to improve as supported by precedent MSPB case law.  *Greer* distinguished by Smith v. Dep't of Health and Human Services, 35 M.S.P.R. 101, 104 (1987); Colgan v. Dep't of the Navy, 28 M.S.P.R. 116 (1985); Grant v. Dep't of Transp., U.S. Coast Guard, 24 M.S.P.R. 6637 (1984).

In summary, Judge Styles never considered the contradictory hearing testimony provided by the various NRC witnesses, which was direct evidence that weighed against the Agency NOt meeting their substantial evidence standard for EACH element listed above.  Whereas it is duly clear and evident that

10

the NRC NEVER issued Mr. Benton an "*Unacceptable*" performance appraisal and that Mr. Tate did NOT

have legal authorization from OPM to change Mr. Benton's Critical Elements and Standards as

erroneously ruled by AJ Styles.  Thus, both the changes made by the NRC and the erroneous findings of

material fact issued by AJ Styles on this matter are both considered "*not in accordance with law*."

Additionally, Mr. Benton was issued a PIRM, and removed from federal service for "unacceptable

performance,"  when in fact his current appraisal of record was that of his FY 2010 performance

appraisal, of which he had a "***Minimally Successful***" performance rating.  Accordingly, on July 16, 2012,

his "***most current rating of record***" pursuant to the internal policies and/or procedures within *NRC MD*

*10.67, Part II, Section E, ANNUAL PERFORMANCE RATING DISCUSSION, Item #3, Procedures, Sub-section*

*(d)(2), Retention and Validity of Rating,* was that of a "***Minimally Successful***" performance rating.

      Consistent with NRC MD 10.67 and the NRC CBA, Mr. Benton should have never been put on a

PIRM and had his removal proposed by Mr. Tate, and Mr. Lee should have NEVER removed him from

federal service, because the NRC NEVER issued Mr. Benton an "*Unacceptabl*e" performance appraisal

rating, as validated by the hearing testimony of both Mr. Tate and Mr. Lee.  See HT of Tate and Lee.

Subsequently, Mr. Lee cannot remove Mr. Benton from federal service based off of a "***Minimally***

***Successful***" performance rating**.**  Hence, Mr. Benton's proposed removal by Mr. Tate, and his ultimate

removal by Mr. Lee, are both considered "***not in accordance with law***" because the actions in its self

were unlawful pursuant to the Fifth Amendment (right to due process)and NOT based on  internal NRC

regulations, or federal statutes. *See Chrysler Corporation v. Brown*, 441 U.S. 281, 99 S. Ct. 1705, 60 L. Ed.

2d 208 (1979); Mr. Lee's and Mr. Benton's *Hearing Testimony*.  Lastly, AJ Styles was very biased in her

erroneous findings in that she did not consider and/or reference ANY of the negative and contradicting

testimony of Ms. Powell, Mr. Tate, and/or Mr. Lee that weighed against the NRC proving its burden of

proof by substantial evidence.

***AJ Styles' erred in NOT finding that the NRC knowingly violated the provisions of 18 USC § 1001 (false documents and concealment), 18 USC § 1028(a) (fraud), 18 USC § 1621 and 18 USC § 1623 (perjury), and 18 USC § 1505 (obstruction). New evidence exist which supports the appellant's claim***

In an effort to maintain the status quo until the MSPB complaint process can be completed, on or about October 5, 2012, the complaint's attorney (Mr. Gerald Gilliard, Esq.) submitted a *Motion For Stay* (i.e. Stay Request) with MSPB requesting that the NRC's decision to remove me from federal service be "Stayed," and that Mr. Benton be put on paid "Administrative Leave" until his case had been heard and decided on by Administrative Judge Kasandra Robinson Styles. This was also accepted by MSPB and assigned MSPB DOCKET NUMBER: DC-0432-12-0751-S-1. On October 16, 2012, the NRC for willfully committing ***Fraud*** by submitting an altered, materially false, and/or fictitious copy of Mr. Benton's FY 2010 performance appraisal to MSPB in defense of his Stay Request. Mr. Benton believes that in retaliation for his various protected activities, the NRC through its counsel Sara McAndrew, Esq. (a formal representative of the NRC), premeditatedly and knowingly violated 18 USC § 1001, 18 USC § 1028(a), 18 USC § 1621 and 18 USC § 1623, and 18 USC § 1505 by willfully submitting, in "*bad faith,*" an altered and knowingly false (i.e. falsification) "version" of my FY 2010 performance appraisal (i.e. a "false identification document") as documentary evidence to another government agency (EEOC and MSPB), among other actions, which is a clear violation of Federal law.  On or about October 22, 2012, AJ Styles denied Mr. Benton's *Motion For Stay* citing the documentary evidence provided by the NRC (i.e. the fraudulent copy of Mr. Benton's FY 2010 performance appraisal) as the basis for her decision.

The record of this instant appeal closed after the hearing on or about January 8, 2014.  As a result of EEOC adjudicating Mr. Benton's discrimination complaint, ***"New and Material"*** evidence that was not available earlier, is available now but was not when the record closed.  On February 10, 2014, Mr. Benton filed a Motion for Summary Judgment against the NRC.  The NRC responded objecting to Mr. Benton's motion on February 25, 2014, and provided substantial incriminating evidence supporting Mr. Benton's claims of perjury and fraud, among others.  Finally, on March 3, 2014, Mr. Benton responded to the Agency's objections specifically detailing how the Agency violated multiple laws on October 16, 2012, as supported by the U.S. Department of Justice Criminal Resource Manual.  See PFR Exhibits A, B, and C.  Please note that although the Appellant's EEOC motions is directly written to support his claim of the NRC submitting fraudulent, materially false, and/or fictious information to the Commission (EEOC) in February 2013, the same arguments and evidence is also applicable in support of Mr. Benton's claims before MSPB by substantial evidence standard.

