## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **LARAY J. BENTON**, | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | Civil No. **PJM 15-2126** |
| | * | |
| **STEPHEN G. BURNS,** | * | |
| **CHAIRMAN, U.S. NUCLEAR** | * | |
| **REGULATORY COMMISSION** | * | |
| | * | |
| Defendant | * | |

## <u>MEMORANDUM OPINION</u>

*Pro se* Plaintiff Laray J. Benton brings suit against Stephen G. Burns, Chairman of the Nuclear Regulatory Commission ("NRC") in his official capacity,[1] alleging violations the Civil Service Reform Act, 5 U.S.C. § 4303 (1990)("CSRA"); Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. (2000)("Title VII"), and the Whistleblower Protection Act of 1989 ("WPA"), 5 U.S.C. § 1201 (2000). Benton appeals orders issued by the Merit Systems Protection Board (MSPB) and the Equal Opportunity Employment Commission ("EEOC") as to those claims. He also brings for the first time in this Court numerous claims of violations of the U.S. Constitution, the Maryland Declaration of Rights, Federal criminal law as well as state statutory and common law.[2]

---

[1] Benton initially brought suit against the United States and several NRC employees. The Court granted the Agency's Motion to Substitute Burns in his official capacity as the sole Defendant. ECF No. 29.

[2] Benton's 115-page Amended Complaint does not separate or clearly set forth each of the numerous causes of action he brings. The Court has, to the best of its ability, catalogued, categorized, and evaluated each claim. *See* II, *infra*.

Pending before the Court is Benton's Motion for Summary Judgment and Sanctions,[3] ECF No. 6 at 16, and Burns's Notice of Cross-Motion for Summary Judgment. ECF No. 30. For the reasons that follow, Benton's Motion is **DENIED** and Burns's Motion is **GRANTED.**

## I.       FACTUAL AND PROCEDURAL HISTORY

Benton was employed by the NRC as a Reactor Engineer in the Accident Dose Branch. ECF No. 30-1 at 2. A Reactor Engineer evaluates accidents at nuclear plants. *Id.*

Problems with Benton's professional performance began as far back as 2009. ECF No. 6-2 at 113- 119. As a result, his supervisors declined to recommend him for two positions in the NRC's Graduate Fellowship Program, first in FY 2009 and then in FY 2010. ECF No. 6 at 21.

Benton received a "minimally successful" performance evaluation in 2010. ECF No. 6-1 at 28. That evaluation was the subject of a grievance filed before agency officials on Benton's behalf by the National Treasury Employees Union ("NTEU"), of which Benton was a member. ECF No. 46 at 25. The grievance was adjudicated pursuant to the negotiated procedure and the Agency found against Benton. ECF No. 6-1 at 38. After the adjudication and Benton's mid-year review, his supervisor gave him a Performance Deficiency Notice ("PDN") on May 11, 2011, which formally notified Benton of the deficiencies in his work, specifically that his "performance [was] deficient in the areas of evaluation and analysis of technical issues related to [his] assigned licensing reviews and special tasks." ECF No. 6-1 at 54.

Due to continued poor performance, Benton's supervisor issued a formal "Notice of Unacceptable Performance and Performance Improvement Requirements Memorandum,"

---

[3] Benton's filing is titled "Amended Complaint," but starting on page 16, under the heading "Motion for Summary Judgment and Sanctions," the filing proceeds to argue for summary judgment and, briefly, for sanctions. The Court will therefore construe the pleading as such.

("PIRM") informing him that his performance with respect to Critical Element 2 of his performance plan, entitled "Technical Analysis and Problem Solving," was unacceptable. ECF 6-2, at 57-68. The PIRM gave Benton from November 22, 2011 to March 20, 2012 to achieve "minimum success" with respect to five specific tasks. *Id.* It also provided for a weekly meeting between Benton and his supervisor and specified that Benton's failure to improve could result in demotion, reassignment or removal. *Id.* at 60.

Benton's superiors did not see sufficient improvement in Benton's work in the allotted time and on May 9, 2012, his supervisor issued a written Proposal to Remove [Benton] from the Federal Service ("Proposal"). ECF No. 6-1 at 62. Benton availed himself of the opportunity to submit both written and oral responses under agency procedures, but eventually a senior NRC official issued a Decision to Remove Memorandum ("Removal"). ECF. No. 6-2, at 46.