### III.   ERRONEOUS FINDINGS BY MAKING AND RELYING ON FACTUAL DETERMINATIONS THAT WERE UNSUPPORTED BY THE RECORD

In erroneously adjudicating my removal appeal, AJ Styles issued several erroneous findings by making and relying on factual determinations that were unsupported by the record.  On review of such unsubstantiated rulings, the Board has routinely held that such non-factual determinations must be overturned and/or vacated in the best interest of justice.  In the precedent case of *Reid v. Department of Navy*, 2012 MSPB 94, Docket No. PH-0752-09-0357-I-2, at ¶9, on petition for review, the Board ruled that the administrative judge erred in making and relying on factual determinations that were

unsupported by the record and that the charges could not be sustained.  Likewise, Mr. Benton asserts that his removal from federal service on July 16, 2012, cannot be sustained because in erroneously adjudicating my removal appeal, AJ Styles issued several erroneous findings by making and relying on factual determinations that were unsupported by the record, thereby erroneously affirming Mr. Benton's removal based on material facts that were unsupported by the record.  Some of AJ Styles erroneous determinations are outlined as follows:

### THE NRC DID NOT MET THEIR BURDEN OF PROOF

As detailed above, AJ Styles issued several erroneous findings by making and relying on factual determinations that were unsupported by the record.  AJ Styles erroneously ruled that the NRC met EACH of the aforementioned elements required to remove Mr. Benton under chapter 43.  However, Mr. Benton has proven using legal statues and direct evidence from the record that the NRC failed to prove by the substantial evidence standard that each of the above stated elements required to remove Mr. Benton were met.  Please refer to the detailed analysis in *Section II* above.

### DISPARATE TREATMENT DISCRIMINATION

On Pages 24-25 of the *Initial Decision*, there were several erroneous findings made by AJ Styles that were made relying upon allegedly factual determinations that were unsupported by the record.  First, AJ Styles erroneously wrote, "*I find the agency's evidence establishes by substantial evidence that the appellant's performance was <u>unsuccessful</u> in Critical Element 2 of his position.*"  AJ Styles, again made an equivalent statement on Page 45 of her decision.  As explained in *Section II* above, there is no factual evidence to support this finding.  To the contrary, Mr. Benton has already identified several pieces of evidence, hearing testimony, legal statues, and internal NRC policies and procedures that clearly validates that the NRC NEVER determined that Mr. Benton's performance was "unacceptable" because NRC management NEVER issued him an "Unacceptable" performance appraisal rating as legally documented on NRC Form 412.  See the *HT* of Tate, Lee, and Benton.  See in *Section II* above.

AJ Styles also erroneously writes, "*I find the appellant has not established that his removal was false or pretextual.*" Again, as stated in *Section II* above, I detailed how the agency's removal action was, (1) Inconsistent with internal NRC policies and procedures located in **NRC MD 10.67** and the **NRC CBA**; (2) how it was clearly "***not in accordance with law***" because it violated the provisions of **5 U.S.C § 4303**, **5 C.F.R § 432.101**, **5 C.F.R § 432.103**, **5 C.F.R § 432.104**, **5 C.F.R § 432.105**, **5 C.F.R. § 430.207**, **5 C.F.R. § 430.208**, and **5 C.F.R. § 430.209**, among others;  and (3) was duly a "***harmful error***" pursuant to **5 C.F.R § 1201.56(c)(3)** and **5 U.S.C § 7701(c)(2)(A).**  Additionally, within his hearing testimony Mr. Lee has already testified to the fact **that pursuant to NRC MD 10.67 "he cannot and never has removed an employee for having an MS rating in all of his 23 years of Federal Service."** See *HT* of Lee. There's NO internal NRC provision and/or policy which allows NRC management to remove an employee because of a "***Minimally Successful***" performance rating.  There's also no legal statue or OPM regulation within 5 USC 4303 (i.e. Chapter 43), 5 CFR 430, nor in 5 CFR 432 which allows the same.  However, Mr. Benton was duly subjected to ***disparate treatment*** by NRC Management when Mr. Lee removed him from federal service on July 16, 2012, despite his current performance appraisal of record being that of a "***Minimally Successful***" performance rating, which is clearly unlawful.   Therefore, this was yet another erroneous finding issued by AJ Styles that was unsupported by the record, and Mr. Benton duly established his race and sex discrimination claim by the preponderance of the evidence standard. Therefore, as a result of multiple "***harmful errors***" in the application of the NRC's internal regulations and procedures as written in the CBA, MD 10.67, and MD 10.77; and because the prohibited personnel action of removal was unlawful pursuant to 5 U.S.C. § 4303, 5 CFR 430.208(e), 5 C.F.R. § 430.209(a), 5 C.F.R. § 432.103, 5 C.F.R. § 432.104, and 5 C.F.R. § 432.105, among others,  which in its self is also a violation of the 12th PPP described in 5 U.S.C. 2302(b), I humbly request that the Board **VACATE** AJ Styles' *Initial Decision* affirming  my removal and the other affirmative defenses as stated and supported

14

by the record.  Please review the records of my IRA and Removal appeals in their entirety for additional

evidence and/or supporting documentation to validate my claims and/or disclosures.

### KNOWLEDGE TIMING TEST

*AJ Styles erred in not considering how Mr. Benton has established that he made protected whistleblower disclosures pursuant to 5 U.S.C. § 2302(b)(8) with circumstantial evidence via the Knowledge/Timing Test.  AJ Styles also erred in not considering how I have established that I was "perceived" as a whistleblower by NRC management prior to the adverse personnel actions taken, and how these "perceptions" were a contributing factor in the agency removing Mr. Benton from Federal Service.*

To obtain corrective action, the appellant must meet his initial burden of establishing by

preponderant evidence that his whistleblowing activity was a contributing factor in the personnel action

in dispute. 5 U.S.C. § 1221(e)(1). Whistleblowing is a contributing factor if it affects an agency's decision

to threaten, propose, take, or fail to take a personnel action. *Rubendall,* ¶ 11; *see* 5 C.F.R. § 1209.4(c). To

prove that a disclosure was a contributing factor in a personnel action, the appellant need only

demonstrate that *the fact of,* not necessarily the content of, the protected disclosure was one of the

factors that tended to affect the personnel action in any way. *Rubendall,*¶ 11; *see Marano v.*

*Department of Justice,* 2 F.3d 1137, 1143 (Fed. Cir. 1993).  In a 1994 amendment to the WEPA, Congress

established a *knowledge/timing test* that allows an employee to demonstrate that the disclosure was a

contributing factor in a personnel action through *circumstantial evidence*, such as evidence that the

official taking the personnel action "knew of the disclosure," and that the personnel action occurred

within a period of time such that a reasonable person could conclude that the disclosure was a

contributing factor in the personnel action. 5 U.S.C. § 1221(e)(1); *Rubendall,* ¶ 12; *see Perkins v.*

*Department of Veterans Affairs,* 98 M.S.P.R. 250, ¶ 13 (2005). Although the *knowledge/timing* test is

not the only way for an appellant to satisfy the contributing factor standard, it is "one of the many

possible ways" to satisfy the standard. *Rubendall,* ¶ 12. Once the knowledge/timing test has been met,

the appellant has shown that his whistleblowing was a contributing factor in the personnel action at

issue.