Shortly after the Proposal issued, but before the Removal did, Benton sent an email to his supervisor including the following quote from Psalms: ". . . [L]et the angel of the LORD chase them [that fight against me]. Let their way be dark and slippery and let the angel of the LORD persecute them." ECF No. 30-6 at 3. Benton's supervisor became concerned and notified his managers, as well as the security office and the Office of the Chief Human Capital Officer. Benton's manager and a representative of the Office of the Chief Human Capital Officer met with Benton, and scheduled an appointment for him to speak with a counselor, which he did not keep and did not reschedule. ECF No. 30-1 at 4.

Benton appealed his removal to the MSPB, asserting multiple claims. ECF No. 6-2 at 123. As part of the appeal, NRC counsel submitted a copy of Benton's 2010 performance evaluation, which found him only "minimally successful." *See* ECF No. 6-1 at 1. Subsequently,

it was discovered that the version of the performance review submitted by Agency counsel was not the official performance review included in Benton's official personnel file. ECF No. 30-9 at 32.

An MSPB Administrative Law Judge ("ALJ") affirmed Benton's removal. ECF No. 31-10. He appealed to the full MSPB board, which denied his Petition for Review. ECF No. 31-2. Benton then appealed that denial to the U.S. District Court for the District of Columbia, which transferred the case to this Court – the U.S. District Court for the District of Maryland. ECF No. 8.

Separately, Benton filed a discrimination complaint with the NRC's Office of Small Business and Civil Rights on June 21, 2012 alleging discrimination based on his race (African American) and gender (male) with respect to his non-selection for certain positions, his performance appraisal, awards, time and attendance, training, among other issues. ECF No. 31-3 Benton also alleged non-sexual harassment and reprisal in his removal, "increased surveillance of [his] time and attendance," and "continuous denial of technical training requests." *Id.*

The NRC's Office of Small Business and Civil Rights ("EEO Office"), which investigates Equal Employment Opportunity (EEO) discrimination claims, acknowledged receipt of Benton's complaint and issued a letter accepting seven of the nine alleged instances of discrimination for investigation in September 2012. ECF No. 31-5 at 3. On May 30, 2013, Benton moved to add religious discrimination claims to his EEO case. ECF No. 46-5.[4]

---

[4] The disposition of that motion is not in the record and it is therefore unclear whether the claims were adjudicated by either the agency or, eventually, the EEOC.

At some point, it appears the EEO Office issued a final order, which Benton appealed to the Equal Opportunity Employment Commission ("EEOC"), though neither the order nor the appeal is in the record. On March 18, 2016, the EEOC dismissed with prejudice Benton's entire claim, stating that "the Complainant's District Court filing makes the same allegations of employment discrimination as his administrative formal complaint.[5] ECF No. 41-1.

In a third administrative proceeding initiated in 2013, Benton filed an individual right of action appeal before the MSPB, alleging that the NRC had taken various actions against him in retaliation for whistleblowing activity. ECF No. 46-1 at 2.  Benton alleged eleven instances of retaliation: (1) that the Agency had submitted an "altered" version of his FY 2010 performance appraisal; (2) that the Agency had changed his performance elements and standards; (3) that the Agency had given him false performance appraisals; (4) that the Agency had unfairly criticized his use of biblical quotes in his email messages; (5) that the Agency had ordered him to take a psychiatric examination; (6) that the Agency had denied his training requests; (7) that the Agency had unfairly scrutinized his time and attendance; (8) that the Agency did not select him for the Agency's Graduate Fellowship Program; (9) that the Agency hard removed him from employment; and (10) that the Agency had issued him a PDN and a PIRM. ECF No. 30-1 at 8, ECF No. 31-8.

The MSPB's initial decision dismissed Benton's claims for lack of jurisdiction, which Benton appealed, ECF No 31-11, and which the full Board affirmed. Benton appealed that denial to the Federal Circuit, which recently dismissed the appeal and remanded the action to the

---

[5] The Court notes that the Final Agency Order is not in the record. In addition, this initial decision by the EEOC was issued not only after the current action was filed but also after both parties had filed their Cross Motions for Summary Judgment in the matter.

MSPB, finding that the MSPB's Judgment was not final, hence non-appealable. ECF No. 31-13; ECF No. 57-2 at 4.

## II.    CLAIMS

In his lengthy Amended Complaint, ECF No. 6, Benton makes dozens of claims based on purported violations of an array of statutes and common law doctrines.