In a 1994 amendment to the WPA, Congress established a knowledge/timing test that allows an employee to demonstrate that the disclosure was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official taking the personnel action "knew of the disclosure," and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. 5 U.S.C. § 1221(e)(1); *Rubendall,* 101 M.S.P.R. 599, ¶ 12; *see Perkins v. Department of Veterans Affairs,* 98 M.S.P.R. 250, ¶ 13 (2005). Although the knowledge/timing test is not the only way for an appellant to satisfy the contributing factor standard, it is "one of the many possible ways" to satisfy the standard. *Rubendall,* 101 M.S.P.R. 599, ¶ 12. Once the knowledge/timing test has been met, the appellant has shown that his whistleblowing was a contributing factor in the personnel action at issue, even if after a complete analysis of all of the evidence a reasonable fact finder could not conclude that the appellant's whistleblowing was a contributing factor in the personnel action. *Id.*

In his initially "faxed-in" IRA appeal and in his response to AJ Styles "*Jurisdiction Order*" (*See* Tabs 4-7of pleading record DC-1221-13-0508-W-1), for each protected disclosure/allegation raised, Mr. Benton specifically noted how he believed that his disclosures were **contributing factors** to the prohibited personnel actions to propose his removal from the NRC (Mr. Tate), and to actually remove him from federal service (Mr. Lee), among others, were EACH unlawfully taken by the NRC. Specifically, Mr. Benton asserts that the timing between some of his protected whistleblowing disclosures/allegations and the adverse personnel action taken against him of his unlawful removal on July 16, 2012, were EACH **less than 365 days**, which meets the **knowledge/timing test** as explained in *Gonzalez* . As outlined on Page 30 of AJ Styles *Initial Decision,* a **suspicious timing** summary calculation of how ALL of Mr. Benton's protected "*whistleblowing disclosures"* meet the **knowledge/timing test** is as follows:

- **Meeting w/ NRC DRA SES Directors Joseph Giitter and Samson Lee to discuss how Mr. Tate violated internal NRC regulations in MD 10.77 by denying me technical training for two (2)**

16

years (violation of NRC MD 10.77); NRC MD 10.67 in putting me on a PIRM and issuing me an "unacceptable" appraisal rating (violation of NRC MD 10.67); disparate Treatment (Title VII violation);  and a unhealthy and career limiting work environment (Title VII violation) **(Appellant Hearing Exhibit – D)**: July 16, 2012 (Removal Date) - January 23, 2012 (Disclosure Date) = An approximate elapsed time of *ONLY 173 days*

- Initial call and meeting with NRC EEO counselor Tam Tran to discuss how Mr. Tate violated internal NRC regulations in MD 10.77 by denying me technical training for two (2) years **(violation of NRC MD 10.77) (Appellant Hearing Exhibit – E)**:  July 16, 2012 (Removal Date)  - May 9, 2012 (Disclosure Date) = An approximate elapsed time of *ONLY 27 days*

- Meeting w/ NRC NRR SES Director Eric Leeds to discuss how Mr. Tate violated internal NRC regulations in MD 10.77 by denying me technical training for two (2) years (violation of NRC MD 10.77); NRC MD 10.67 in putting me on a PIRM and issuing me an "unacceptable" appraisal rating (violation of NRC MD 10.67); disparate Treatment (Title VII violation);  and a unhealthy and career limiting work environment (Title VII violation)(Appellant Hearing Exhibit **– F)**: July 16, 2012 (Removal Date) – May 14, 2012 (Disclosure Date) = An approximate elapsed time of *ONLY 63 days*

- Meeting w/ NRC SES Deputy Executive Director of Operations (DEDO) Michael Weber to discuss how Mr. Tate violated internal NRC regulations in MD 10.77 by denying me technical training for two (2) years (violation of NRC MD 10.77); NRC MD 10.67 in putting me on a PIRM and issuing me an "unacceptable" appraisal rating (violation of NRC MD 10.67); disparate Treatment (Title VII violation);  and a unhealthy and career limiting work environment (Title VII violation)(Appellant Hearing Exhibit – G): July 16, 2012 (Removal Date) – May 17, 2012 (Disclosure Date) = An approximate elapsed time of *ONLY 60 days*

- Meeting w/ EEO counselor Tam Tran to discuss how Mr. Tate violated internal NRC regulations in MD 10.77 by denying me technical training for two (2) years (violation of NRC MD 10.77); NRC MD 10.67 in putting me on a PIRM and issuing me an "unacceptable" appraisal rating (violation of NRC MD 10.67); disparate Treatment (Title VII violation);  and a unhealthy and career limiting work environment (Title VII violation (Appellant Hearing Exhibit **– E)**: July 16, 2012 (Removal Date) – May 14, 2012 (Disclosure Date) = An approximate elapsed time of *ONLY 63 days*

- Meeting w/ NRC EEO Counselors Tam Tran and Rhonda Bethea-Dorsey to file an informal EEO complaint  regarding  how Mr. Tate violated internal NRC regulations in MD 10.77 by denying me technical training for two (2) years (violation of NRC MD 10.77); NRC MD 10.67 in putting me on a PIRM and issuing me an "unacceptable" appraisal rating (violation of NRC MD 10.67); disparate Treatment (Title VII violation); harassment via the daily monitoring of my time and attendance (T&A) (Title VII violation); and a unhealthy and career limiting work environment (Title VII violation) (Appellant Hearing Exhibit – E): July 16, 2012 (Removal Date) – May 15, 2012 (Disclosure Date) = An approximate elapsed time of *ONLY 62 days*