*Appeals from Administrative Bodies*

In this case, Benton attempts to bring appeals from decisions in three different administrative proceedings. His arguments are interconnected and somewhat duplicative.

First, he appeals the Final Order of the Merit Systems Protection Board ("MSPB I") with respect to the lawfulness of his removal. ECF No. 31-2.

Separately, Benton filed a complaint with the EEO Office at the NRC on June 21, 2012. That case was dismissed by EEOC ALJ Charles Shubow on March 23, 2016 because Benton had brought a civil action "raising the same claims as in th[e] complaint." ECF No 41-1. Though Benton's claims were still pending at the EEOC when the present action was filed on February 5, 2015, he seems to have brought identical claims in the present action as well.

Finally, Benton brings claims stemming from a complaint he made to the Office of Special Counsel ("OSC"), alleging violations of the Whistleblower Protection Act, which he eventually brought as an individual right of action to the MSPB ("MSPB II"). ECF No. 31-10. After the OSC terminated its inquiry into Benton's allegations, he appealed the case to the MSPB, which dismissed it for lack of jurisdiction. ECF No. 46-1 at 8. Benton appealed that case to the Federal Circuit, which as previously noted, remanded it to the MSPB. ECF No. 57-2.

*Criminal Violations*

Based on the submission to the MSPB of an unofficial copy of Benton's FY 2010

Performance Review and certain affidavits by the NRC, Benton alleges that Burns, in his official

capacity, violated of the following criminal statutes:

- 18 U.S.C. § 1001 (Fraud and false statements generally)

- 18 U.S.C. § 1028(a)(Fraud and related activity in connection with identification

  documents, authentication features, and information)

- 18 U.S.C § 1621(Perjury)

- 18 U.S.C. § 1622 (Subornation of perjury)

- 18 U.S.C. § 1623 (False declarations before grand jury or court)

- 18 U.S.C. § 1505(Obstruction of justice before departments, agencies and

  committee).

ECF No. 6 at 44.  Benton also alleges that Burns violated a regulation which provides

that "an employee shall not engage in criminal, infamous, dishonest, immoral, or notoriously

disgraceful conduct, or other conduct prejudicial to the Government." 5 C.F.R. § 735.203.

*Additional Claims in Benton's Later Filings*

In his later filings, ECF Nos. 41, 46, Benton makes additional claims:

Citing Maryland's whistleblower protections for state employees, he argues that he was a

whistleblower who should be immune from retaliation for reporting discrimination. ECF No. 41

at 6. He also brings a breach of contract claim against Burns for breaching the NRC's collective

bargaining agreement; allegations that his rights under the Maryland Declaration of Rights were

violated, *id.;* claims of civil fraud, *id.* at 12, and civil conspiracy, *id.* at 23; and causes of action

for the torts of misrepresentation, negligence, and intentional infliction of emotional distress. *Id.*

at 26 – 29.

### III.    JURISDICTION

With respect to all his claims, Benton, as the party asserting jurisdiction, bears the burden

of proving that the district court has subject matter jurisdiction.  *See Richmond, Fredericksburg*

*& Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). With a limited

exception, he has not carried his burden. *See infra* p.12.

Appeals from MSPB are typically taken to the U.S. Court of Appeals for the Federal

Circuit. 5 U.S.C. § 7703(b)(1).   This Court, as a U.S. District Court, has jurisdiction over MSPB

I pursuant to 5 U.S.C. § 7703(b)(1)  because it is a "mixed case," which is "a complaint of

employment discrimination filed with a federal agency based on race . . . religion, [or] sex . . . or

stemming from an action that can be appealed to the Merit Systems Protection Board." 29 C.F.R.

§ 1614.302. The aggrieved employee has 30 days to appeal to the district court following the

final order of the MSPB.

In order for the Court to have subject matter jurisdiction over the appeal of MSPB I

claims, however, Benton must have exhausted his administrative remedies and must have

brought them in the first instance before the MSPB. *Harris v. Evans*, 66 F. App'x 465, 467 (4th

Cir. 2003). Accordingly, the Court is limited to examining the following claims initially brought

before the MSPB as part of Benton's appeal of the Removal:

(1)    <u>Retaliation for Union and EEO Activity:</u> "I was subjected to prohibited personnel

practices and adverse actions under U.S.C. § 2302 …when on or about July 16,

2012, Samson Lee, Deputy Director, ORA, Office of Nuclear Reactor Regulation

(NRR), unjustifiably made and immediately implemented his decision to remove me from federal service (termination)." ECF No. 6-1 at 132.