- Informing NRC NTEU President Dale Yielding that NRC managers Travis Tate and Michael Gartman was harassing me by scrutinizing my Biblical quote of the 35th Psalms and scheduled an unsolicited psychiatric evaluation ) (Title VII violation, Freedom of Religion, and Freedom of Speech); (Appellant Hearing Exhibit – H): July 16, 2012 (Removal Date) – May 14, 2012 (Disclosure Date) = An approximate elapsed time of *ONLY 63 days*

- Email discussions with NRR Director Eric Leeds and DEDO Michael Webber regarding Mr. Benton's technical training requests being denied over the last two (2) years (violation of NRC MD 10.77) (Appellant Hearing Exhibit – I): July 16, 2012 (Removal Date) – May 21, 2012 (Disclosure Date) = An approximate elapsed time of *ONLY 55 days*

- **Email discussions with NRR Director Eric Leeds and DEDO Michael Webber regarding Mr. Benton's request to have DRA Deputy Director Samson Lee removed as the deciding official over his pending removal action (Appellant Hearing Exhibit – J)**: July 16, 2012 (Removal Date) – May 29, 2012 (Disclosure Date) = An approximate elapsed time of *ONLY 63 days*
- **Meeting w/ NRC DRA SES Director Samson Lee to give his oral and written reply to Mr. Tate's Proposal to Remove memorandum and how Mr. Tate violated internal NRC regulations in MD 10.77 by denying me technical training for two (2) years (violation of NRC MD 10.77); NRC MD 10.67 in putting me on a PIRM and issuing me an "unacceptable" appraisal rating (violation of NRC MD 10.67); disparate Treatment (Title VII violation); harassment via the daily monitoring of my time and attendance (T&A) (Title VII violation); and a unhealthy and career limiting work environment (Title VII violation) (Appellant Hearing Exhibit – E)**: July 16, 2012 (Removal Date) – May 31, 2012 (Disclosure Date) = An approximate elapsed time of *ONLY 45 days*
- **Mr. Benton filing a "*formal*" EEO Complaint with the NRC Office of Small Business and Civil Rights (SBCR) alleging how Mr. Tate violated internal NRC regulations in MD 10.77 by denying me technical training for two (2) years (violation of NRC MD 10.77); NRC MD 10.67 in putting me on a PIRM and issuing me an "unacceptable" appraisal rating (violation of NRC MD 10.67); disparate Treatment (Title VII violation); harassment via the daily monitoring of my time and attendance (T&A) (Title VII violation); and a unhealthy and career limiting work environment (Title VII violation) (Appellant Hearing Exhibit – K):** July 16, 2012 (Removal Date) – June 21, 2012 (EEO Disclosure Date) = An approximate elapsed time of *ONLY 25 days*

As calculated above, and as supported by the record, I have effectively proven how EACH of my protected disclosures/allegations raised have met the ***knowledge/timing test*** as explained in *Gonzalez*. Consequently, the appellant has satisfied the knowledge/timing test and, thus, has established that the fact of his disclosure, and, consequently, his perceived whistleblower status, was a contributing factor in the NRC's personnel action of removal on July 16, 2012. As a result, the burden of proof shifts to the agency to establish by clear and convincing evidence that it would have taken the same personnel action in the absence of his various protected whistleblowing disclosure activities by clear and convincing evidence. *See Carr*, 185 F.3d at 1322; *Rubendall,* 101 M.S.P.R. 599, ¶ 14; *See Juffer v. U.S. Information Agency*, 80 M.S.P.R. 81, ¶ 12 (1998). Mr. Benton has duly proven that NRC management had "***perceived***" him as a whistleblower, and how EACH of his protected whistleblowing disclosures were a ***contributing factor*** to the personnel actions taken by the NRC. One who is perceived as a whistleblower is still entitled to the protections of the Whistleblower Protection Act, even if he has not made protected disclosures. *See Juffer v. U.S. Information Agency*, 80 M.S.P.R. 81, ¶ 12 (1998).

In *Chrysler Corporation* (1979), the U.S. Supreme Court discussed the situations in which agency issued regulations, policies, and/or procedures (i.e. NRC MD 10.67, MD 10.77, and the NRC CBA) have the "***force and effect of law***." Under the *Chrysler* test, agency regulations (i.e. internal NRC policies and management directives) have the force and effect of law when they prescribe substantive, as opposed to interpretive, rules, and they are promulgated pursuant to a specific statutory grant of authority and conform with any procedural requirements imposed by Congress. *Chrysler Corporation*, 441 U.S. at 301-303; *see also Horner v. Jeffrey*, 823 F.2d 1521, 1529 (Fed. Cir. 1987). We find that the OPM regulations at issue in these appeals have the force and effect of law.  *See Atchison, Topeka, & Santa Fe Ry. Co. v. Scarlett*, 300 U.S. 471, 474, 57 S.Ct.  541, 543, 81 L. Ed. 748 (1937) (a regulation promulgated by an agency pursuant to statutory authority has the same force as though prescribed by the statute).  On Page 32 of the *Initial Decision* AJ Styles erroneously wrote, "***I do not find that any of these disclosures were protected by 5 U.S.C. § 2302(b)(8).***"  This is clearly an erroneous finding of material fact when Mr. Benton had clearly disclosed what internal NRC regulations (i.e. the effective laws) were violated by the NRC using the knowledge/timing test.