(2)  Harmful Error in Removal Proceeding: "NRC management made errors in applying required procedures (harmful error) pursuant to 5 C.F.R § 1201.56(b) and (c)(3)." *Id.*

(3)  Denial of Training and Within Grade Increase: "the agency willfully and systematically subjected me to various adverse and prohibited personnel actions (i.e. denial of multiple technical training courses and denial of my With-in Grade Increase (WGI))." *Id.*

(4)  Discrimination in Removal Proceedings: "the NRC's action or decision to remove me from federal service (termination) was the result of prohibited discrimination …based on race (African American), gender (male), and retaliation (reprisal)." *Id.* at 133

(5)   Monitoring of Time and Attendance: "Travis Tate . . . has unjustifiably increased surveillance and/or oversight of my time and attendance (T&A), has collaborated with Mr. Lee and others to monitor my whereabouts, despite me never falsifying or having issues with my T&A, nor receiving any T&A counseling memo or notification clearly documenting any identified T&A issues and/or prompting applicable corrective actions." *Id.*

(6)  Hostile Work Environment: "NRC management have collectively supported a hostile work environment (harassment) based on race (African American), gender (male), and retaliation (reprisal)." *Id.*

(7)     <u>Violation of Whistleblower Protections</u>: "the NRC's action or decision to remove

me from federal service (termination) was based on whistleblowing." *Id.*

All other claims that Benton brings related to any aspect of his removal are beyond this

Court's subject matter jurisdiction.

Benton must also have exhausted his administrative remedies pursuant Title VII for the

Court to have subject matter jurisdiction over his claims on appeal from the EEOC. 42 U.S.C. §

2000e–16(c). See *Labor v. Harvey*, 438 F.3d 404, 415 (4th Cir. 2006), *Jones v. Calvert Group

Ltd.*, 551 F.3d 297, 300 (4th Cir. 2009). For the Court to act, Benton must establish that he has

"satisfied the jurisdictional prerequisites to a federal action (i) by filing timely charges of

employment discrimination with the Commission and (ii) by receiving and acting upon the

Commission's statutory notice of the right to sue," *McDonnell Douglas Corp. v. Green*, 411 U.S.

792, 798, 93 S. Ct. 1817, 1822, 36 L. Ed. 2d 668 (1973).

Benton has not carried his burden in establishing this Court's jurisdiction as to the Title

VII claims. Nowhere in the 389 pages of exhibits he attached to his Amended Complaint/Motion

for Summary Judgment, *see* ECF No. 6-1, 6-2, or the 208 pages of exhibits he attached to his

Response to Burns's Cross-Motion for Summary Judgment, ECF No. 41-1—8 or in the 303

pages of exhibits he attached to his Reply to Burns's opposition to his Motion for Summary

Judgment ECF No. 47-1—19 has Benton included a "right to sue" letter or any evidence that the

agency has issued a final order, which would give this Court jurisdiction. Indeed, as noted

previously, the EEOC did not even act on Benton's case until after the commencement of this

action and after he filed this motion. See ECF No. 41-1.

In consequence, Benton's appeal of his EEOC claims fails for lack of subject matter jurisdiction.

The Court also lacks jurisdiction over the whistleblower violations alleged by Benton in MSPB II because that case is not a "mixed case," which would be the only possible basis for jurisdiction in this Court. As noted *supra*, "a petition to review a final order or final decision of the Board shall be filed in the U.S. Court of Appeals for the Federal Circuit." 5 U.S.C. § 7703. And, indeed, Benton has appealed that case to the Federal Circuit, which recently remanded it to the MSPB. See ECF No. 31-13.[6]

Furthermore, Benton has not demonstrated that the Court has jurisdiction over the miscellaneous Federal and state constitutional, statutory, and common law claims raised by Benton in his Response to Burns's Notice of Cross-Motion for Summary Judgment. ECF No. 41. "With regard to the federal government and its instrumentalities, sovereign immunity is presumed and cannot be overcome without an express and unequivocal statutory waiver." *Research Triangle Inst. v. Bd. of Governors of the Fed. Reserve Sys.,* 132 F.3d 985, 987 (4th Cir. 1997). Again, Benton has the burden proving that the district court has subject matter jurisdiction. *See Richmond, Fredericksburg & Potomac R.R. Co.* 945 F.2d at 768. He has provided no evidence, nor indeed, has he even argued that Congress has in any respect waived the Government's sovereign immunity with respect to any of his claims. The Court finds that it lacks jurisdiction over the miscellaneous federal and state claims referenced above.[7][8]