Furthermore, as detailed above, there are several pieces of evidence in the record that affirms that EVERYONE within Mr. Benton's direct management chain (i.e. Mr. Tate (first-line supervisor), Mr. Lee (second-line supervisor), Mr. Giitter (third-line supervisor), Mr. Leeds (fifth-line supervisor), and Mr. Weber (sixth-line supervisor)) EACH knew the details contained within the his written and verbal disclosures.  Therefore, the fact that Mr. Benton made his disclosures either via meetings, emails, and filing formal complaints and/or grievances is sufficient to establish the "***knowledge***" element of the knowledge/timing test. *Marano*, 2 F.3d at 1143; *Rubendall*, 101 M.S.P.R. 599, ¶ 13.  Thus, as documented on **Page 31** of the *Initial Decision*, Mr. Tate's assertion the "*he was not aware that the appellant had made any whistleblowing disclosures*" was clearly false and constitutes ***Perjury*** and ***Fraud***.

19

Lastly, as detailed herein, the deciding official over Mr. Benton's unlawful removal (Mr. Lee), had keen **"knowledge"** of his multiple protected whistleblower disclosure activities. S*ee Mausser v. Department of Army,* 63 M.S.P.R. 41, at 44-45 (even though the appellant never revealed purported disclosures to any authority, the contributing factor test would be satisfied if the deciding official was aware that the appellant had threatened to make the disclosures and thus perceived him as a whistleblower). Furthermore, the short length of **"time"** between Mr. Benton's disclosure of filing a formal EEOC discrimination complaint against the NRC on June 21, 2012, and Mr. Lee's decision to terminate him on July 16, 2012 - **25 days** - is sufficiently proximate that a reasonable person could conclude that the disclosure was a contributing factor in the termination. S*ee Mausser; Rubendall,* 101 M.S.P.R. 599, ¶ 13 (an interval of less than 6 months between the disclosure and the personnel action was sufficient to satisfy the knowledge/timing test); *but see Costello v. Merit Systems Protection Board,* 182 F.3d 1372, 1377 (Fed. Cir. 1999) (a 2-year gap between the disclosures and the allegedly retaliatory action was too long an interval to justify an inference of cause and effect between the two). Therefore, AJ Styles findings of material fact regarding EACH of my disclosures and my affirmative defenses were expressly erroneous, unsupported by the record, and not in accordance with MSPB and federal case law.

### *AJ Styles erred in NOT assessing the Carr factors in determining rather the agency established by clear and convincing evidence that it would have taken the same personnel actions in the absence of my whistleblowing disclosures. AJ Styles erred in NOT finding that the NRC DID NOT meet the "clear and convincing" evidence standard. AJ Styles erred in not considering the NRC's Motive to Retaliate, and erred in failing to consider the connection between my prior whistleblowing activity and the personnel actions at issue.*

AJ Styles erred by adjudicating my removal claim and affirmative defenses without considering and assessing the NRC's motive to retaliate against me for my protected grievance, EEO, and whistleblower disclosure activities. As evidence by the record, for EACH of my raised disclosures/allegations within my IRA appeal, I included a section termed NRC'S MOTIVE TO TAKE THE PERSONEL ACTION where I provided a summary of what I believed was the NRC's motive to take the multiple adverse and prohibited personnel actions that NRC management had taken (See DOCKET #: DC-

1221-13-0508-W-1, Tabs 4 and 6). However, as evidence by the record, AJ Styles NEVER eluded to the fact that this material evidence was even considered in making ANY of her orders, decisions, and other issuances regarding my removal appeal case, despite Mr. Benton expressly making reference to them.

In determining whether an agency has shown by clear and convincing evidence that it would have taken the same personnel action in the absence of whistleblowing, the Board will consider the following factors (collectively known as the ***Carr* factors**): (1) the strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated. *Carr,* 185 F.3d at 1323; *Azbill,* 105 M.S.P.R. 363, ¶ 17. The Board does not view these factors as discrete elements, each of which the agency must prove by clear and convincing evidence. Rather, the Board will weigh the factors together to determine whether the evidence is clear and convincing as a whole. *Phillips v. Department of Transportation,* 113 M.S.P.R. 73, ¶ 11 (2010); *see Yunus v. Department of Veterans Affairs,* 84 M.S.P.R. 78, ¶ 27 (1999), *aff'd,* 242 F.3d 1367 (Fed. Cir. 2001).

In assessing the evidence of the agency, the administrative judge's findings on the charges should be based either on undisputed facts or, in significant part, on her assessment of the credibility of the witnesses. The record does not evidence that AJ Styles considered, applied, and/or evaluated ANY of the above stated ***Carr* factors,** and as a result NONE of her findings were based on based on undisputed facts. As presented above, AJ Styles has NOT presented ANY evaluation within her initial decision affirming this evidentiary fact for EACH of the thirteen (13) disclosures/allegations raised before the Board. Hence, absent any evaluation of the ***Carr* factors**, AJ Styles' erroneous finding that "***I do not find that any of those claims demonstrate evidence a violation of law, rule, or regulation, gross mismanagement, a gross waste of funds, a abuse of authority or a substantial and specific danger to public health and safety," is*** both unfounded and unsubstantiated, which in turn evidences an abuse of

21

discretion on her part. As presented above, Mr. Benton clearly detailed how the adverse and prohibited personnel actions taken against him by NRC management violated internal NRC regulations in MD 10.67, MD 10.77, and the CBA, as well as multiple OPM regulations regarding personnel management. Therefore, the subsequent affirmation of Mr. Benton's removal from federal service is adversely based on an erroneous and unsubstantiated finding of material fact by AJ Styles.

### AJ Styles also erred in clearly violating 5 CFR § 1201.41 and Chapter 12 of the MSPB Administrative Judge Handbook by NOT following applicable MSPB and Federal case law, as presented and supported herein and by the record, in tacitly making her factual determinations regarding Mr. Benton's removal