---

[6] Even if this were a mixed case, the Court would lack jurisdiction because the MSPB has not issued a final order.
[7] The Court also notes that those claims are waived inasmuch as they were not included in the Benton's Amended Complaint.
[8] Benton also attempts to prosecute violations of several criminal statutes for which there is no private right of action, *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir. 1989). He has also pled violations of 5 C.F.R. § 735.203, which provides standards of conduct for government employees. However, the remedy for violations of that regulation is

# IV.    ANALYSIS

All that remains in the case are the claims brought by Benton on appeal from MSPB I. As to these, the Court is able to consider the parties' cross-motions for summary judgment. Summary judgment should be granted where "there is no genuine issue of material fact that could lead a trier of fact to find for the non-moving party." *Willingham v. Crooke*, 40 F. App'x 850, 851 (4th Cir. 2002). Here the Court finds that no issues of genuine material fact remain. Accordingly, judgment as a matter of law is appropriate in favor of Burns and against Benton.

## **MSPB Claims**

The Court does not review the actions of the MSPB *de novo,* but rather "hold[s] unlawful and set[s] aside any agency action, findings, or conclusions found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." *Id.* "Substantial evidence consists of 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Briggs v. Dalton*, 984 F. Supp. 353, 356 (D. Md.), aff'd, 129 F.3d 1258 (4th Cir. 1997) *(quoting Frederick v. Department of Justice*, 73 F.3d 349, 352 (Fed.Cir.1996)).

Substantial evidence is clearly present with respect to the MSPB decision. MSPB Administrative Law Judge ("ALJ") Kasandra Robinson Styles' decision, provided by Burns, is supported by a thoughtful, carefully reasoned, 55-page opinion, ECF No. 30-5, and was

---

disciplinary action by the agency and possibly criminal prosecution. There is no private right of action. 5 C.F.R. § 735.102. *See also Barnes v. Dep't of Veterans Affairs*, 21 F. App'x 940, 942 (Fed. Cir. 2001).

reviewed, affirmed, and adopted by the full MSPB on appeal. ECF No. 32-2. It was arrived at pursuant to regular MSPB procedures. The Court finds her decision lawful and adopts the findings in her opinion.

Judge Styles found that Benton's removal was based on serious professional shortcomings on his part, ECF No. 30-5 at 21, which were properly documented pursuant to approved performance standards, *id.* at 6, and which, as required, were communicated to Benton ahead of time. *Id.* at 8. She further found that Benton, as required, was given an opportunity to improve his performance before actually being removed. I*d*. at 10.

In making these determinations, Judge Styles relied on testimony from witnesses she found credible, such as an Agency human resources official, *id.* at 6, Benton's supervisors, *see e.g. id.* at 8, documentary evidence pertaining to Benton's performance standards, *id.,* and the PDN, the PIRM, the Proposal and the Removal. *See e.g.,* 11. Many of these same documents, it may be noted, are relied on by Benton in support of his own Motion for Summary Judgment. *See e.g.,* ECF No. 6-1 at 57.

Based on this evidence, Judge Styles concluded that Benton's defenses lacked merit. No reprisal for protected activity as alleged by Benton (MSPB I claim 1) occurred, because "the agency has presented sufficient evidence that it would have removed the appellant event absent his protected activity," and there was "no evidence of any discriminatory treatment, statements of animus, or evidence of pretext." ECF No. 30-5 at 46. *See also id.* at 40.

In contrast to Benton's allegations (MSPB I claim 2), Judge Styles correctly found no harmful errors in the processing of his removal.  Harmful error is defined as "[e]rror by the agency in the application of its procedures that is likely to have caused the agency to reach a

conclusion different from the one it would have reached in the absence or cure of the error." 5

C.F.R. § 1201.4(r). "The burden is upon the appellant to show that the error was harmful, i.e.,

that it caused substantial harm or prejudice to his or her rights." 5 C.F.R. § 1201.4.