Additionally, as explained above, and supported by the record, AJ Styles also erred in failing to consider how Mr. Benton provided material evidence that he did in fact make nonfrivolous whistleblower disclosures via circumstantial evidence through the knowledge/timing test, and how the motives of the NRC to take the personnel actions being appealed were clearly established. On the Page 13 of her *Initial Decision*, AJ Styles erroneously stated that Mr. Benton "testified that he was rated unsuccessful in 2010." To the contrary, Mr. Benton asserts that he clearly stated that he was rated as "Minimally Successful" in 2010. Additionally, there is NO legal statute or case law that supports her erroneous conclusion that a manager meeting with or emailing his employee or an employee asking for advice/assistance from more senior employees, constitutes "Unacceptable" performance. See Page 13 of *Initial Decision*, *HT* of Benton, and the closing remarks of the Appellant. Hence, AJ Styles has erroneously ruled on Page 49 of her decision that "*I find the agency has shown by substantial evidence that the appellant's performance was unacceptable*," which has adversely affected the outcome of my case. As presented above and as follows, AJ Styles also erred in NOT following applicable MSPB and Federal case law, as presented and supported herein and by the record, in tacitly making her factual determinations regarding Mr. Benton's removal. Had Judge Styles properly evaluated the evidence on record, and considered the applicable precedential case law as presented in *Gonzalez, Jensen, Chrysler Corporation,* and Carr, among others, in evaluating Mr. Benton's disclosures and affirmative defenses, she would

22

have properly determined that Mr. Benton's removal was in fact retaliatory, evidenced EEO reprisal, and *"not in accordance with law."*

The reviewing court has tacitly approved of the Board's approach in following applicable case law. *See Fellhoelter,* 568 F.3d at 971 (citing *Kalil v. Department of Agriculture,* 479 F.3d 821, 824-25 (Fed. Cir. 2007); *Greenspan v. Department of Veterans Affairs,* 464 F.3d 1297, 1303-04 (Fed. Cir. 2006); *Clark v. Department of the Army,* 997 F.2d 1466, 1470-71 (Fed. Cir. 1993), *superseded by statute on other grounds as recognized in Horton v. Department of the Navy,* 66 F.3d 279, 284 (Fed. Cir. 1995)); *but see Kahn v. Department of Justice,* 618 F.3d 1306, 1316 (Fed. Cir. 2010) (stating in *dicta* that, in a hearing on the merits, the Board should make findings on whether (1) the acting official had authority concerning the personnel action; (2) the employee made a protected disclosure; (3) the acting official used his authority against the employee; (4) the protected disclosure was a contributing factor in the personnel action; and (5) the agency would have taken the same action in the absence of the protected disclosure. One who is perceived as a whistleblower is entitled to the protection of the WPA, even if he has not made protected disclosures.  *See Jensen* (2007); *Juffer* (1998).

Travis Tate and Director Samson Lee have both testified that, 1) they had authority concerning the personnel actions of Mr. Benton's proposed removal (Tate) and subsequent removal (Lee); and 2) prior to his removal on July 16, 2012, that they EACH knew of Mr. Benton's various whistleblowing activities as documented in his FY 2010 grievance, various meetings with and emails to his supervisors, and his formal EEOC complaint against the NRC.  Additionally, both Mr. Tate and Mr. Lee used their authority to both propose the removal of and subsequently remove Mr. Benton, respectively.  See *HT* of Tate, Lee, and Benton; *Docket No*. DC-0432-12-0751-I-1, Tab #5, Exhibit F; *Appellant Hearing Exhibits –* D, E, F, G, H, I, J and K; *Docket No*. DC-0432-12-0751-I-1, *"Agency Opposition to Stay Request Part 3,"* Attachment F; and *Docket No*. DC-0432-12-0751-I-1, *"Agency Opposition to Stay Request Part 4,"* Attachment J, Item #16.

23

As presented above, Mr. Benton has duly established by preponderant evidence that he made at least one protected disclosure, and that his protected disclosures were a contributing factor in his removal using the knowledge/timing test consistent with case law in *Gonzalez*. Mr. Benton has also established how the various personnel actions taken against him by the NRC, to include his removal, "was not in accordance with law" because they violated the internal rules, regulations, policies, and/or procedures (i.e. MD 10.67, MD 10.77, and CBA) of the NRC consistent with case law in *Chrysler Corporation. See Chambers v. Department of the Interior,* 515 F.3d 1362, 1367 (Fed. Cir. 2008). Lastly, a reasonable belief exists if a disinterested observer with knowledge of the essential facts known to and readily ascertainable by the appellant could reasonably conclude that the actions of the government evidence one of the categories in section 2302(b)(8)(A). *Lachance v. White,* 174 F.3d 1378, 1381 (Fed. Cir. 1999). To establish that the appellant had a reasonable belief that a disclosure met the criteria of 5 U.S.C. § 2302(b)(8), he need not prove that the condition disclosed actually established a regulatory violation or any of the other situations detailed under 5 U.S.C. § 2302(b)(8)(A)(ii); rather, the appellant must show that the matter disclosed was one which a reasonable person in his position would believe evidenced any of the situations specified in 5 U.S.C. § 2302(b)(8). *Schnell,* 114 M.S.P.R. 83, ¶ 19. However, the NRC has not proved by clear and convincing evidence they would have taken the same adverse and prohibited personnel actions against Mr. Benton in the absence of his protected disclosures.

### *AJ Styles abused her discretion in failing to fully join my IRA and Removal appeals*

The Board is authorized to join two or more appeals filed by the same appellant and hear and decide them concurrently if it determines that joinder "*could result in the appeals' being processed more expeditiously and would not adversely affect any party.*" 5 U.S.C. § 7701(f)(2); *see* 5 C.F.R. § 1201.36(b). The decision whether to join two appeals is a matter committed to the sound discretion of the administrative judge or the Board in accordance with the guidance set forth above. Mr. Benton asserts

that **ALL** eleven (11) of his raised disclosures/allegations within his IRA appeal (DC-1221-13-0508-W-1) are **DIRECTLY** related to the adjudication of his ***removal*** appeal (DC-0432-12-0751-I-2) and the various the "***Affirmative Defenses***" raised therein.   Therefore, both of Mr. Benton's  appeals are ***extremely*** like and related concerning the evidence, supporting documentation; and the adjudication of the material facts of EEO reprisal, denial of training, and my removal on July 16, 2012, among others, whereas both parties actually cross-reference material facts from both cases in the overall adjudication and presentation of facts in EACH case.   In fact, within her *Initial Decision* AJ Styles' made multiple cross-references to Mr. Benton's IRA appeal in support of her several erroneous findings of material fact.   See *Initial Decision* Footnotes Nos. 5, 8, 10, and 11.