Based on the testimony of an experienced human resources professional, Judge Styles

found no merit in Benton's allegations of harmful error in the process of his removal.

Specifically, she found (1) that NRC followed its procedures for removal when it did not issue a

performance review while Benton was on a PIRM in 2011, ECF No. 30-5 at 42, (2) that Benton

was informed of the performance standards to which he would be held (based on the fact that he

twice signed documents acknowledging his knowledge of performance standards), and (3) that

the Agency did not err when it declined to replace the official who heard Benton's removal

action because there was no evidence that the official was unjust or biased. *Id.*  In addition,

though the unofficial version of Benton's FY 2010 performance review submitted to the Agency

omitted the numerical the equivalents for ratings with respect to each of the elements on which

Benton was rated, Judge Styles found that the error was harmless because, according to NRC

procedures, removals can be nevertheless based on "[u]nacceptable performance in one of more

critical elements." ECF No. 6-2 at 85.[9] Here, irrespective of whether the numbers were included,

there was ample justification for Benton's removal. Contrary to Benton's assertion, the average

of the ratings' numerical equivalents is irrelevant and their exclusion harmless.  In short, the

Agency complied with all necessary regulations in removing him. *Id.* at 43.

Judge Styles found Benton's claim as to the Agency's denial of training opportunities

(MSPB I claim 3) deficient because "[t]he [MSPB] has held that there is no law, rule or

---

[9] This error is also the basis of Benton's request for sanctions. "A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." Fed. R. Civ. P. 11(c)(2). Benton's request is buried in Benton's Amended Complaint and, most importantly, does not explain how Burns's actions violate any of the provisions of Rule 11(b). The Court declines to impose sanctions.

regulation which requires training." ECF No. 30-5 at 47 (*quoting Price v. Department of Army,* 14 M.S.P.R. 161, 163 (1982)).  As such, denial of training is not an adverse employment action. *Johnson v. Danzig*, 2000 WL 458887 *2 (4th Cir. 2000).

Judge Styles also found Benton's allegations of discrimination based on race, gender and retaliation likewise lacked merit. To make out a prima facie case of discrimination, the plaintiff must show "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Thorn v. Sebelius*, 766 F. Supp. 2d 585, 598 (D. Md. 2011), aff'd, 465 F. App'x 274 (4th Cir. 2012)(*quoting Coleman v. Md. Court of Appeals,* 626 F.3d 187, 190 (4th Cir.2010)).

With respect to his allegation of discrimination in his removal (MSPB I claim 4), Judge Styles found the Benton did not carry his burden of demonstrating that his job performance was satisfactory because, in fact, he could not. As discussed previously, NRC correctly documented Benton's unsatisfactory performance in accordance with their performance standards.

In addition, Benton's allegations of discrimination with respect to increased monitoring of time and attendance (MSPB I claim 5) fail because monitoring time and attendance is not an adverse employment action. *See Chika v. Planning Research Corp.*, 179 F. Supp. 2d 575 (D. Md. 2002).

Similarly, Benton has not made the necessary showing with respect to the hostile work environment (MSPB I claim 6). *See*  ECF No. 30-5 29—30. The Supreme Court has described a hostile work environment as an "environment[] so heavily polluted with discrimination as to destroy completely the emotional and psychological stability of minority group workers."

*Meritor Sav. Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986). Judge Styles found that the only actual allegation of harassment Benton ever complained of concerned management's limiting the number of credit hours he could work. ECF No. 30-5 at 30. The Court seriously doubts that such an action, in and of itself, could ever be deemed harassment. But, in any event, a single incident such as this can hardly suffice to create a hostile work environment. The Court agrees with Judge Styles's rejection of this claim.

Finally, Judge Styles correctly denied Benton's claim with respect to Burns's purported violations of whistleblower protections. She found that none of the "disclosures" Benton cites qualify for protection under the Whistleblower Protection Act because they were not and are not the type of disclosures explicitly protected by the Act, nor could a "reasonable person" in the position of Benton's superiors have believed that they were. ECF No 30-5.

For all the foregoing reasons, Burns's Notice of Cross-Motion for Summary Judgment is **GRANTED**, and Benton's Motion for Summary Judgment and Sanctions is **DENIED.**

A Separate order will **ISSUE**.

_____/s/_____

**PETER J. MESSITTE**
**UNITED STATES DISTRICT JUDGE**

**FEBRUARY 7, 2017**