Additionally, the NRC has the **EXACT** same counsel assigned to both cases: i.e. Ms. Elva Bowden Berry, Esq.; Ms. Molly Barkman Marsh, Esq.; and Mr. Mark Maxin, Esq.   Therefore, joinder "***[w]ould result in the appeals' being processed more expeditiously and would not adversely affect any party,***" and would be a more effectively and efficient use of U.S. Government resources, and funds, as to not be ***wasteful*** in federal government operations.   See *King v. Department of Army*, <u>2011 MSPB 83</u>, Docket No. AT-1221-11-0037-W-1 (2011).

Without the jurisdictional claim of his unlawful removal (as presented here in Docket No.: DC-0432-12-0751-I-2), and as supported by his various disclosures and/or non-frivolous allegations as presented in his IRA appeal, it becomes overly burdensome for Mr. Benton to meet the evidentiary standard of "***preponderance of the evidence***" in proving his various affirmative defenses pertaining to the violation of several laws, rules, regulations, policies, procedures, PPPs, and MSPs.   Thus, by his appeals being "***separately***" adjudicated, Mr. Benton is duly prohibited from "***effectively***" raising both the PPPs and MSPs to be enforced by the Board, thus severely limiting the proper adjudication and overall legal content, context, and evidentiary basis in support of his removal appeal within the instant case.   Furthermore, in keeping his appeals separate, AJ Styles has also failed to consider how the

25

presented violations of PPPs and MSPs taken by the NRC management within Mr. Benton's IRA appeal ALL constituted reprisal for having made the various EEO, grievance, and whistleblowing disclosures between December 2009 (i.e. my discussions with EEO counselor Kenneth Bailey) and March 2013 (i.e. my complaint to OSC) as listed above. Where, as here, I have filed an complaint with OSC in support of an overall claim of reprisal for whistleblowing activity, an administrative judge should not take a *"piecemeal"* approach by adjudicating separate, but related, personnel actions in separate appeals. Given the similarity of the issues presented and the likely overlap of evidence and witnesses, joinder of Mr. Benton's IRA and Removal appeals for adjudication was appropriate. *See Groseclose v. Department of the Navy,* 111 M.S.P.R. 194, ¶ 14 (2009). Mr. Benton believes that this was an erroneous decision taken by AJ Styles which has negatively affected the outcome of his case, whereas AJ Styles erred by adjudicating his claims and affirmative defenses concerning his *Removal* appeal without considering the record as a whole within the context of his IRA appeal, and by denying corrective action in his Removal appeal on the ground that *"the appellant has not established that his removal was false or pretextual,"* and that he *"failed to establish that [his] disclosures were a contributing factor in the agency's actions."* *See King.* Therefore, AJ Styles' decision in this regard constituted an abuse of discretion. *Cf. Stein-Verbit v. Department of Commerce,* 72 M.S.P.R. 332, 338-42 (1996) (the administrative judge's decision to bifurcate the charges under the circumstances of the case constituted an abuse of discretion where the decision incurred on the appellant's right to present a full defense and to have a meaningful right to a hearing).

### *AJ Styles erred in failing to properly assess the Agency's removal penalty*

The Appellant challenges the administrative judge's penalty analysis as it pertains to his removal. In particular, Mr. Benton contends that AJ Styles failed to make an *"independent"* and *"thorough"* assessment of the ***Douglas* factors** in adequately accessing the ***removal penalty*** in his particular case. In fact, the record evidences that in the likelihood of the NRC's personnel actions being

sustained, NO assessment of the ***Douglas*** factors have been made at all by AJ Styles to determine rather the Board should mitigate the penalty of removal and/or not. When not all of the charges are sustained, the Board will consider carefully whether the sustained charges merited the penalty imposed by the agency. *Howard v. Department of the Air Force*, 114 M.S.P.R. 482, ¶ 5 (2010); *Douglas v. Veterans Administration*, 5 M.S.P.R. 280, 308 (1981). In such circumstances, the Board may mitigate the agency's penalty to the maximum reasonable penalty. *Lachance v. Devall*, 178 F.3d 1246, 1260 (Fed. Cir. 1999); *Howard*, 114 M.S.P.R. 482, ¶ 5.

Additionally, to raise a disparate penalty claim, the appellant must first point to specific employees that were similarly-situated and received a more lenient penalty and/or treatment. *See Lewis v. Department of Veterans Affairs*, 113 M.S.P.R. 657, ¶¶ 5-6 (2010). In addressing the evidentiary standard set by the Board's ruling in *Lewis* as stated above, Mr. Benton refers the Board to **Docket No. DC-1221-13-0508-W-1, PFR** Attachments I, II, and III to highlight his previous attempts to specifically prove that employees who were similarly-situated and received a more lenient penalty and/or more favorably treated, which he believes evidences pretext to unlawful discrimination and a violation of the 1st Prohibited Personnel Practice, 5 USC § 2302(b)(1). Attachment I, Questions 2, 4, 8, and 10, evidences that within his EEO case, Mr. Benton's counsel requested this exact same information regarding the NRC's previous "***penalty***" actions for "***similarly-situated employees***" from the NRC. However, release of such information has been unlawfully **DENIED** by the Agency. Attachment II, Page 3, Document Request No. 10, evidences that Mr. Benton's counsel AGAIN requested this information from the NRC, which was again DENIED by the NRC.

The 12th Prohibited Personnel Practice (5 U.S.C. § 2302(b)(12)) arose from a Court ruling that agencies are required to follow the procedures of 5 U.S.C. Chapter 43 (Chapter 43) in order to take an action based on unacceptable performance. 5 U.S.C. § 2302(b)(12) directed the use of performance appraisals as the basis for actions both rewarding and removing employees, among other things. 5

27

U.S.C. § 4302(a)(3).  As the court noted, the Board feared that agencies might attempt to use Chapter 75 in place of Chapter 43 to avoid the merit principles embodied in Chapter 43, but the court found that agencies have **"no escape route from merit principles."**  In its analysis, the court stated that, under section 2302(b)(12), it is a prohibited personnel practice (PPP) to violate the merit system principles set out in section 2301(a).  The court specifically noted two (2) merit system principles in section 2301 are particularly relevant:

- ***(6) Employees should be retained on the basis of the adequacy of their performance, inadequate performance should be corrected, and employees should be separated who cannot or will not improve their performance to meet required standards; and***
- ***(7) Employees should be provided effective education and training in cases in which such education and training would result in better organizational and individual performance.***

Based on these authorities, the court held that, under 5 U.S.C. § 7701(c)(2)(B), which provides that an adverse action may not be sustained against an employee if the decision was based on a PPP and/or 5 U.S.C. § 2302(b)(12).

First, the 6th Merit System Principle plainly states that "***employees should be separated who cannot or will not improve their performance to meet required standards."***  However, the record evidences that over a three (3) year period PRIOR to his removal, Mr. Benton repeatedly made requests to NRC management to receive "***technical***" training which would have assisted him in improving his performance "***to meet required standards"*** of Critical Element 2, "*Technical Analysis and Problem Solving*."  Therefore, Mr. Benton's actions in the job actively displayed his sincere attempts at improving his performance up to the Fully Successful performance standard.  Secondly, contrary to the adverse actions of NRC management, the 7th Merit System Principle clearly states that Mr. Benton ***"should be provided effective education and training in cases in which such education and training would result in better organizational and individual performance."***  However, as supported by the record, NRC management repeatedly DENIED Mr. Benton effective training which would have resulted in better individual performance, but provided and APPROVED the technical training requests of his peers (i.e.

females and Caucasian males) (i.e. disparate treatment). See the *Hearing Testimony* (HT) of Mr. Tate,

Mr. Lee, and Mr. Parillo. Consequently, Mr. Benton's peers, whom ALL where APPROVED for and

received "technical" training, were ALL retained in their positions with the agency (the specific names,

sex, and race of which Mr. Benton has routinely pointed out within both his IRA and Removal appeals, as

supported by the record). To the contrary, the Appellant, whom was DENIED ALL requests for

"technical" training by NRC management over a sustained three (3) year period, was removed from his

position with the agency entirely, despite his current appraisal rating of record being at the *Minimally*

*Successful* performance level. How is this considered "*fair and equitable*" treatment? In fact, this is

clearly "***disparate treatment.***" However, AJ Styles erred in failing to consider NRC management's

repeated DENIAL (i.e. 40 instances) of his technical training requests, and make an "***independent***" and

"***thorough***" assessment of the ***Douglas*** factors in adequately accessing the ***removal penalty*** within the

instant case.

### *The administrative judge erred in not finding a First Amendment and/or Fifth Amendment violations*

The Supreme Court has recognized that public employees, like all citizens, enjoy a

constitutionally protected interest in freedom of speech. *Connick v.Myers*, 461 U.S. 138, 142 (1983);

*Pickering v. Board of Educ.*, 391 U.S. 563, 568 (1968); *Chambers v. Department of the Interior*, 103

M.S.P.R. 375, ¶ 33 (2006). Speech that relates to any matter of political, social, or other concern to the

community (i.e. Religion and/or Biblical texts) may be considered a matter of public concern. *See*

*Connick*, 461 U.S. at 146. Courts must examine the "content, form, and context of a given statement, as

revealed by the whole record" to determine whether the speech qualifies as a matter of public concern.

Certainly, an unaltered, un-manipulated, and ***direct*** Biblical quote of the 35th Psalms is a form of

religious expression, and Religion is a matter of public concern entitled to the full protection of the First

Amendment. *See, e.g., Connick*, 461 U.S. at 148. My use of a direct quote of the 35th Psalms was

***arbitrarily*** chosen among the various chapters of the King James Version of the Bible. I assert that I

always keep a small pocket Bible at my desk, and that before I began my workday, I would ALWAYS start my day off by reading both the 27th and 35th Psalms. The evidence of the record clearly validates that in the past, I have routinely used various quotes from the book of Psalms, and various other quotes of religious context as a part of my email signatures at the NRC, without ever being identified as a concern by NRC management (See PFR Exhibit D). I have also provided emails evidencing how other similarly situated employees such as Mr. Haile Lindsay and Mrs. Cornelia Burkhalter also use Biblical quotes in their email signatures (see Docket No. *DC-1221-13-0508-W-1*, PFR Attachments IV-VII), but they were never ordered to have a psychiatric evaluation done as a result of their religious expressions as I have. **Therefore, why was I being treated differently by NRC management (i.e. disparate treatment)?** However, this was evidence that was NEVER adequately considered and/or evaluated by AJ Styles. In fact, AJ Styles **NEVER** addressed my claims concerning violations of my constitutionally protected rights of both the First Amendment (Freedom of Speech and Freedom of Religion) and Fifth Amendment (right to due process) at all within ANY of her court rulings, and certainly not within her *Initial Decision*. Hence, these were material errors made by AJ Styles which has adversely affected the outcome of my case. Therefore, AJ Styles finding that, "*I find no evidence that the appellant was subjected to intimidation, ridicule or insult or subjected to an environment heavily charged with discrimination... I do not find the appellant's hostile [work] environment claim negates he agency's removal action,*" is clearly erroneous and unsupported by the record of the appeal.

## XI.    CONCLUSION

I humbly request that the Board VACATE the erroneous ***INITIAL DECISION*** issued by AJ Styles affirming my removal, GRANT my petition for review, VACATE the initial decisions denying my stay requests (**Docket Nos. DC-0432-12-0751-S-2,** DC-1221-13-0508-S-1 and DC-0432-12-0751-S-1), GRANT me reinstatement, a "*retroactive*" stay of all applicable personnel actions effective from **July 16, 2012,** forward, as described herein in accordance with the Opinion and Order of the Board.

I have read this statement, consisting of **30** pages, and it is true, complete, and correct to the best of my knowledge and belief.

Respectfully submitted, _____     _____

                                   LaRay J. Benton                            Date
                                     1731 Stourbridge Court
                                   Mitchellville, MD. 20721
                                   (864) 357-4545 (phone)
                                   laraybenton@gmail.com (email)

Signed and sworn to before me this _____ day of _____ 2014, at

_____

                                   (address)

_____

Neutral witness or notary

31